# EXHIBIT D –PART 1 OF 4

## IN THE COURT OF APPEALS OF THE STATE OF CALIFORNIA
### FOURTH APPELLATE DISTRICT

In re Robert J. Linn,              )    Case No.
                                   )
            Petitioner,            )
                                   )    Riverside County Superior Court
On Habeas Corpus.                  )    Case No. RIC 474260
_____)

---

## PETITION FOR WRIT OF HABEAS CORPUS

---

Petitioner In Pro Per


Robert J. Linn, C-82285
P.O. Box 705, WA-326L
Soledad, Ca  93960-0705

## TABLE OF CONTENTS

Table of Authorities ii

Petition for Writ of Habeas Corpus 1

Introduction 1

Conclusion 24

Verification 27

List of Exhibits 28

Proof of Service Last Page

**TABLE OF AUTHORITIES**

CASES

STATE

In re Dannenberg (2005) 34 Cal.4th 1061              2,3

In re Lee (2006) 49 Cal.Rptr.3d 931                    19

In re Ramirez (2001) 94 Cal.App.4th 549             2,8,9

In re Rosenkrantz (2002) 29 Cal.4th 616         2,3,6,25

In re Scott (2004) 119 Cal.App.4th 871           10,11,24

In re Scott (2005) 133 Cal.App.4th 573           18,19,23

In re Smith (2003) 114 Cal.App.4th 343               8,9

In re Van Houten (2004) 116 Cal.App. 4th 339           9

FEDERAL

Bair v. Folsom State Prison, 2005
    WL 2219220 (E.D. Cal.2005)                        21

Biggs v. Turhune, 334 F.3d 910
    (9th Cir. 2003)                         12,20,23,24

Irons v. Warden of California State Prison-Solano
    358 F.Supp.2d 936                         18,21,23

Irons v. Cary, 479 F.3d 658 (9th Cir. 2007)           24

Masoner v. State, 2004 WL 1080177 (C.D. Cal 2004)     23

Sass v. Cal. Board of Prison Terms,
    461 F.3d 1123 (9th Cir. 2006)                     24

Superintendent v. Hill, 472 U.S. 445 (1985)     12,23,24

**STATUTES**

Penal Code
    § 190                                              8
    § 3000 (b)(1)                                      8
    § 3041 (a)                                    8,11,24
    § 3041 (b)                                3,11,18,25

TABLE OF AUTHORITIES

CONTINUED

CONSTITUTIONS

United States Constitution                           4,23

California Constitution                              4

MISCELLANEOUS

California Code of Regulations
    Division 2, Title 15

    § 2282 (b)                                        9

    § 2402                                      3,18,24

    § 2402 (a)                                       19

    § 2402 (c)                                       13

    § 2402 (c)(1)                                  5,25

    § 2402 (c)(1)(A)                                  6

    § 2402 (c)(1)(D)                                7,9

    § 2402 (c)(1)(E)                                 10

    § 2402 (c)(5)                                    13

iii

1    IN THE COURT OF APPEALS OF THE STATE OF CALIFORNIA
2                    FOURTH APPELLATE DISTRICT

3

4

5

6   In re Robert J. Linn,         )    Case No.
                                   )
7            Petitioner,           )
                                   )    Riverside County Superior Court
8   On Habeas Corpus               )    Case No. RIC 474260
                                   )
9   ─────────────────────────────── )

10

11

12                PETITION FOR WRIT OF HABEAS CORPUS

13       Petitioner, Robert J. Linn, in pro per, petitions for a

14  Writ of Habeas Corpus, and by this verified petition states as

15  follows:

16                               I

17                          INTRODUCTION

18       Forty-nine-year-old state prisoner Robert J. Linn is

19  petitioning this Court for a writ of habeas corpus seeking to

20  overturn the Board of Parole Hearings' [hereinafter Board]

21  denial of parole on the grounds that his rights secured under

22  the State and Federal Constitutions, and various provisions of

23  the California Penal Code and Division 2, Title 15 of the

24  California Code of Regulations [hereinafter CCR], were violated

25  by agents of the California Board of Parole Hearings.

26       At the December 19, 2006 parole hearing, the Board

27  determined that petitioner, who was sentenced to 25 years to

28  life for first degree murder in 1983, should remain in prison on

                               1

1   four purported grounds: multiple victims were attacked; the
2   crime demonstrated a callous disregard for human suffering; the
3   motive for the crime was trivial; and psychological factors.
4       Our Supreme Court's decision in *Rosenkrantz* holds that a
5   Board parole decision violates due process and must be reversed
6   if there is not "some evidence" in the record to support it.
7   Also, although parole may in some cases be denied on the basis
8   of the crime, there must be evidence to support a finding that
9   the crime was particularly egregious. (*In re Rosenkrantz* (2002)
10  29 Cal.4th 616, 683.)
11      In *Dannenberg* our Supreme Court held "[S]ole reliance on
12  the commitment offense might, in particular cases, violate
13  section 3041, subdivision (a)'s provision that a parole date
14  'shall normally be set' under 'uniform term' principles, and
15  might thus also contravene the inmate's constitutionally
16  protected expectation of parole. We explained that such a
17  violation could occur, 'for example[,] where no circumstances of
18  the offense reasonable could be considered more aggravated or
19  violent than the minimum necessary to sustain a conviction for
20  that offense.' (*Rosenkrantz, supra*, 29 Cal.4th 616, 683.)
21  Quoting *Ramirez, supra,* 94 Cal.App.4th 549, 570, we suggested
22  that, in order to prevent the parole authority's case-by-case
23  suitability determination from swallowing the rule that parole
24  should 'normally' be granted, an offense must be '*particularly*
25  *egregious*' to justify the denial of parole. *(Rosenkrantz, supra,*
26  at 683.)" *(In re Dannenberg* (2005) 34 Cal.4th 1061, 1094-1095,
27  emphasis added.) The Supreme Court then held "As we have
28  explained, however, the Board must apply detailed standards when

2

1  evaluating whether an individual inmate is unsuitable for parole
2  on public safety grounds.   (See § 3041, subd. (b); CCR § 2402.)
3  When the Board bases unsuitability on the circumstances of the
4  commitment offense, it must cite 'some evidence' of aggravating
5  facts *beyond the minimum elements of that offense.*
6  (*Rosenkrantz, supra,* 29 Cal.4th 616, 658, 683.)" (*In re*
7  *Dannenberg, supra,* 34 Cal.4th 1061, 1095, emphasis in original.)
8      Therefore, according to the Supreme Court, the Board must
9  follow and apply the factors specified by statute and regulation
10 in determining that the circumstances of the commitment offense
11 was "particularly egregious" and cite aggravating facts that
12 were beyond the minimum elements of that offense and support
13 these determinations with "some evidence" in the record.   The
14 Board must also cite "some evidence" that reliably and
15 rationally indicate a prisoner's release would unreasonably
16 endanger public safety.   As will be shown below the Board failed
17 to meet these requirements resulting in a violation of
18 petitioner's due process rights and other state and federal
19 constitutional rights.

                                II

21     This petition is addressed to this court's jurisdiction in
22 the second instance and based on the material herein and the
23 full record that was before the Superior Court of Riverside
24 County, Case No. RIC 474260.   (See Attachment One, Petition for
25 Writ of Habeas Corpus)

                                III

27     Petitioner would incorporate the grounds, claims, facts and
28 legal arguments in the attached petition and memorandum by

                                3

1   reference herein.

2                                IV

3        *Claim:*   The Board failed to follow or apply the controlling

4   legal principles, the decision was devoid of the "some evidence"

5   required by law and was arbitrary and capricious, resulting in a

6   due process violation of Article I, § 7 of the California

7   Constitution and the Fifth and Fourteenth Amendment to the

8   United States Constitution.

9        *Argument:*   Before addressing the specific unsuitability

10  factors the Board relied on, petitioner will address the Board's

11  misplaced confusion on what they claim is the existence of

12  different versions of the commitment offense.

13       The Board stated, "First of all, as in every parole hearing

14  in the Decision, we have to talk about the commitment offense.

15  And one of the areas that we struggle with is with regards to

16  the commitment offense and is the fact that there's a couple of

17  different versions of how – what you actually did during the

18  offense.   Versus what your companion did during the offense."

19  (Attachment One, Exhibit 1, Subsequent Parole Consideration

20  Hearing Transcript, December 19, 2006 [hereinafter HT], p. 113,

21  L 20-26, to p. 114, L 1.)   The position of the Board that there

22  exist conflicting versions of the circumstances surrounding the

23  events of the crime is perplexing.   The actual circumstances of

24  the offense have been previously address on numerous prior

25  occasions.   (Attachment One, Exhibit 1, HT, p. 4, L 8-11; see

26  also Exhibits 19, 20, 21, 22, 23, 24, 25, and 26.)   In fact

27  petitioner provided the Board, at the beginning of the hearing,

28  with uncontrovertible evidence in support of his version of the

                                4

1  events.  (Attachment One, Exhibit 28, Exception to the Statement
2  of Facts.)  The Board's refusal to accept the actual court
3  transcripts and reliance on the mischaracterization contained in
4  the Probation Officer's Report is unfathomable.  Not only is
5  this an abuse of the Board's authority but is both arbitrary and
6  capricious.

7       In finding petitioner unsuitable for parole the Board
8  seemed to rely on CCR, § 2402, subdivisions (c)(1)(A),
9  (c)(1)(D), (c)(1)(E), and (c)(5), as "some evidence" that
10 petitioner's crime was "particularly egregious," making him
11 unsuitable for parole, and that he *currently* poses a threat to
12 public safety if released at this time.

13 A.   The Board's reliance on the gravity of the commitment
        offense failed to meet the "some evidence" standard
14      required by law, was arbitrary and capricious, and resulted
        in a due process violation.
15

16      CCR, § 2402 (c)(1) states, "Commitment Offense.  The
17 prisoner committed the offense in an especially heinous,
18 atrocious or cruel manner."  The regulations then list five
19 subfactors that must be considered.

20      As will be demonstrated below, the Board's reliance on
21 three of these factors to show that petitioner is unsuitable for
22 parole is flawed.

23      First, a cursory review of the record in this case
24 demonstrates that the Board's decision was unreasonable under
25 the applicable "some evidence" rule.  The record simply does not
26 contain *any* evidence that petitioner's first degree murder was
27 *particularly* egregious.  Nor does the record contain *any*
28 evidence that petitioner is currently a threat to society.

1  Given that both findings are required by California law, there
2  is *zero* evidence in the record to support the Board's decision.
3      Second, the nature of the offense may justify a denial of
4  parole if the crime was committed in an "especially heinous,
5  atrocious or cruel manner." An offense that was "no more
6  aggravated or violent than the minimum necessary to sustain a
7  conviction" for first degree murder does not justify a finding
8  of unsuitability for parole. (*Rosenkrantz* at p. 682.)
9      To guide this determination, CCR, § 2402, subd. (c)(1)(A)-
10  (E) establishes the specified criteria the Board must rely on to
11  demonstrate that a prisoner committed his offense in an
12  "especially heinous, atrocious or cruel manner." It is
13  axiomatic that absent the required "some evidence" supporting
14  any of the specified factors that decision would be arbitrary
15  and capricious and result in a due process violation.
16      Petitioner will demonstrate that each of the Board's
17  unsuitability findings failed to meet the specified legal and
18  regulatory requirements.
19  1.   The Board's finding that petitioner attacked multiple
         victims is not supported by the record.
20
21      CCR, § 2402 (c)(1)(A) states, "Multiple victims were
22  attacked, injured or killed in the same or separate incidents."
23      The Board stated, "[T]here were more than one victim and
24  you acknowledged that. There was one murder victim and two
25  brothers, who had to watch their brother die and carry that with
26  them." (Attachment One, Exhibit 1, HT, p. 116, L 12-15.)
27      According to the record, and the Board's own statement,
28  only one person was killed. Petitioner robbed two individuals

6

1   and shot and/or killed no one. It is apparent that the Board is

2   relying on the fact that multiple individuals were robbed to

3   satisfy the "multiple victims were attacked" requirement of this

4   unsuitability factor. The American Heritage Dictionary, 1985

5   ed., defines attack as: "1. To set upon with violent force."

6   Neither of the two brothers were physically assaulted or injured

7   as a result of this incident. Petitioner would contend that the

8   intent of this factor is to recognize the dangerousness of

9   serial killers, violent perpetrators on a crime spree or

10  individuals who shoot, stab or injure more then one victim

11  during the commission of a crime. As this clearly does not fit

12  the case record of petitioner's commitment offense, the misuse

13  of this factor by the Board is arbitrary and capricious.

14       The Board's mischaracterization of this factor as evidence

15  that petitioner's offense was "especially egregious" cannot be

16  allowed to stand.

17  2.    The Board's finding that petitioner demonstrated an
           exceptionally callous disregard for human suffering is not
18         supports by any evidence.

19       CCR, § 2402 (c) (1) (D) states, "The offense was carried out

20  in a manner which demonstrates an exceptionally callous

21  disregard for human suffering."

22       The Board stated, "The offense was carried out in a cruel

23  and callous manner[.]" (Attachment One, Exhibit 1, HT, p. 116,

24  L 11-12.)

25       "All first degree murders by definition involve some

26  callousness - i.e., lack of emotion or sympathy, emotional

27  insensitivity, indifference to the feelings and suffering of

28  others. As noted, however, parole is the rule, rather than the

7

1  exception, and a conviction for first degree murder does not

2  automatically render one unsuitable." (*In re Smith* (2003) 114

3  Cal.App.4th 343, 366.) In *In re Ramirez* (2001) 94 Cal.App.4th

4  549, as in this case, the Board denied a parole release date on

5  the basis of a finding that the nature of the inmate's offense

6  displayed a "callous disregard for human suffering." (*Id.* at pp.

7  558, 568.) Setting aside that determination, the court agreed

8  that "the gravity of the commitment offense or offenses alone

9  *may* be a sufficient basis for denying a parole application, so

10  long as the board does not fail to consider all other relevant

11  factors," *Id.* at p. 569, but attached an important caveat. As

12  the court explained, "[a]ll violent crime demonstrates the

13  perpetrator's potential for posing a grave risk to public

14  safety, yet parole is mandatory for violent felons serving

15  determinate sentences. (Pen. Code, § 3000, subd. (b)(1).) And

16  the Legislature has clearly expressed its intent that when

17  murderers - who are the great majority of inmates serving

18  indeterminate sentences - approach their minimum eligible parole

19  date, the Board 'shall normally set a parole release date.'

20  (Pen. Code, § 3041, subd. (a).) The Board's authority to make

21  an exception based on the gravity of a life term inmate's

22  current or past offenses should not operate so as to swallow the

23  rule that parole is 'normally' to be granted. Otherwise, the

24  Board's case-by-case rulings would destroy the proportionality

25  contemplated by Penal Code section 3041, subdivision (a), and

26  also the murder statutes, which provide distinct terms of life

27  without possibility of parole, 25 years to life, and 15 years to

28  life for various degrees and kinds of murder. (Pen. Code, § 190

8

1  et seq.).″ (*Ramirez*, at p. 570.)  Therefore, to demonstrate "an
2  exceptionally callous disregard for human suffering" (§ 2402,
3  subd. (c)(1)(D)) the offense in question must have been
4  committed in a more aggravated or violent manner than that
5  ordinarily shown in the commission of first degree murder.
6      *In re Van Houten* (2004) 116 Cal.App.4th 339 illustrates the
7  sort of gratuitous cruelty required.  The prisoner in that case
8  was involved in multiple stabbings of a woman with a knife and
9  bayonet.  While she was dying, the victim was made aware her
10 husband was suffering a similarly gruesome fate.  As stated by
11 the court, "[t]hese acts of cruelty far exceeded the minimum
12 necessary to stab a victim to death." (*Id.* at p. 351.)  Other
13 examples of aggravated conduct reflecting an "exceptionally
14 callous disregard for human suffering," are set forth in Board
15 regulations relating to the matrix used to set base terms for
16 life prisoners (§ 2282, subd. (b)); namely, "torture," as where
17 the "[v]ictim was subjected to the prolonged infliction of
18 physical pain through the use of non-deadly force prior to act
19 resulting in death," and "severe trauma," as where "[d]eath
20 resulted from severe trauma inflicted with deadly intensity;
21 e.g., beating, clubbing, stabbing, strangulation, suffocation,
22 burning, multiple wounds inflicted with a weapon not resulting
23 in immediate death or actions calculated to induce terror in the
24 victim." (*Ibid.*)  No such facts or anything remotely similar
25 are present in this case. As in *In re Smith, supra*, 114
26 Cal.App.4th 343, there is no evidence petitioner "tormented,
27 terrorized, or injured the victim before his crime partner shot
28 the victim, or that he gratuitously increased or unnecessarily

9

1  prolonged the victim's pain and suffering.  As the *Scott* court

2  stated, "Was the crime callous? Yes.  However, are the facts of

3  the crime some evidence that [he] acted with exceptionally

4  callous disregard for [the victim's] suffering; or do the facts

5  distinguished this crime from other [first] degree murders as

6  exceptionally callous?  No.  (*Id.* at p. 367.)"  (*In re Scott*,

7  (2004) 119 Cal.App.4th 871, 891-892.)

8      Because the relevant evidence shows no more callous

9  disregard for human suffering than is shown by most first degree

10  murder offenses, the Board's use of this factor to conclude that

11  petitioner committed his offense "in an especially cruel and

12  callous manner" was arbitrary and capricious.

13  3.   The Board's finding that petitioner's motive for the crime

        was trivial lacks evidentiary support.
14

15      CCR, § 2402 (c)(1)(E) states, "The motive for the crime is

16  inexplicable or very trivial in relation to the offense."

17      The Board stated, "In all - - and you know, and with

18  regards to the motive, the motive of the crime was very trivial.

19  You were looking for a way to support your drug habit at that

20  point." (Attachment One, Exhibit 1, HT, p. 116, L 23 -26 to p.

21  117, L 1.)

22      "The epistemological and ethical problems involved in the

23  ascertainment and evaluation of motive are among the reasons the

24  law has sought to avoid the subject.  As one authority has

25  stated, '[h]ardly any part of penal law is more definitely

26  settled than that motive is irrelevant.'  (Hall, General

27  Principles of Criminal Law (2d ed. 1960) at p. 88; see also

28  Husak, *Motive and Criminal Liability* (1989) vol. 8, No. 1, Crim.

                              10

1   Justice Ethics 3.)... The offense committed by most prisoners

2   serving life terms is, of course, murder.  Given the high value

3   our society places upon life, there is no motive for unlawfully

4   taking the life of another human being that could not reasonably

5   be deemed 'trivial.'  The Legislature has foreclosed that

6   approach, however, by declaring that murderers with life

7   sentences must 'normally' be given release dates when they

8   approach their minimum eligible parole date.  (Pen. Code, §

9   3041, subd. (a).)  The governing statue also states the Board

10  shall set a release date 'unless it determines that the gravity

11  of current convicted offense or offenses, or the timing and

12  gravity of the current or past convicted offense or offenses, is

13  such that consideration of the public safety requires a more

14  lengthy period of incarceration for this individual, and that a

15  parole date, therefore cannot be fixed at this meeting.'  (Pen.

16  Code, § 3041, subd. (b).)  This language means a 'more lengthy

17  period of incarceration' is called for where the gravity of the

18  offense or offenses of the prisoner in question is more

19  indicative of a danger to the public if the prisoner is released

20  than would ordinarily be the case.  The reference in Board

21  regulations to motives that are 'very trivial in relationship to

22  the offense' therefore requires comparisons; to fit the

23  regulatory description, the motive must be materially less

24  significant (or more 'trivial') than those which conventionally

25  drive people to commit the offense in question, and therefore

26  more indicative of a risk of danger to society if the prisoner

27  is released than is ordinarily presented."  (*In re Scott* (2004)

28  119 Cal.App.4th 871, 893.)

11

1    The "evidence" articulated by the Board in support of their
2    finding that the "motive" was "very trivial" was that petitioner
3    had committed the robbery to obtain money to purchase drugs.
4    (Attachment One, Exhibit 1, HT, p. 116, L 25-26, to p. 117, L
5    1.)   Although this "fact" is reliably documented, it fails to
6    make the required comparison of how the "motive" was "very
7    trivial" in relation to other robberies or how it was indicative
8    of a risk of danger to society.
9    "[I]n the parole context, the requirements of due process
10   are met if some evidence support the decision." (Biggs v.
11   Terhune, 334 F.3d 910, 915 (9th Cir. 2003.) "Some evidence,"
12   however does not mean literally "any" evidence.  If it did, the
13   protection afforded by due process would be meaningless.  In
14   addition, the evidence underlying the decision must possess some
15   indicia of reliability." (Biggs at 914 [internal quotations
16   omitted]; Caswell, 363 F.3d at 839; see Hill at 455-456.)
17   Evidence that lacks any real probative value cannot constitute
18   "some evidence." (See Cato, 924 F.2d at 705.)  Otherwise, the
19   requirement of "some evidence" could be satisfied by baseless
20   speculation, superstition, or stereotyping.  That too would
21   reduce the requirement of "some evidence" to a sham or a
22   mockery.
23   The circumstances surrounding the crime or the manner in
24   which it was committed must show not only that the first degree
25   murder at issue was more cruel or vicious than the ordinary
26   first degree murder, but also that petitioner would likely pose
27   a current risk to public safety if released.  The reliance on a
28   "very trivial motive" factor fails to rise to the required

                                    12

1  level.

2      Therefore, the Board's reliance on this factor to deem

3  petitioner a risk to public safety and a danger to society was

4  arbitrary and capricious and should be reversed.

5  B.    The Boards finding that due to psychological factors
         prisoner was unsuitable for parole and a threat to society
6        if released is not supported by the evidence, regulations,
         or statute.

7

8      CCR, §2402 (c)(5) states, "Psychological Factors. The

9  prisoner has a lengthy history of severe mental problems related

10 to the offense."

11     For this unsuitability factor to apply to petitioner the

12 Board is required to demonstrate that there is or was a "lengthy

13 history of severe mental problems related to the offense."

14 (CCR, § 2402 (c)(5).)  The Board has failed to meet this

15 regulatory requirement.

16     The Board stated "There's three specific areas that we are

17 going to have looked at for you on a new psychological

18 evaluation.  One reason being that this is a 2005 Psyche. [sic]

19 It's not an old psyche [sic] for you but it doesn't answer the

20 questions that we have and there's a couple of other issues."

21 (Attachment One, Exhibit 1, HT, p. 113, L 13-18.)  "There's

22 always -- there's been a question of your addiction and I want

23 to tell you what I wrote on the psyche [sic] request was, is

24 your addiction real or was it exaggerated?"  (Attachment One,

25 Exhibit 1, HT, p. 114, L 8-11)  "Where would you have gone if

26 you hadn't been caught for this one?  Would there have been

27 future victims down the road?  How long would your addiction

28 have carried on. [sic]"  (Attachment One, Exhibit 1, HT, p. 115,

                              13

1   L 3-6.)  "The other thing that I want the psychologist to

2   explore is your mental health issues.  What they said about you

3   way back when, when you first were evaluated and to rule out any

4   questions that there might be an ongoing problem there."

5   (Attachment One, Exhibit 1, HT, p. 115, L 22-26, to p. 116, L

6   1.)

7       A review of all the Psychological Evaluations (Attachment

8   One, Exhibits 11-18), spanning more than 24 years of

9   petitioner's incarceration, will not only prove to be

10   informative but instructive as well.

11       1.  "Should he be placed on probation, and in absence of

12   antisocial individuals who can influence him, he has potential

13   for conducting himself well within the community in which he

14   resides."  E. Rivlin, Ph.D., Senior Psychologist, 7-21-83.

15   (Attachment One, Exhibit 11, Psychological Evaluation

16   [hereinafter PE].)

17       2.  "I have no recommendation at this time for him."

18   Charles D. Willis, M.D., 4-14-86.  (Attachment One, Exhibit 12,

19   PE.)

20       3.  "There is no essential change so that the prior consult

21   applies to his current situation."  Charles D. Willis, M.D., 1-

22   29-87.  (Attachment One, Exhibit 13, PE.)

23       4.  "A review of the inmate's medical records and central

24   file revealed no psychiatric history in his past."  "In point of

25   fact, Mr. Linn appeared to be a well-adjusted, focused and

26   coherent 31-year-old male."  "It is concluded, therefore, that

27   if the inmate were to [sic] placed in a less restricted

28   environment, such as would be the case were he to return to life

1  outside of prison, he would not constitute any greater danger to

2  the general public than would the average inmate."  "In

3  conclusion then, there appears to be no basis for positing

4  psychological considerations as impediments to releasing the

5  inmate on parole."  Paul Rodriquez, Ph.D., Staff Psychologist,

6  2-16-90.  (Attachment One, Exhibit 14, PE.)

7       5.  "He does not have a psychiatric condition which would

8  benefit from mental health treatment following his release."

9  "If he is considered for parole, his level of dangerousness is

10  likely to be less than the average inmate."  Bruce M. Bakeman,

11  Ph.D., Clinical Psychologist, 5-15-96.  (Attachment One, Exhibit

12  15, PE.)

13       6.  "If released to the community, his violence potential

14  is considered to be no more than average, and perhaps even

15  somewhat below average, relative to the average citizen in the

16  community."  "This inmate does not have a mental health disorder

17  which would necessitate treatment either during his

18  incarceration period or following parole."  Steven J. Terrini,

19  Ph.D., Staff Psychologist, 10-13-98.  (Attachment One, Exhibit

20  16, PE.)

21       7.  "His prognosis is positive for being able to maintain

22  his present gains in the community upon parole."  "It is

23  estimated that his violence potential, if released to the

24  community, would be no more than the average citizen."  "This

25  inmate does not have a mental health disorder which would

26  necessitate treatment either during his incarceration period or

27  following parole."  Jeff Howlin, Ed.D., Staff Psychologist, 11-

28  26-02.  (Attachment One, Exhibit 17, PE.)

1    8.  "In considering his potential for dangerous behavior if
2  released to the community at this point, I agree with the prior
3  evaluators, who stated that his violence potential in the
4  community would be no greater than the average citizen in the
5  community.  There are several facts that support this
6  conclusion.  Inmate Linn is not a criminally-oriented person.
7  He does not have antisocial thinking or values.  He does not
8  have a personality disorder that would contribute towards
9  violence.  He definitely knows the difference between right and
10  wrong, and he has a well developed conscience and strong
11  abhorrence against wrong activities. ... He has changed
12  considerable since he was 21 years of age and was involved in
13  the commitment offense."  "Other evaluators have noted that a
14  risk factor for inmate Linn for potential violence would be if
15  he were to return to the abuse of alcohol or drugs.  The fact
16  that this raises the issue about potential future drug use is
17  what has concerned the Board of Prison Terms in the past.  In
18  this writer's opinion, this is no longer an issue in this man's
19  life."  "There is no indication of any mental or emotional
20  problems that would interfere with this inmate being granted
21  parole.  The prognosis for successful adjustment in the
22  community in this case is excellent. ... Compared to other
23  inmates, and even compared to other lifers, his work skills and
24  work history are above average.  These factors support the
25  conclusion that he will do very well in the community."  "His
26  prognosis for success is excellent."  M. Macomber, Ph.D.,
27  Clinical Psychologist, 09-06-05.  (Attachment One, Exhibit 18.
28  PE.)

1    The Board considered Dr. Macomber's evaluation.

2    (Attachment One, Exhibit 1, HT, p. 54, L 17-27, pp. 55, 56, 57,

3    to p. 58, L 1-16.) And, as it appears in the record, the Board

4    dismissed Dr. Macomber's evaluation and failed to consider any

5    of the past mental health evaluations.

6        In point of fact the Board is requiring a psychologist to

7    speculate about hypothetical events that may or may not ever

8    occur.

9        It is beyond understanding how a psychologist can now

10   determine if petitioner's 25 year ago addiction was real or

11   exaggerated. Or what would have become of petitioner if he had

12   not been arrested. Or if there would have been more victims in

13   the future if petitioner had not been arrested.

14       It is also unclear how this speculation can rise to the

15   level of "some evidence" that petitioner now posses an

16   unreasonable risk of danger to society if released on parole.

17       The last issue the Board raised, on-going mental health

18   issues, has been more than adequately addressed in the current

19   and past psychological evaluations.

20       The record in this case is replete with evidence

21   demonstrating that petitioner does not have a mental health

22   disorder, does not pose a threat or danger to society if

23   released on parole, and, in the opinion of psychological

24   professionals, will be able to successfully make the transition

25   from prisoner to law abiding citizen.

26       Absent some, or any, evidence to support this finding, the

27   Board's decision is arbitrary and capricious and cannot stand.

28       As it was required to do, the Board considered whether

17

1  petitioner was suitable for parole – that is, whether he

2  presented an unreasonable risk of danger to society if released.

3  (See Penal Code § 3041 (b); CCR, § 2402.)  It decided that

4  petitioner posed an unreasonable risk of danger (and, therefore,

5  was unsuitable for parole) because his crime was especially

6  heinous.  While relying upon the nature of petitioner's crime as

7  an indicator of his dangerousness -- after over two and a half

8  decades of incarceration -- violates due process because

9  petitioner's commitment offense has become such an unreliable

10  predictor of his present and future dangerousness that it does

11  not satisfy the "some evidence" standard.  After over twenty-

12  five years of rehabilitation, the ability to predict a

13  prisoner's future dangerousness based simply on the

14  circumstances of his or her crime is nil.  (See *Irons v. Warden*

15  *of California State Prison – Solano*, 358 F.Supp.2d 936, 947 n1

16  ["To a point, it is true, the circumstances of the crime and

17  motivation for it may indicate a petitioner's instability,

18  cruelty, impulsiveness, violent tendencies and the like.

19  However, after fifteen or so years in the caldron of prison

20  life, not exactly an ideal therapeutic environment to say the

21  least, and after repeated demonstrations that despite the

22  recognized hardships of prison, this petitioner does not possess

23  those attributes, the predictive ability of the circumstances of

24  the crime is near zero."]  Even California courts have said as

25  much.  (*In re Scott* (2005) 133 Cal.App.4th 573, 595 ["The

26  commitment offense can negate suitability only if circumstances

27  of the crime reliably established by evidence in the record

28  rationally indicate that the offender will present an

18

1   unreasonable public safety risk if released from prison.  Yet,

2   the predictive value of the commitment offense may be very

3   questionable after a long period of time."].)

4       "The test is not whether some evidence supports the *reasons*

5   the [Board] cites for denying parole, but whether some evidence

6   indicates a parolee's release *unreasonably endangers public*

7   *safety.* (Cal. Code Regs., tit. 15, § 2402, subd. (a) [parole

8   denied if prisoner 'will pose an unreasonable risk of danger to

9   society if released from prison']; see e.g. *In re Scott* (2005)

10  133 Cal.App.4th 573, 595 ['The commitment offense can negate

11  suitability [for parole] only if circumstances of the crime ...

12  rationally indicate the offender will present an unreasonable

13  public safety risk if released from prison'].) ... Some evidence

14  of the existence of a particular factor does not necessarily

15  equate to some evidence the parolee's release unreasonably

16  endangers public safety."  *(In re Lee* (2006) 49 Cal.Rptr.3d 931,

17  936-937.)

18       Regardless of whether the Board ever was entitled to rely

19  upon the commitment offense to find that petitioner posed an

20  unreasonable risk of danger and was unsuitable for parole, in

21  the exceptional circumstances presented by this case, the

22  Board's reliance on the commitment offense violates due process

23  because it resulted in an arbitrary decision and because the

24  facts surrounding the offense do not now constitute "some

25  evidence" possessing "some indicia of reliability" that

26  petitioner poses a danger to the community.

27       Because there is no reliable evidence supporting the

28  Board's conclusion that petitioner is unsuitable for parole,

19

1  │ that determination violates due process.

2  │                              V

3  │     *Claim:*  The Board's continued reliance on unchanging

4  │ factors resulted in a due process violation.

5  │     *Argument:*  In finding petitioner unsuitable at his eighth

6  │ parole suitability hearing, the panel relied exclusively on an

7  │ unchanging factor: the commitment offense.  In Biggs, the Ninth

8  │ Circuit stated that the Board was *"initially* justified" in

9  │ finding Mr. Biggs unsuitable based on the circumstances of the

10 │ offense and his conduct prior to imprisonment.  The Ninth

11 │ Circuit added that "[a] continued reliance in the future on an

12 │ unchanging factor, the circumstance of the offense and conduct

13 │ prior to imprisonment, runs contrary to the rehabilitative goals

14 │ espoused by the prison system and could result in a due process

15 │ violation."  (*Biggs, supra,* 334 F.3d at 917.)

16 │     One district court has explained the rationale underlying

17 │ this aspect of Biggs as follow:

18 │         "Whether the facts of the crime of conviction, or other
   │         unchanging criteria, affect the parole eligibility decision
19 │         can only be predicated on the "predictive value" of the
   │         unchanged circumstance.  Otherwise, if the unchanged
20 │         circumstance per se can be used to deny parole eligibility,
   │         sentencing is taken out of the hands of the judge and
21 │         totally reposited in the hands of the BPT.  That is, parole
   │         eligibility could be indefinitely and forever delayed based
22 │         on the nature of the crime even though the sentence given
   │         set forth the possibility of parole – a sentence given with
23 │         the facts of the crime fresh in the mind of the judge.
   │         While it would not be a constitutional violation to forego
24 │         parole altogether for certain crimes, what the state cannot
   │         constitutionally do is have a sham system where the judge
25 │         promises the possibility of parole, but because of the
   │         nature of the crime, the BPT effectively deletes such from
26 │         the system.  Nor can a parole system, where parole is
   │         mandated to be determined on someone's future potential to
27 │         harm the community, constitutionally exist where despite 20
   │         or more years of prison life which indicates the absence of
28 │         danger to the community in the future, the BPT

                              20

1    commissioners revulsion towards the crime itself, or some
     other unchanged circumstance, constitutes the alpha and
2    omega of the decision.  Nobody elected the BPT
     commissioners as sentencing judges.  Rather, in some
3    realistic way, the facts of the unchanging circumstance
     must indicate a present danger to the community if
4    released, and this can only be assessed not in a vacuum,
     after four or five eligibility hearings, but counterpoised
5    against the backdrop of prison events."

6   (*Bair v. Folsom State Prison*, 2005 WL 2219220 (E.D.Cal. 2005),

7   report and recommendation adopted by 2005 WL 3081634 (E.D.Cal.

8   2005)

9       Another district court explained:

10      "More important ... in assessing any due process violation
        is the fact that continued reliance on unchanging
11      circumstances transforms an offense for which California
        law provides eligibility for parole into a de facto life
12      imprisonment without the possibility of parole.  The court
        asks rhetorically – what is it about the circumstances of
13      petitioner's crime or motivation which are going to change?
        The answer is nothing.  The circumstances of the crime will
14      always be what they were, and petitioner's motive for
        committing them will always be trivial.  Petitioner has no
15      hope for ever obtaining parole except perhaps that a panel
        in the future will arbitrary hold that the circumstances
16      were not that serious or the motive was more than trivial.
        Given that *no one* seriously contends lack of seriousness or
17      lack of triviality at the present time, the potential for
        parole in this case is remote to the point on non-
18      existence.  Petitioner's liberty interest should not be
        determined by such an arbitrary, remote possibility." n2
19
        n2 "To a point, it is true, the circumstances of the crime
20      and motivation for it may indicate a petitioner's
        instability, cruelty, impulsiveness, violent tendencies and
21      the like.  However, after fifteen or so years in the
        caldron of prison life, not exactly an ideal therapeutic
22      environment to say the least, and after repeated
        demonstrations that despite the recognized hardships of
23      prison, this petitioner does not possess those attributes,
        the predictive ability of the circumstances of the crime in
24      near zero."

25  (*Irons v. Warden of California State Prison – Solano*, 358

26  F.Supp.2d 936, 949.)

27      In the circumstances of this case, the Board's continued

28  reliance upon the nature of petitioner's crime to deny him

                              21

1  parole in 2006 violates due process.  Continued reliance upon
2  the unchanging facts of petitioner's crime makes a sham of
3  California's parole system and amounts to an arbitrary denial of
4  petitioner's liberty interest.  Petitioner has been granted
5  parole on one occasion and denied parole on six occasions prior
6  to the determination he now challenges.  (See Attachment One,
7  Exhibits 4, 5, 6, 7, 8, 9, and 10.)  [It should be noted that at
8  the December 4, 2002 hearing petitioner was found suitable for
9  parole.  (Attachment One, Exhibit 8, Subsequent Parole
10 Consideration Hearing Decision Transcript.)  This grant of
11 parole was reversed by the Governor on May 2, 2003 on the same
12 issues that petitioner now challenges.  (Attachment One, Exhibit
13 27, Indeterminate Sentence Parole Release Review.)  It is
14 amazing, instructive, and bewildering that the Board flip-flops
15 on the facts.  At past hearings the Board uses facts to "prove"
16 petitioner is unsuitable for parole, at another hearing they use
17 the same facts to "prove" that petitioner is suitable, and then
18 at another hearing the same facts "prove" he is unsuitable
19 again.  The only factual difference is that petitioner has
20 served more time incarcerated.]  Continued reliance upon the
21 unchanging characterization of petitioner's offense amounts to
22 converting petitioner's sentence of 25 years to life to a term
23 of life without the possibility of parole.
24     The Board's continued reliance on the commitment offense
25 violates due process because it resulted in an arbitrary
26 decision and because the facts surrounding the offense do not
27 now constitute "some evidence" possessing "some indicia of
28 reliability" that petitioner pose a danger to the community.

1   (See *Hill*, 472 U.S. at 455; *Biggs*, 344 F.3d at 917; *Irons*, 358
2   F.Supp.2d at 947;  *Masoner v. State*, 2004 WL 1080177 at *1-2
3   (C.D.Cal. 2004) ["Although the gravity of the commitment offense
4   and other pre-conviction factors alone may be sufficient to
5   justify the denial of a parole date at a prisoner's initial
6   hearing, subsequent BPT decisions to deny a parole date must be
7   supported by some post-conviction evidence that the release of
8   an inmate is against the interest of public safety].)

9        Beside not being especially atrocious, heinous or callous,
10  petitioner's crimes have little, if any, predictive value for
11  future criminality.  Simply from the passing of time,
12  petitioner's crime 25 years ago have lost much of the usefulness
13  in foreseeing the likelihood of future offenses than if he had
14  committed them five or ten years ago.  (*In re Scott*, 133
15  Cal.App.4th at 573 [past crime's value for predicting future
16  crime diminishes over time].)

17       The Ninth Circuit Court of Appeals has articulated when the
18  reliance on unchanging factors, i.e. the reliance on the
19  commitment offense to deny parole, trigger a violation of the
20  Due Process Clause of the Fifth Amendment of the United States
21  Constitution.  The Ninth Circuit held, "We note that in all the
22  cases in which we have held that a parole Board's decision to
23  deem a prisoner unsuitable for parole solely on the basis of his
24  commitment offense comports with due process, the decision was
25  made before the inmate had served the minimum number of years to
26  which they had been sentenced at the time of the challenged
27  parole denial by the Board. *Biggs, Sass,* and here, the
28  petitioners had not served the minimum numbers of years to which

1  they had been sentenced at the time of the challenged parole

2  denial by the Board. *Biggs*, 334 F.3d at 912; *Sass*, 461 F.3d

3  1125.  All we held in those cases and all we hold today,

4  therefore, is that, given the particular circumstances of the

5  offenses in these cases, due process was not violated when these

6  prisoners were deemed unsuitable for parole prior to the

7  expiration of their minimum terms."  (*Irons v. Carey*, 479 F.3d

8  658 (9th Cir. 2007)

9      Petitioner was sentenced to a term of 25 years to life.  At

10  the time of the 2006 parole hearing, petitioner had served a

11  total of 25 years 11 months (excluded 8 years 7 months of earned

12  good time and work time credits).  Petitioner has exceeded the

13  minimum number of years threshold articulated in *Irons*.  Based

14  on the holding of the Ninth Circuit Court in *Irons,* the Board

15  violated petitioner's due process rights by deeming him

16  unsuitable for parole based on the commitment offense.

17      Because there is no reliable evidence supporting the

18  Board's conclusion that petitioner is unsuitable for parole, and

19  the Ninth Circuit Court's holding in *Irons*, that determination

20  violates due process.  (*Hill*, 472 U.S. at 455.)

21                          **CONCLUSION**

22      The California rules governing parole in murder cases, for

23  which parole eligibility is provided by statute, [See CCR §

24  2402] are as follows: "[P]arole eligibility is the rule, rather

25  than the exception." (*In re Scott, (2004)* 119 Cal.App.4th at p.

26  891.) "[P]arole is 'normally' to be granted." (*Id.* [quoting

27  Penal Code § 3041 (a)].)  The murder giving rise to the

28  prisoner's incarceration must be "particularly egregious" for

                              24

1 | parole to be denied.  (*In re Rosenkrantz, supra*, 29 Cal.4th at

2 | p. 683.)  Indeed, a murder must be "heinous, atrocious or cruel"

3 | if, as here, the offense is to serve as the basis for parole

4 | denial. (CCR § 2402 (c)(1).)  In addition, in such cases, the

5 | prisoner must *presently* present a danger to society.  (Penal

6 | Code § 3401 (b).)  In short, in petitioner's case, the

7 | circumstances surrounding the crime or the manner in which it

8 | was committed must show not only that the first degree murder at

9 | issue was more cruel or vicious than the ordinary first degree

10 | murder, but also that petitioner would likely pose a current

11 | risk to public safety.  The record in this case

12 | contains absolutely *no* evidence that would meet *either* of the

13 | two requirements.  The record establishes that petitioner does

14 | not pose an unreasonable risk to public safety.  Any contrary

15 | conclusion lacks any evidentiary support.  Thus, there can be

16 | little doubt that the Board violated the applicable laws and

17 | regulations when it found petitioner unsuitable for parole.

18 | WHEREFORE, petitioner respectfully requests that this court:

19 | 1.  Take judicial notice of the full record;

20 | 2.  Issue a Writ of Habeas Corpus or Order to Show Cause to

21 | the Director of Corrections and the Chairperson, Board of Parole

22 | Hearings, to inquire into the illegal and unconstitutional

23 | actions stated in the petition;

24 | 3.  Appoint counsel;

25 | 4.  Declare the rights of the parties;

26 | 5.  Not allow intuitional transfer until the full outcome of

27 | this case; and

28 | 6.  Grant any other and further relief the court deems just.

1    DATED:    July 15, 2007                    Respectfully submitted,

2

3                                              Robert J. Linn
                                               Petitioner, In Pro Per
4

5    ///

6    ///

7    ///

8    ///

9    ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**VERIFICATION**

I, Robert J. Linn, state:

I am the petitioner in this action. All the facts in the above document, not otherwise supported by citations to the record, attachments, or other documents, are true of my own personal knowledge, except as to matters that are therein stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on July 15, 2007, at the Correctional Training Facility, Soledad, California.

Robert J. Linn

27

## LIST OF EXHIBITS

Attachment One
    Petition for Writ of Habeas Corpus (Case No. RIC 474260),
    Superior Court of Riverside County

Attachment Two
    Order Denying Petition for Writ of Habeas Corpus
    Superior Court of Riverside County

**A T T A C H M E N T**

**ONE**

Petition for Writ of Habeas Corpus
Superior Court of Riverside County

MC-275

Name    Robert J. Linn

Address    P. O. Box 705, WA-326L

      Soledad, CA 93960-0705

CDC or ID Number    C-82285

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF RIVERSIDE
(Court)

| | |
|---|---|
| Robert J. Linn | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner | |
| vs. | No. _____ |
| Board of Parole Hearings, et. al | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other (specify) _____

- [X] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: __Robert J. Linn__

2. Where are you incarcerated? __Correctional Training Facility, Soledad, CA__

3. Why are you in custody?  [X] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      __Murder, First Degree__

   b. Penal or other code sections: __187__

   c. Name and location of sentencing or committing court: __Superior Court of California,__
      __County of Riverside__

   d. Case number: __CR 18380__

   e. Date convicted or committed: __April 19, 1983__

   f. Date sentenced: __February 22, 1984__

   g. Length of sentence: __25 years to life__

   h. When do you expect to be released? __unknown__

   i. Were you represented by counsel in the trial court?  [X] Yes.   [ ] No.  If yes, state the attorney's name and address:

      __Ronald G. Lorden, Attorney At Law, 4275 Lemon St. Suite 250,__
      __Riverside, CA 92501__

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [X] Guilty   [ ] Nolo Contendere   [ ] Other _____

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See attached petition

_____

_____

_____

_____

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who did exactly what to violate your rights at what time (when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

_____

7. Ground 2 or Ground _____ *(if applicable):*

See attached petition

a. Supporting facts:

b. Supporting cases, rules, or other authority:

8  Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.  If yes, give the following information:

a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
_____

b.  Result _____    c.  Date of decision: _____

d.  Case number or citation of opinion, if known: _____

e  Issues raised:  (1) _____

(2) _____

(3) _____

f.  Were you represented by counsel on appeal?  ☐ Yes.  ☐ No. If yes, state the attorney's name and address, if known:
_____

9.  Did you seek review in the California Supreme Court?  ☐ Yes  ☒ No.  If yes, give the following information:

a.  Result _____    b.  Date of decision: _____

c.  Case number or citation of opinion, if known: _____

d.  Issues raised:  (1) _____

(2) _____

(3) _____

10.  If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

N/A
_____
_____

11.  Administrative Review:

a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].)  Explain what administrative review you sought or explain why you did not seek such review:

N/A
_____
_____
_____
_____
_____
_____
_____
_____
_____

b.  Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

MC-275 (Rev. July 1, 2005)        **PETITION FOR WRIT OF HABEAS CORPUS**        Page five of six

12  Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13.  ☒ No. If no, skip to number 15.

13.  a.  (1) Name of court: _____

         (2) Nature of proceeding (for example, "habeas corpus petition"): _____

         (3) Issues raised: (a) _____

             (b) _____

         (4) Result (Attach order or explain why unavailable): _____

         (5) Date of decision: _____

     b.  (1) Name of court: _____

         (2) Nature of proceeding: _____

         (3) Issues raised: (a) _____

             (b) _____

         (4) Result (Attach order or explain why unavailable): _____

         (5) Date of decision: _____

     c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14.  If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15  Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    N/A

_____

16.  Are you presently represented by counsel? ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17.  Do you have any petition, appeal, or other matter pending in any court? ☐ Yes.  ☒ No. If yes, explain:

_____

_____

18.  If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    N/A _____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: April 29, 2007                    ▶ _____
                                              (SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page six of six

1  Robert J. Linn, C-82285
   P. O. Box 705, WA-326L
2  Soledad, CA 93960-0705

3  Petitioner, In Pro Per

4

5

6

7

8

9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                     COUNTY OF RIVERSIDE

12

13

14  _____
                                    )
15  Robert J. Linn,                 )
                                    )    Case No.
16             Petitioner,          )
                                    )
17        v.                        )    PETITION FOR WRIT OF
                                    )    HABEAS CORPUS
18  Board of Parole Hearings, et al.,)
                                    )
19             Respondent.          )
    _____)
20

21        TO THE HONORABLE JUDGE OF THE SUPERIOR COURT OF
            CALIFORNIA, IN AND FOR THE COUNTY OF RIVERSIDE
22

23        Petitioner hereby petitions for a Writ of Habeas Corpus and

24  by this verified petition states as follows:

25                              I

26                         INTRODUCTION

27        1.   The Board of Parole Hearings [hereinafter Board] failed

28  to make its suitability determination in a manner consistent

                                1

1  with its obligation under the California Penal Code, California

2  Code of Regulations and settled California law.  The Board's

3  decision failed to follow or apply controlling legal principles

4  and its own regulations in finding petitioner unsuitable for

5  parole, the decision was devoid of the "some evidence" required

6  by law, and was arbitrary and capricious resulting in a due

7  process violation of Article 1, § 7 of the California

8  Constitution and the Fifth and Fourteenth Amendments to the

9  United States Constitution.  The Board violated the Due Process

10 Clause of the Fifth Amendment and the notice and jury trial

11 guarantees of the Sixth Amendment of the United States

12 Constitution.  For these reasons the Board's finding that

13 petitioner is unsuitable for parole should be reversed.

14                              II

15                           **PARTIES**

16     2.   Petitioner Robert J. Linn is a prisoner of the State of

17 California and is currently incarcerated at the Correctional

18 Training Facility in Soledad, California.

19     3.   Respondent Ben Curry is the Acting Warden of the

20 Correctional Training Facility, Soledad, California.

21     4.   Respondent J. Dovey is the Director of the California

22 Department of Corrections and Rehabilitations.

23     5.   Respondent James Davis is the Chairperson of the Board

24 of Parole Hearings and is responsible for its operations.

25 (Penal Code § 5075.)

26     6.   Respondent Arnold Schwarzenegger is the Governor of the

27 State of California and is responsible for the Board's

28 operation.   (Penal Code §§ 5075, 3041.1 and 3041.2.)

                              2

### III

#### STATEMENT OF FACTS

7.  Petitioner plead guilty to first degree murder on April 19, 1983, and was sentenced to 25 years-to-life on February 22, 1984.

8.  On December 19, 2006, Petitioner's seventh Subsequent Parole Consideration Hearing was held before the Board. Petitioner was found unsuitable and denied parole for a period of one year.

9.  Petitioner has no other plain or adequate remedy in the ordinary course of the law.  This petition is addressed to this courts original habeas corpus jurisdiction because the issues raised are of constitutional dimension, questioning the legality of petitioner's confinement.  A petition for a Writ of Habeas Corpus based upon factual allegations to be determined by reviewing court is generally first brought in the Superior Court.  (*In re Hillery* (1972) 202 Cal.App.2nd 293.)  Petitioner alleges that the Board violated his due process rights by failing to find him suitable for parole, thus depriving him of a liberty interest.  The Fifth and Fourteenth Amendments of the United States Constitution and the California Constitution, Article I, section 7, subdivision (a), prohibit the government from depriving an inmate of life, liberty, or property without due process of law.  Petitioner has been denied due process of law in violation of not only the United States Constitution but also the Constitution of the State of California, the California Penal Code, the California Code of Regulations, and established law.  This is petitioner's first request for habeas relief, and

3

1  thus is properly filed in this court.

2      10.  The accompanying Memorandum of Points and Authorities

3  and factual allegations contained herein, as well as the exhibits

4  appended to this petition are incorporated herein by reference.

5      WHEREFORE, petitioner respectfully prays that this Court:

6      A.  Issue a Writ of Habeas Corpus directing the Direct of

7  the Department of Corrections and Rehabilitation to inquire into

8  the legality of petitioner's incarceration;

9      B.  Order the immediate release of the petitioner; or

10      C.  Order the Board to schedule and commence a new term-

11  fixing hearing within thirty days, and to render a new

12  determination in strict accordance with both the letter and

13  spirit of the regulations and law;

14      D.  Conduct an evidentiary hearing;

15      E.  Appoint counsel;

16      F.  Declare the rights of the parties; and

17      G.  Grant any and all relief the court deems appropriate.

18

19  DATED:  April 29, 2007            Respectfully submitted,

20

21

22                                   Robert J. Linn
                                     Petitioner, In Pro Per
23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**VERIFICATION**

I, Robert J. Linn, state:

I am the petitioner in this action. I have read the foregoing petition for writ of habeas corpus and the attached memorandum of points of authority, and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Soledad, California on April 29, 2007.

Robert J. Linn

5

1       MEMORANDUM AND POINTS OF AUTHORITY

2              INTRODUCTION

3       "The Board of Prison Terms is authorized by statute to

4  determine parole suitability, and to exercise its discretion in

5  deciding whether to grant or deny parole." (*In re Rosenkrantz*

6  (2000) 80 Cal.App.4th 409, 423; Penal Code, § 3040.)

7       Penal Code section 3041 sets forth criteria the Board must

8  consider in determining parole.

9       The California Code of Regulations (hereinafter CCR), title

10 15, division 2, chapter 3, article 11, section 2400 et seq. set

11 forth additional criteria for determining parole suitability for

12 persons found guilty of murders committed after November 7,

13 1978.

14      Subdivision (c) of section 2402 sets forth the circumstances

15 tending to show unsuitability for parole, which include: (1)

16 Commitment Offense; (2) Previous Record of Violence; (3)

17 Unstable Social History; (4) Sadistic Sexual Offenses; (5)

18 Psychological Factors; and (6) Institutional Behavior.

19      Subdivision (d) of section 2402 sets forth the circumstances

20 tending to show suitability for parole, which include: (1) No

21 Juvenile Record; (2) Stable Social History; (3) Signs of

22 Remorse; (4) Motivation for Crime; ... (6) Lack of Criminal

23 History; (7) Age; (8) Understanding and Plans for Future; and

24 (9) Institutional Behavior.

25      In *Rosenkrantz*, our Supreme Court held "that the judicial

26 branch is authorized to review the factual basis of a decision

27 of the Board denying parole in order to ensure that the decision

28 comports with the requirements of due process of law, but that

                                6

1    in conducting such a review, the court may inquire only whether
2    *some evidence* in the record before the Board supports the
3    decision to deny parole, based upon *the factors specified by*
4    *statute and regulation.*   If the decision's consideration of the
5    specified factors is not supported by some evidence in the record
6    and thus is devoid of a factual basis, the court should grant
7    the prisoner's petition for writ of habeas corpus and should
8    order the Board to vacate its decision denying parole and
9    therefore to proceed in accordance with due process of law."
10   (*In re Rosenkrantz (2002)* 29 Cal.4th 616, 658, emphasis added.)
11        In *Dannenberg* the Supreme Court held "In that regard, we
12   noted that 'the nature of the prisoner's offense, alone, can
13   constitute a sufficient basis for denying parole. [Citations.]'
14   (*Rosenkrantz, supra*, 29 Cal.4th 616, 682.)   While neither the
15   board nor the Governor may adopt a blanket no-parole policy for
16   particular offenses, we said, 'the [parole] authority properly
17   may weigh heavily the degree of violence used and the amount of
18   viciousness shown by a defendant.'   (*Id.*, at p. 683.)   [¶]
19   However, we cautioned, sole reliance on the commitment offense
20   might, in particular cases, violate section 3041, subdivision
21   (a)'s provision that a parole date 'shall normally be set' under
22   'uniform term' principles, and might thus also contravene the
23   inmate's constitutionally protected expectation of parole.   We
24   explained that such a violation could occur, 'for example[,]
25   where no circumstances of the offense reasonable could be
26   considered more aggravated or violent than the minimum necessary
27   to sustain a conviction for that offense.'   (*Rosenkrantz, supra*,
28   29 Cal.4th 616, 683.)   Quoting *Ramirez, supra*, 94 Cal.App.4th

7

1   549, 570, we suggested that, in order to prevent the parole

2   authority's case-by-case suitability determinations from

3   swallowing the rule that parole should 'normally' be granted, an

4   offense must be 'particularly egregious' to justify the denial

5   of parole. (Rosenkrantz, supra, at 683.)" (In re Dannenberg,

6   (2005) 34 Cal.4th 1061, 1094-1095.)

7       The Supreme Court then held "As we have explained, however,

8   the Board must apply detailed standards when evaluating whether

9   an individual inmate is unsuitable for parole on public safety

10  grounds. (See § 3041, subd. (b); CCR § 2402.) When the Board

11  bases unsuitability on the circumstances of the commitment

12  offense, it must cite 'some evidence' of aggravating facts

13  beyond the minimum elements of that offense. (Rosenkrantz,

14  supra, 29 Cal.4th 616, 658, 683.)" (In re Dannenberg, supra, 34

15  Cal.4th 1061, 1095.)

16      Therefore, according to our Supreme Court, the Board must

17  follow and apply the factors specified by statue and regulation

18  in determining that the circumstances of the commitment offense

19  was "particularly egregious" and cite aggravating facts that

20  were beyond the minimum elements of that offense and support

21  these determinations with "some evidence" in the record. The

22  Board must also cite "some evidence" that reliably and

23  rationally indicates a prisoner's release would unreasonably

24  endanger public safety. As will be shown below the Board failed

25  to meet these requirements resulting in a violation of

26  petitioner's due process rights and other state and federal

27  constitutional rights.

28                          I

1    *Claim*:   The Board failed to follow or apply the controlling

2    legal principles, the decision was devoid of the "some evidence"

3    required by law and was arbitrary and capricious, resulting in a

4    due process violation of Article I, § 7 of the California

5    Constitution and the Fifth and Fourteenth Amendment to the

6    United States Constitution.

7        *Argument*:   Before addressing the specific unsuitability

8    factors the Board relied on, petitioner will address the Board's

9    misplaced confusion on what they claim is the existence of

10   different versions of the commitment offense.

11       The Board stated, "First of all, as in every parole hearing

12   in the Decision, we have to talk about the commitment offense.

13   And one of the areas that we struggle with is with regards to

14   the commitment offense and is the fact that there's a couple of

15   different versions of how - what you actually did during the

16   offense.  Versus what your companion did during the offense."

17   (Exhibit 1, Subsequent Parole Consideration Hearing Transcript,

18   December 19, 2006 [hereinafter HT], p. 113, L 20-26, to p. 114,

19   L 1.)  The position of the Board that there exist conflicting

20   versions of the circumstances surrounding the events of the

21   crime is perplexing.  The actual circumstances of the offense

22   have been previously address on numerous prior occasions.

23   (Exhibit 1, HT, p. 4, L 8-11; see also Exhibits 19, 20, 21, 22,

24   23, 24, 25, and 26.)  In fact petitioner provided the Board, at

25   the beginning of the hearing, with uncontrovertible evidence in

26   support of his version of the events.  (Exhibit 28, Exception to

27   the Statement of Facts.)  The Board's refusal to accept the

28   actual court transcripts and reliance on the mischaracterization

9

1  contained in the Probation Officer's Report is unfathomable.

2  Not only is this an abuse of the Board's authority but is both

3  arbitrary and capricious.

4      In finding petitioner unsuitable for parole the Board

5  seemed to rely on CCR, § 2402, subdivisions (c)(1)(A),

6  (c)(1)(D), (c)(1)(E), and (c)(5), as "some evidence" that

7  petitioner's crime was "particularly egregious," making him

8  unsuitable for parole, and that he *currently* poses a threat to

9  public safety if released at this time.

10 A.   The Board's reliance on the gravity of the commitment
        offense failed to meet the "some evidence" standard
11      required by law, was arbitrary and capricious, and resulted
        in a due process violation.

12

13      CCR, § 2402 (c)(1) states, "Commitment Offense.  The

14 prisoner committed the offense in an especially heinous,

15 atrocious or cruel manner."  The regulations then list five

16 subfactors that must be considered.

17      As will be demonstrated below, the Board's reliance on

18 three of these factors to show that petitioner is unsuitable for

19 parole is flawed.

20      First, a cursory review of the record in this case

21 demonstrates that the Board's decision was unreasonable under

22 the applicable "some evidence" rule.  The record simply does not

23 contain *any* evidence that petitioner's first degree murder was

24 *particularly* egregious.  Nor does the record contain *any*

25 evidence that petitioner is currently a threat to society.

26 Given that both findings are required by California law, there

27 is *zero* evidence in the record to support the Board's decision.

28      Second, the nature of the offense may justify a denial of

                                10

1  parole if the crime was committed in an "especially heinous,

2  atrocious or cruel manner."  An offense that was "no more

3  aggravated or violent than the minimum necessary to sustain a

4  conviction" for first degree murder does not justify a finding

5  of unsuitability for parole.  (*Rosenkrantz* at p. 682.)

6  To guide this determination, CCR, § 2402, subd. (c)(1)(A)-

7  (E) establishes the specified criteria the Board must rely on to

8  demonstrate that a prisoner committed his offense in an

9  "especially heinous, atrocious or cruel manner."  It is

10  axiomatic that absent the required "some evidence" supporting

11  any of the specified factors that decision would be arbitrary

12  and capricious and result in a due process violation.

13  Petitioner will demonstrate that each of the Board's

14  unsuitability findings failed to meet the specified legal and

15  regulatory requirements.

16  1.    The Board's finding that petitioner attacked multiple
         victims is not supported by the record.
17

18  CCR, § 2402 (c)(1)(A) states, "Multiple victims were

19  attacked, injured or killed in the same or separate incidents."

20  The Board stated, "[T]here were more than one victim and

21  you acknowledged that.  There was one murder victim and two

22  brothers, who had to watch their brother die and carry that with

23  them." (Exhibit 1, HT, p. 116, L 12-15.)

24  According to the record, and the Board's own statement,

25  only one person was killed.  Petitioner robbed two individuals

26  and shot and/or killed no one.  It is apparent that the Board is

27  relying on the fact that multiple individuals were robbed to

28  satisfy the "multiple victims were attacked" requirement of this

1  unsuitability factor.  The American Heritage Dictionary, 1985

2  ed., defines attack as: "1.  To set upon with violent force."

3  Neither of the two brothers were physically assaulted or injured

4  as a result of this incident.  Petitioner would content that the

5  intent of this factor is to recognize the dangerousness of

6  serial killers, violent perpetrators on a crime spree or

7  individuals who shoot, stab or injury more then one victim

8  during the commission of a crime.  As this clearly does not fit

9  the case record of petitioner's commitment offense, the misuse

10 of this factor by the Board is arbitrary and capricious.

11     The Board's mischaracterization of this factor as evidence

12 that petitioner's offense was "especially egregious" cannot be

13 allowed to stand.

14 2.   The Board's finding that petitioner demonstrated an
        exceptionally callous disregard for human suffering is not
15      supports by any evidence.

16     CCR, § 2402 (c)(1)(D) states, "The offense was carried out

17 in a manner which demonstrates an exceptionally callous

18 disregard for human suffering."

19     The Board stated, "The offense was carried out in a cruel

20 and callous manner[.]"  (Exhibit 1, HT, p. 116, L 11-12.)

21     "All first degree murders by definition involve some

22 callousness – i.e., lack of emotion or sympathy, emotional

23 insensitivity, indifference to the feelings and suffering of

24 others.  As noted, however, parole is the rule, rather than the

25 exception, and a conviction for first degree murder does not

26 automatically render one unsuitable."  (In re Smith (2003) 114

27 Cal.App.4th 343, 366.) In In re Ramirez (2001) 94 Cal.App.4th

28 549, as in this case, the Board denied a parole release date on

12

1   the basis of a finding that the nature of the inmate's offense

2   displayed a "callous disregard for human suffering." (*Id.* at pp.

3   558, 568.)  Setting aside that determination, the court agreed

4   that "the gravity of the commitment offense or offenses alone

5   *may* be a sufficient basis for denying a parole application, so

6   long as the board does not fail to consider all other relevant

7   factors," *Id.* at p. 569, but attached an important caveat.  As

8   the court explained, "[a]ll violent crime demonstrates the

9   perpetrator's potential for posing a grave risk to public

10  safety, yet parole is mandatory for violent felons serving

11  determinate sentences.  (Pen. Code, § 3000, subd. (b)(1).)  And

12  the Legislature has clearly expressed its intent that when

13  murderers – who are the great majority of inmates serving

14  indeterminate sentences – approach their minimum eligible parole

15  date, the Board 'shall normally set a parole release date.'

16  (Pen. Code, § 3041, subd. (a).)  The Board's authority to make

17  an exception based on the gravity of a life term inmate's

18  current or past offenses should not operate so as to swallow the

19  rule that parole is 'normally' to be granted.  Otherwise, the

20  Board's case-by-case rulings would destroy the proportionality

21  contemplated by Penal Code section 3041, subdivision (a), and

22  also the murder statutes, which provide distinct terms of life

23  without possibility of parole, 25 years to life, and 15 years to

24  life for various degrees and kinds of murder.  (Pen. Code, § 190

25  et seq.)." (*Ramirez*, at p. 570.)  Therefore, to demonstrate "an

26  exceptionally callous disregard for human suffering" (§ 2402,

27  subd. (c)(1)(D)) the offense in question must have been

28  committed in a more aggravated or violent manner than that

13

1  ordinarily shown in the commission of first degree murder.

2      *In re Van Houten* (2004) 116 Cal.App.4th 339 illustrates the

3  sort of gratuitous cruelty required.  The prisoner in that case

4  was involved in multiple stabbings of a woman with a knife and

5  bayonet.  While she was dying, the victim was made aware her

6  husband was suffering a similarly gruesome fate.  As stated by

7  the court, "[t]hese acts of cruelty far exceeded the minimum

8  necessary to stab a victim to death."  (*Id.* at p. 351.)  Other

9  examples of aggravated conduct reflecting an "exceptionally

10  callous disregard for human suffering," are set forth in Board

11  regulations relating to the matrix used to set base terms for

12  life prisoners (§ 2282, subd. (b)); namely, "torture," as where

13  the "[v]ictim was subjected to the prolonged infliction of

14  physical pain through the use of non-deadly force prior to act

15  resulting in death," and "severe trauma," as where "[d]eath

16  resulted from severe trauma inflicted with deadly intensity;

17  e.g., beating, clubbing, stabbing, strangulation, suffocation,

18  burning, multiple wounds inflicted with a weapon not resulting

19  in immediate death or actions calculated to induce terror in the

20  victim."  (*Ibid.*)  No such facts or anything remotely similar

21  are present in this case.  As in *In re Smith, supra,* 114

22  Cal.App.4th 343, there is no evidence petitioner "tormented,

23  terrorized, or injured the victim before his crime partner shot

24  the victim, or that he gratuitously increased or unnecessarily

25  prolonged the victim's pain and suffering.  As the *Scott* court

26  stated, "Was the crime callous? Yes.  However, are the facts of

27  the crime some evidence that [he] acted with exceptionally

28  callous disregard for [the victim's] suffering; or do the facts

14

1  distinguished this crime from other [first] degree murders as

2  exceptionally callous?  No.  (Id. at p. 367.)" (In re Scott,

3  (2004) 119 Cal.App.4th 871, 891-892.)

4      Because the relevant evidence shows no more callous

5  disregard for human suffering than is shown by most first degree

6  murder offenses, the Board's use of this factor to conclude that

7  petitioner committed his offense "in an especially cruel and

8  callous manner" was arbitrary and capricious.

9  3.   The Board's finding that petitioner's motive for the crime
         was trivial lacks evidentiary support.
10

11     CCR, § 2402 (c)(1)(E) states, "The motive for the crime is

12  inexplicable or very trivial in relation to the offense."

13     The Board stated, "In all - - and you know, and with

14  regards to the motive, the motive of the crime was very trivial.

15  You were looking for a way to support your drug habit at that

16  point." (Exhibit 1, HT, p. 116, L 23 -26 to p. 117, L 1.)

17     "The epistemological and ethical problems involved in the

18  ascertainment and evaluation of motive are among the reasons the

19  law has sought to avoid the subject.  As one authority has

20  stated, '[h]ardly any part of penal law is more definitely

21  settled than that motive is irrelevant.'  (Hall, General

22  Principles of Criminal Law (2d ed. 1960) at p. 88; see also

23  Husak, Motive and Criminal Liability (1989) vol. 8, No. 1, Crim.

24  Justice Ethics 3.)... The offense committed by most prisoners

25  serving life terms is, of course, murder.  Given the high value

26  our society places upon life, there is no motive for unlawfully

27  taking the life of another human being that could not reasonably

28  be deemed 'trivial.'  The Legislature has foreclosed that

                                  15

1  approach, however, by declaring that murderers with life

2  sentences must 'normally' be given release dates when they

3  approach their minimum eligible parole date. (Pen. Code, §

4  3041, subd. (a).)  The governing statue also states the Board

5  shall set a release date 'unless it determines that the gravity

6  of current convicted offense or offenses, or the timing and

7  gravity of the current or past convicted offense or offenses, is

8  such that consideration of the public safety requires a more

9  lengthy period of incarceration for this individual, and that a

10  parole date, therefore cannot be fixed at this meeting.' (Pen.

11  Code, § 3041, subd. (b).)  This language means a 'more lengthy

12  period of incarceration' is called for where the gravity of the

13  offense or offenses of the prisoner in question is more

14  indicative of a danger to the public if the prisoner is released

15  than would ordinarily be the case.  The reference in Board

16  regulations to motives that are 'very trivial in relationship to

17  the offense' therefore requires comparisons; to fit the

18  regulatory description, the motive must be materially less

19  significant (or more 'trivial') than those which conventionally

20  drive people to commit the offense in question, and therefore

21  more indicative of a risk of danger to society if the prisoner

22  is released than is ordinarily presented." (*In re Scott* (2004)

23  119 Cal.App.4th 871, 893.)

24      The "evidence" articulated by the Board in support of their

25  finding that the "motive" was "very trivial" was that petitioner

26  had committed the robbery to obtain money to purchase drugs.

27  (Exhibit 1, HT, p. 116, L 25-26, to p. 117, L 1.)  Although this

28  "fact" is reliably documented, it fails to make the required

16

1   comparison of how the "motive" was "very trivial" in relation to
2   other robberies or how it was indicative of a risk of danger to
3   society.

4       "[I]n the parole context, the requirements of due process
5   are met if some evidence support the decision." (Biggs v.
6   Terhune, 334 F.3d 910, 915 (9th Cir. 2003.) "Some evidence,"
7   however does not mean literally "any" evidence.  If it did, the
8   protection afforded by due process would be meaningless.  In
9   addition, the evidence underlying the decision must possess some
10  indicia of reliability." (Biggs at 914 [internal quotations
11  omitted]; Caswell, 363 F.3d at 839; see Hill at 455-456.)
12  Evidence that lack any real probative value cannot constitute
13  "some evidence." (See Cato, 924 F.2d at 705.)  Otherwise, the
14  requirement of "some evidence" could be satisfied by baseless
15  speculation, superstition, or stereotyping.  That too would
16  reduce the requirement of "some evidence" to a sham or a
17  mockery.

18      The circumstances surrounding the crime or the manner in
19  which it was committed must show not only that the first degree
20  murder at issue was more cruel or vicious than the ordinary
21  first degree murder, but also that petitioner would likely pose
22  a current risk to public safety if released.  The reliance on a
23  "very trivial motive" factor fails to rise to the required
24  level.

25      Therefore, the Board's reliance on this factor to deem
26  petitioner a risk to public safety and a danger to society was
27  arbitrary and capricious and should be reversed.

28

1  B.    The Boards finding that due to psychological factors
        prisoner was unsuitable for parole and a threat to society
2      if released is not supported by the evidence, regulations,
        or statute.

3

4      CCR, §2402 (c)(5) states, "Psychological Factors. The

5  prisoner has a lengthy history of severe mental problems related

6  to the offense."

7      For this unsuitability factor to apply to petitioner the

8  Board is required to demonstrate that there is or was a "lengthy

9  history of severe mental problems related to the offense."

10  (CCR, § 2402 (c)(5).)   The Board has failed to meet this

11  regulatory requirement.

12      The Board stated "There's three specific areas that we are

13  going to have looked at for you on a new psychological

14  evaluation.  One reason being that this is a 2005 Psyche. [sic]

15  It's not an old psyche [sic] for you but it doesn't answer the

16  questions that we have and there's a couple of other issues."

17  (Exhibit 1, HT, p. 113, L 13-18.)  "There's always -- there's

18  been a question of your addiction and I want to tell you what I

19  wrote on the psyche [sic] request was, is your addiction real or

20  was it exaggerated?"  (Exhibit 1, HT, p. 114, L 8-11)  "Where

21  would you have gone if you hadn't been caught for this one?

22  Would there have been future victims down the road?  How long

23  would your addiction have carried on. [sic]"  (Exhibit 1, HT, p.

24  115, L 3-6.)  "The other thing that I want the psychologist to

25  explore is your mental health issues.  What they said about you

26  way back when, when you first were evaluated and to rule out any

27  questions that there might be an ongoing problem there."

28  (Exhibit 1, HT, p. 115, L 22-26, to p. 116, L 1.)

18

1    A review of all the Psychological Evaluations (Exhibits 11-
2  18), spanning more than 24 years of petitioner incarceration,
3  will not only prove to be informative but instructive as well.
4    1.  "Should he be placed on probation, and in absence of
5  antisocial individuals who can influence him, he has potential
6  for conducting himself well within the community in which he
7  resides."  E. Rivlin, Ph.D., Senior Psychologist, 7-21-83.
8  (Exhibit 11, Psychological Evaluation [hereinafter PE].)
9    2.  "I have no recommendation at this time for him."
10  Charles D. Willis, M.D., 4-14-86.  (Exhibit 12, PE.)
11    3.  "There is no essential change so that the prior consult
12  applies to his current situation."  Charles D. Willis, M.D., 1-
13  29-87.  (Exhibit 13, PE.)
14    4.  "A review of the inmate's medical records and central
15  file revealed no psychiatric history in his past."  "In point of
16  facts, Mr. Linn appeared to be a well-adjusted, focused and
17  coherent 31-year-old male."  "It is concluded, therefore, that
18  if the inmate were to [sic] placed in a less restricted
19  environment, such as would be the case where he to return to
20  life outside of prison, he would not constitute any greater
21  danger to the general public than would the average inmate."
22  "In conclusion then, there appears to be no basis for positing
23  psychological considerations as impediments to releasing the
24  inmate on parole."  Paul Rodriquez, Ph.D., Staff Psychologist,
25  2-16-90.  (Exhibit 14, PE.)
26    5.  "He does not have a psychiatric condition which would
27  benefit from mental health treatment following his release."
28  "If he is considered for parole, his level of dangerousness is

19

1  likely to be less than the average inmate."  Bruce M. Bakeman,

2  Ph.D., Clinical Psychologist, 5-15-96.  (Exhibit 15, PE.)

3    6.  "If released to the community, his violence potential

4  is considered to be no more than average, and perhaps even

5  somewhat below average, relative to the average citizen in the

6  community."  "This inmate does not have a mental health disorder

7  which would necessitate treatment either during his

8  incarceration period or following parole."  Steven J. Terrini,

9  Ph.D., Staff Psychologist, 10-13-98.  (Exhibit 16, PE.)

10    7.  "His prognosis is positive for being able to maintain

11  his present gains in the community upon parole."  "It is

12  estimated that his violence potential, if released to the

13  community, would be no more than the average citizen."  "This

14  inmate does not have a mental health disorder which would

15  necessitate treatment either during his incarceration period or

16  following parole."  Jeff Howlin, Ed.D., Staff Psychologist, 11-

17  26-02.  (Exhibit 17, PE.)

18    8.  "In considering his potential for dangerous behavior if

19  released to the community at this point, I agree with the prior

20  evaluators, who stated that his violence potential in the

21  community would be no greater than the average citizen in the

22  community.  There are several facts that support this

23  conclusion.  Inmate Linn is not a criminally-oriented person.

24  He does not have antisocial thinking or values.  He does not

25  have a personality disorder that would contribute towards

26  violence.  He definitely knows the difference between right and

27  wrong, and he has a well developed conscience and strong

28  abhorrence against wrong activities. ... He has changed

1  considerable since he was 21 years of age and was involved in
2  the commitment offense." "Other evaluators have noted that a
3  risk factor for inmate Linn for potential violence would be if
4  he were to return to the abuse of alcohol or drugs. The fact
5  that this raises the issue about potential future drug use is
6  what has concerned the Board of Prison Terms in the past. In
7  this writer's opinion, this is no longer an issue in this man's
8  life." "There is no indication of any mental or emotional
9  problems that would interfere with this inmate being granted
10 parole. The prognosis for successful adjustment in the
11 community in this case is excellent. ... Compared to other
12 inmates, and even compared to other lifers, his work skills and
13 work history are above average. These factors support the
14 conclusion that he will do very well in the community." "His
15 prognosis for successful is excellent." M. Macomber, Ph.D.,
16 Clinical Psychologist, 09-06-05. (Exhibit 18. PE.)

17      The Board considered Dr. Macomber's evaluation. (Exhibit
18 1, HT, p. 54, L 17-27, pp. 55, 56, 57, to p. 58, L 1-16.) And,
19 as it appears in the record, the Board dismissed Dr. Macomber's
20 evaluation and failed to consider any of the past mental health
21 evaluations.

22      In point of fact the Board is requiring a psychologist to
23 speculate about hypothetical events that may or may not ever
24 occur.

25      It is beyond understanding how a psychologist can now
26 determine if petitioner's 25 year ago addiction was real or
27 exaggerated. Or what would have become of petitioner if he had
28 not been arrested. Or if there would have been more victims in

                                21

1  the future if petitioner had not been arrested.

2      It is also unclear how this speculation can rise to the
3  level of "some evidence" that petitioner now posses and
4  unreasonable risk of danger to society if released on parole.

5      The last issue the Board raised, on-going mental health
6  issues, has been more that adequately addressed in the current
7  and past psychological evaluations.

8      The record in this case is replete with evidence
9  demonstrating that petitioner does not have a mental health
10 disorder, does not pose a threat or danger to society if
11 released on parole, and, in the opinion of psychological
12 professionals, will be able to successfully make the transition
13 from prisoner to law abiding citizen.

14     Absent some, or any, evidence to support this finding, the
15 Board's decision is arbitrary and capricious and cannot stand.

16     As it was required to do, the Board considered whether
17 petitioner was suitable for parole – that is, whether he
18 presented an unreasonable risk of danger to society if released.
19 (See Penal Code § 3041 (b); CCR, § 2402.)  It decided that
20 petitioner posed an unreasonable risk of danger (and, therefore,
21 was unsuitable for parole) because his crime was especially
22 heinous.  While relying upon the nature of petitioner's crime as
23 an indicator of his dangerousness -- after over two and a half
24 decades of incarceration -- violates due process because
25 petitioner's commitment offense has become such an unreliable
26 predictor of his present and future dangerousness that it does
27 not satisfy the "some evidence" standard.  After over twenty-
28 five years of rehabilitation, the ability to predict a

22

1   prisoner's future dangerousness based simply on the
2   circumstances of his or her crime is nil.  (See *Irons v. Warden*
3   *of California State Prison – Solano*, 358 F.Supp.2d 936, 947 n1
4   ["To a point, it is true, the circumstances of the crime and
5   motivation for it may indicate a petitioner's instability,
6   cruelty, impulsiveness, violent tendencies and the like.
7   However, after fifteen or so years in the caldron of prison
8   life, not exactly an ideal therapeutic environment to say the
9   least, and after repeated demonstrations that despite the
10  recognized hardships of prison, this petitioner does not possess
11  those attributes, the predictive ability of the circumstances of
12  the crime is near zero."]  Even California courts have said as
13  much.  (*In re Scott* (2005) 133 Cal.App.4th 573, 595 ["The
14  commitment offense can negate suitability only if circumstances
15  of the crime reliably established by evidence in the record
16  rationally indicate that the offender will present an
17  unreasonable public safety risk if released from prison.  Yet,
18  the predictive value of the commitment offense may be very
19  questionable after a long period of time."].)
20      Regardless of whether the Board ever was entitled to rely
21  upon the commitment offense to find that petitioner posed an
22  unreasonable risk of danger and was unsuitable for parole, in
23  the exceptional circumstances presented by this case, the
24  Board's reliance on the commitment offense violates due process
25  because it resulted in an arbitrary decision and because the
26  facts surrounding the offense do not now constitute "some
27  evidence" possessing "some indicia of reliability" that
28  petitioner poses a danger to the community.

23

1    Because there is no reliable evidence supporting the

2  Board's conclusion that petitioner is unsuitable for parole,

3  that determination violates due process.

4                                  II

5    *Claim:*  The Board's continued reliance on unchanging

6  factors resulted in a due process violation.

7    *Argument:*  In finding petitioner unsuitable at his eighth

8  parole suitability hearing, the panel relied exclusively on an

9  unchanging factor: the commitment offense.  In Biggs, the Ninth

10  Circuit stated that the Board was *"initially* justified" in

11  finding Mr. Biggs unsuitable based on the circumstances of the

12  offense and his conduct prior to imprisonment.  The Ninth

13  Circuit added that "[a] continued reliance in the future on an

14  unchanging factor, the circumstance of the offense and conduct

15  prior to imprisonment, runs contrary to the rehabilitative goals

16  espoused by the prison system and could result in a due process

17  violation."  (*Biggs, supra,* 334 F.3d at 917.)

18    One district court has explained the rationale underlying

19  this aspect of Biggs as follow:

20        "Whether the facts of the crime of conviction, or other
          unchanging criteria, affect the parole eligibility decision
21        can only be predicated on the "predictive value" of the
          unchanged circumstance.  Otherwise, if the unchanged
22        circumstance per se can be used to deny parole eligibility,
          sentencing is taken out of the hands of the judge and
23        totally reposited in the hands of the BPT.  That is, parole
          eligibility could be indefinitely and forever delayed based
24        on the nature of the crime even though the sentence given
          set forth the possibility of parole — a sentence given with
25        the facts of the crime fresh in the mind of the judge.
          While it would not be a constitutional violation to forego
26        parole altogether for certain crimes, what the state cannot
          constitutionally do is have a sham system where the judge
27        promises the possibility of parole, but because of the
          nature of the crime, the BPT effectively deletes such from
28        the system.  Nor can a parole system, where parole is

                                  24

1  mandated to be determined on someone's future potential to
   harm the community, constitutionally exist where despite 20
2  or more years of prison life which indicates the absence of
   danger to the community in the future, the BPT
3  commissioners revulsion towards the crime itself, or some
   other unchanged circumstance, constitutes the alpha and
4  omega of the decision.   Nobody elected the BPT
   commissioners as sentencing judges.  Rather, in some
5  realistic way, the facts of the unchanging circumstance
   must indicate a present danger to the community if
6  released, and this can only be assessed not in a vacuum,
   after four or five eligibility hearings, but counterpoised
7  against the backdrop of prison events."

8  (*Bair v. Folsom State Prison*, 2005 WL 2219220 (E.D.Cal. 2005),

9  report and recommendation adopted by 2005 WL 3081634 (E.D.Cal.

10 2005)

11     Another district court explained:

12     "More important ... in assessing any due process violation
       is the fact that continued reliance on unchanging
13     circumstances transforms an offense for which California
       law provides eligibility for parole into a de facto life
14     imprisonment without the possibility of parole.  The court
       asks rhetorically – what is it about the circumstances of
15     petitioner's crime or motivation which are going to change?
       The answer is nothing.  The circumstances of the crime will
16     always be what they were, and petitioner's motive for
       committing them will always be trivial.  Petitioner has no
17     hope for ever obtaining parole except perhaps that a panel
       in the future will arbitrary hold that the circumstances
18     were not that serious or the motive was more than trivial.
       Given that *no one* seriously contends lack of seriousness or
19     lack of triviality at the present time, the potential for
       parole in this case is remote to the point on non-
20     existence.  Petitioner's liberty interest should not be
       determined by such an arbitrary, remote possibility." n2
21
       n2 "To a point, it is true, the circumstances of the crime
22     and motivation for it may indicate a petitioner's
       instability, cruelty, impulsiveness, violent tendencies and
23     the like.  However, after fifteen or so years in the
       caldron of prison life, not exactly an ideal therapeutic
24     environment to say the least, and after repeated
       demonstrations that despite the recognized hardships of
25     prison, this petitioner does not possess those attributes,
       the predictive ability of the circumstances of the crime in
26     near zero."

27 (*Irons v. Warden of California State Prison – Solano*, 358

28 F.Supp.2d 936, 949.)

                          25

 1         In the circumstances of this case, the Board's continued

 2    reliance upon the nature of petitioner's crime to deny him

 3    parole in 2006 violates due process.  Continued reliance upon

 4    the unchanging facts of petitioner's crime makes a sham of

 5    California's parole system and amounts to an arbitrary denial of

 6    petitioner's liberty interest.  Petitioner has been granted

 7    parole on one occasion and denied parole on six occasions prior

 8    to the determination he now challenges.  (See Exhibits 4, 5, 6,

 9    7, 8, 9, and 10.)  [It should be noted that at the December 4,

10    2002 hearing petitioner was found suitable for parole.  (Exhibit

11    8, Subsequent Parole Consideration Hearing Decision Transcript.)

12    This grant of parole was reversed by the Governor on May 2, 2003

13    on the same issues that petitioner now challenges.  (Exhibit 27,

14    Indeterminate Sentence Parole Release Review.)  It is amazing,

15    instructive, and bewildering that the Board flip-flops on the

16    facts.  At past hearings the Board uses facts to "prove"

17    petitioner is unsuitable for parole, at another hearing they use

18    the same facts to "prove" that petitioner is suitable, and then

19    at another hearing the same facts "prove" he is unsuitable

20    again.  The only factual difference is that petitioner has

21    served more time incarcerated.]  Continued reliance upon the

22    unchanging characterization of petitioner's offense amounts to

23    converting petitioner's sentence of 25 years to life to a term

24    of life without the possibility of parole.

25         The Board's continued reliance on the commitment offense

26    violates due process because it resulted in an arbitrary

27    decision and because the facts surrounding the offense do not

28    now constitute "some evidence" possessing "some indicia of

                                 26

1  reliability" that petitioner pose a danger to the community.

2  (See *Hill*, 472, U.S. at 455; *Biggs*, 344 F.3d at 917; *Irons*,

3  358 F.Supp.2d at 947; *Masoner v. State*, 2004 WL 1080177 at *1-2

4  (C.D.Cal. 2004) ["Although the gravity of the commitment offense

5  and other pre-conviction factors alone may be sufficient to

6  justify the denial of a parole date at a prisoner's initial

7  hearing, subsequent BPT decisions to deny a parole date must be

8  supported by some post-conviction evidence that the release of

9  an inmate is against the interest of public safety].)

10      Beside not being especially atrocious, heinous or callous,

11  petitioner's crimes have little, if any, predictive value for

12  future criminality.  Simply from the passing of time,

13  petitioner's crime 25 years ago have lost much of the usefulness

14  in foreseeing the likelihood of future offenses than if he had

15  committed them five or ten years ago.  (*In re Scott*, 133

16  Cal.App.4th at 573 [past crime's value for predicting future

17  crime diminishes over time].)

18      The Ninth Circuit Court of Appeals has articulated when the

19  reliance on unchanging factors, i.e. the reliance on the

20  commitment offense to deny parole, trigger a violation of the

21  Due Process Clause of the Fifth Amendment of the United States

22  Constitution.  The Ninth Circuit held, "We note that in all the

23  cases in which we have held that a parole Board's decision to

24  deem a prisoner unsuitable for parole solely on the basis of his

25  commitment offense comports with due process, the decision was

26  made before the inmate had served the minimum number of years to

27  which they had been sentenced at the time of the challenged

28  parole denial by the Board.  *Biggs, Sass,* and here, the

1   petitioners had not served the minimum numbers of years to which
2   they had been sentenced at the time of the challenged parole
3   denial by the Board.  *Biggs*, 334 F.3d at 912; *Sass*, 461 F.3d
4   1125.  All we held in those cases and all we hold today,
5   therefore, is that, given the particular circumstances of the
6   offenses in these cases, due process was not violated when these
7   prisoners were deemed unsuitable for parole prior to the
8   expiration of their minimum terms."  (*Irons v. Carey*, ___ F.___
9   (9th Cir. 2007)

10      Petitioner was sentenced to a term of 25 years to life.  At
11  the time of the 2006 parole hearing, petitioner had served a
12  total of 25 years 11 months (excluded 8 years 7 months of earned
13  good time and work time credits).  Petitioner has exceeded the
14  minimum number of years threshold articulated in *Irons*.  Based
15  on the holding of the Ninth Circuit Court in *Irons*, the Board
16  violated petitioner's due process rights by deeming him
17  unsuitable for parole based on the commitment offense.

18      Because there is no reliable evidence supporting the
19  Board's conclusion that petitioner is unsuitable for parole, and
20  the Ninth Circuit Court's holding in *Irons*, that determination
21  violates due process.  (*Hill*, 472, U.S. a5 455.)

22                          **CONCLUSION**

23      The California rules governing parole in murder cases, for
24  which parole eligibility is provided by statute, [See CCR §
25  2402] are as follows: "[P]arole eligibility is the rule, rather
26  than the exception."  (*In re Scott*, *supra*, 119 Cal.App.4th at p.
27  891.)  "[P]arole is 'normally' to be granted."  (*Id.* [quoting
28  Penal Code § 3041 (a)].)  The murder giving rise to the

                              28

1  prisoner's incarceration must be "particularly egregious" for
2  parole to be denied. (*In re Rosenkrantz, supra*, 29 Cal.4th at p.
3  683.)   Indeed, a murder must be "heinous, atrocious or cruel"
4  if, as here, the offense is to serve as the basis for parole
5  denial.   (CCR, § 2402 (c)(1).)   In addition, in such cases, the
6  prisoner must *presently* present a danger to society.   (Penal
7  Code § 3401 (b).)  In short, in petitioner's case, the
8  circumstances surrounding the crime or the manner in which it
9  was committed must show not only that the first degree murder at
10  issue was more cruel or vicious than the ordinary first degree
11  murder, but also that petitioner would likely pose a current
12  risk to public safety.   The record in this case
13  contains absolutely *no* evidence that would meet *either* of the
14  two requirements.   Thus, there can be little doubt that the
15  Board violated the applicable rules when it denied petitioner
16  parole solely on the basis of his commitment offense.
17      All murders represent the basest form of human behavior.
18  Our laws, however, provide for mechanisms by which even
19  murderers, in limited circumstances, are entitled to be paroled.
20  The judiciary has an obligation to execute those laws.   The
21  record establishes that petitioner does not pose an unreasonable
22  risk to public safety.   Any contrary conclusion lacks any
23  evidentiary support.   Therefore, petitioner prays that this
24  court will grant the petition for habeas corpus.
25
26  DATED: April 29, 2007                    Respectfully submitted,
27
28                                           Robert J. Linn
                                             Petitioner, In Pro Per

29

**TABLE OF EXHIBITS**

**EXHIBIT 1**
Subsequent Parole Consideration Hearing Transcript
December 19, 2006

**EXHIBIT 2**
Probation Officer's Report
May 11, 1983

**EXHIBIT 3**
Abstract of Judgment
March 1, 1984

**EXHIBIT 4**
Initial Parole Consideration Hearing Decision Transcript
December 4, 1996

**EXHIBIT 5**
Subsequent Parole Consideration Hearing Decision Transcript
December 16, 1998

**EXHIBIT 6**
Subsequent Parole Consideration Hearing Decision Transcript
July 18, 2000

**EXHIBIT 7**
Subsequent Parole Consideration Hearing Decision Transcript
December 5, 2001

**EXHIBIT 8**
Subsequent Parole Consideration Hearing Decision Transcript
December 4, 2002

**EXHIBIT 9**
Subsequent Parole Consideration Hearing Decision Transcript
April 21, 2004

**EXHIBIT 10**
Subsequent Parole Consideration Hearing Decision Transcript
September 30, 2005

**TABLE OF EXHIBITS**
(Continued)

**EXHIBIT 11**
Psychological Evaluation
July 21, 1983

**EXHIBIT 12**
Psychological Evaluation
April 14, 1986

**EXHIBIT 13**
Psychological Evaluation
January 29, 1987

**EXHIBIT 14**
Psychological Evaluation
February 16, 1990

**EXHIBIT 15**
Psychological Evaluation
May 15, 1996

**EXHIBIT 16**
Psychological Evaluation
October 13, 1998

**EXHIBIT 17**
Psychological Evaluation
November 26, 2002

**EXHIBIT 18**
Psychological Evaluation
September 6, 2005

**EXHIBIT 19**
Life Prisoner Evaluation
August 1996 Calendar

**EXHIBIT 20**
Life Prisoner Evaluation
December 1998 Calendar

**TABLE OF EXHIBITS**
(Continued)

**EXHIBIT 21**
Life Prisoner Evaluation
December 1999 Calendar


**EXHIBIT 22**
Life Prisoner Evaluation
July 2001 Calendar


**EXHIBIT 23**
Life Prisoner Evaluation
December 2002 Calendar


**EXHIBIT 24**
Life Prisoner Evaluation
December 2003 Calendar


**EXHIBIT 25**
Life Prisoner Evaluation
April 2005 Calendar


**EXHIBIT 26**
Life Prisoner Evaluation
September 2006 Calendar


**EXHIBIT 27**
Indeterminate Sentence Parole Release Review
May 2, 2003


**EXHIBIT 28**
Exception To The Statement of Facts


**EXHIBIT 29**
Petitioner's Response To Unsuitability and Suitability Facts
(CCR § 2402 (c) and (d))