# EXHIBIT D –PART 4 OF 4

**E X H I B I T**

**15**

Psychological Evaluation
May 15, 1996

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
AUGUST 1996 CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
MAY 2, 1996

This is the first psychological evaluation for the Board of
Prison Terms on inmate Robert Linn.  This report is the product
of a personal interview, as well as a review of his Central file
and medical record.

His crime consisted of the 1980 murder of a worker in an avocado
grove.  Inmate Linn and an accomplice shot one man when he tried
to run away, killing him, and robbed the body and two other
workers before letting them go.  Inmate Linn expressed his
regret;  he said that his crime partner did the actual shooting.

He has had a good record with the Department of Corrections,
having no CDC-115 infractions since 1984 for making home-brew
(pruno) in his cell.

Prior to his incarceration, he had a problem with cocaine,
marijuana and alcohol.  He attends Alcoholics Anonymous now.
Educationally, he dropped out in the ninth grade and then later
got his GED.  Vocationally, he is trained as a carpenter, in
computer drafting, and has a glazer.  His future plans include
going to live with his brother in Huntington Beach and working in
construction there.

MENTAL STATUS EXAMINATION:  Inmate Linn is a well developed, well
nourished man of slender build who appeared to be his stated age
of 38.  He was appropriately dressed and groomed, and seemed to
be fully cooperative during the interview.  His speech was clear
and readily understandable.  His affect was normal.  His flow of
thought was normal with no hallucinations nor delusions noted.
He seemed to be fully oriented with normal intellectual
functioning.  His attention and concentration were good.  His
insight and judgment appear to be improving greatly over that of
his earlier years, when he was willing to steal to buy drugs.

LINN
C-82285
Page Two


PSYCHIATRIC DIAGNOSIS - DSM-IV:

AXIS I:      1)  Alcohol Abuse, in remission.
             2)  Cannabis Abuse, in remission.
             3)  Cocaine Abuse, in remission.
AXIS II:   No contributory personality disorder.
AXIS III:  No contributory physical disorder.

PSYCHIATRIC CONCLUSIONS:  His diagnosed psychopathology appears
to be indirectly related to his offense.  Certainly, his use of
drugs at that time was contributing factor in his crime, but did
not directly determine what he did.  He does not have a
psychiatric condition which would benefit from mental health
treatment following his release.  He is showing improvement in
his behavior.  If released, he should be able to maintain the
gains he has made, provided he continues in his determination to
avoid alcohol and illicit drugs.

SUGGESTED ACTIONS:  If he is to be continued in his present
program, he should be encouraged to continue his participation in
Alcoholics Anonymous and to gain further vocational training as
needed.  If he is considered for parole, his level of
dangerousness is likely to be less than for the average inmate.
Conditions for parole should include no alcohol nor illicit
drugs.

RECOMMENDATION TO CLASSIFICATION COMMITTEE:  Until released, he
should:  1)  Continue to attend Alcoholics Anonymous.  2)  Add to
his vocational skills as the opportunity arises.

*Bruce Bakeman, Ph.D.*
BRUCE M. BAKEMAN, Ph.D.
Clinical Psychologist
Correctional Training Facility, Soledad

**E X H I B I T**

**16**

Psychological Evaluation
October 13, 1998

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1998 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 8, 1998

This is the second psychological evaluation for the Board of
Prison Terms on inmate Robert Linn. This report is the
product of a personal interview, conducted on 10/08/98, as
well as a review of his Central file and unit health record.
This interview was a single contact with this inmate for the
sole purpose of preparing this report.

I.    **IDENTIFYING INFORMATION:**

Inmate Linn is a 40-year-old, married, Caucasian male.
His date of birth is 01/05/58. He stated his religion
is Protestant. He denies any history of nicknames or
aliases.

II.   **DEVELOPMENTAL HISTORY:**

He denied any history of birth defects, abnormalities
of developmental milestones or of cruelty to animals.
As a child, he did set small fires, but was never
arrested for arson. He denied any significant
childhood medical history. He stated that at times he
was physically abused by his father, but denied any
history of sexual abuse as either a perpetrator or a
victim.

III.  **EDUCATIONAL HISTORY:**

Educationally, he dropped out of high school in the
ninth grade, but eventually completed a GED during
his incarceration. Vocationally, he is currently on
the waiting list for mill and cabinet. He has a long
history of working in the construction field.

IV.   **FAMILY HISTORY:**

His mother is still alive and is 62 years old. He has
received visits from her every two to three years. He
has had no contact with his father for 35 years. He
father is known to be an alcoholic. He has two
brothers and four sisters and stays in written and
telephonic communication with them. He denied that

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

      any other family members besides his father ever had
any other family members besides his father ever had
any criminal, psychiatric or substance abuse problems.

V.     **PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:**

Inmate Linn is heterosexual.  He denied any history of
sexual aggression or high-risk sexual behavior.

VI.    **MARITAL HISTORY:**

Inmate Linn was married in 1981 and is still legally
married, but has not communicated with his wife in
over 14 years.  He does not have any children.

VII.   **MILITARY HISTORY:**

The inmate denied any military history.

VIII.  **EMPLOYMENT AND INCOME HISTORY:**

Prior to his commitment offense, inmate Linn worked in
construction and was a foreman in a construction
company for several years.

IX.    **SUBSTANCE ABUSE HISTORY:**

Inmate Linn stated that he abused marijuana and
alcohol for several years, and abused cocaine during
the last four years of his freedom.  The last two
months, he injected cocaine and had a $500 to $1,000
per day drug habit.  He currently attends Alcoholics
Anonymous.

X.     **PSYCHIATRIC AND MEDICAL HISTORY:**

He denied any history of hospitalizations or
psychiatric problems, a history of serious accidents
or head injuries, or a history of seizures.  He stated
that he felt suicidal when he was first arrested, but
never made any actual suicide attempts.

XI.    **PLANS IF GRANTED RELEASE:**

When he paroles, he hopes to live with his brother in
his brother's apartment.  He said that he has a job
waiting for him in a friend's construction company.

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE


His parole plans seem viable and his prognosis for community living would appear to be positive.

### CLINICAL ASSESSMENT

XII. **CURRENT MENTAL STATUS/TREATMENT NEEDS**:

Inmate Linn appeared slightly older than his stated age.  He was appropriately dressed and groomed.  He was cooperative, calm, alert and pleasant.  His speech, flow of thought and affect were all within the normal range.  His intellectual functioning was estimated to be within the average range.  He demonstrated good insight into his commitment offense. His judgment appeared to be sound.  There was no evidence of a mood or thought disorder.

**CURRENT DIAGNOSTIC IMPRESSIONS**:

AXIS I:     Polysubstance Abuse/Dependence (alcohol, marijuana and cocaine), in institutional remission.
AXIS II:    No Contributory Personality Disorder.
AXIS V:     GAF = 85.

His prognosis is positive for being able to maintain his mental status after parole.

XIII. **REVIEW OF LIFE CRIME**:

Inmate Linn described his commitment offense in great detail.  His main motive for the robberies that he and his crime partners committed was a need for money to pay debts and to buy drugs, as he had a substantial drug habit.  He acknowledged his participation in the commitment offense, but stated he was not the shooter. However, he stated, "I am just as responsible."  Asked for his thoughts and feelings regarding this crime, he stated that it was wrong to take a life.  He said that perhaps the victim was a good person.  He said that the victim's family and his own family would probably never be the same, and he acknowledged the hurt he has caused them.  He also expressed the fact that he was "embarrassed" for what he done, and he did appear to be so.  He said he can't really complain about his

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

treatment in prison because the victim is dead and he
is still alive.  He said he has learned a greater
respect for life as he gets older.  The remorse that
he expressed appeared to be significant, appropriate
and quite genuine.

XIV.  ASSESSMENT OF DANGEROUSNESS:

A.  In consideration of several factors, including
his lack of a criminal history, his lack of a
violent criminal history, his relative lack of
CDC-115 violations, his lack of violent CDC-115s,
as well as his greater maturity, his violence
potential within a controlled setting is estimated
to be significantly below average relative to this
Level II inmate population.

B.  If released to the community, his violence
potential is considered to be no more than
average, and perhaps even somewhat below average,
relative to the average citizen in the community.
His statements of not ever committing crime again
in the community seem genuine and quite heart-
felt.

C.  Clearly, the most significant risk factor for this
inmate as a precursor to violence would be if he
continued abusing alcohol and/or drugs.  If he
were to do so, his violence potential will be
considered significantly higher than without
those substances.

XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

1)  This inmate is competent and responsible for his
behavior.  He has the capacity to abide by
institutional standards and has generally done so
during his incarceration period.

2)  This inmate does not have a mental health disorder
which would necessitate treatment either during
his incarceration period or following parole.

3)  As he has acknowledged a problem with alcohol and
drugs, abstinence, monitoring and attendance at

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE


self-help groups such as Narcotics Anonymous
should be mandatory conditions of parole.

4)   I am convinced that the empathy and remorse he
expressed during this session was genuine.


STEVEN J. TERRINI, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad

SJT/gj

d:  10/08/98
t:  10/13/98

**E X H I B I T**

**17**

Psychological Evaluation
November 26, 2002

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
DECEMBER 2002 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
NOVEMBER 26, 2002

This is the fifth psychological evaluation for the Board of
Prison Terms on inmate Robert Linn, CDC# C-82285. This
report is the product of a personal interview, conducted on
11/26/02, as well as a review of his Central file and unit
health record. This interview was a single contact with
this individual for the sole purpose of preparing this
report.

## PSYCHOSOCIAL ASSESSMENT

I.   **IDENTIFYING INFORMATION:**

Inmate Linn is a 44-year-old, married, Caucasian male.
His date of birth is 01/05/58. He described his
religious affiliation as Protestant. He presented with
no unusual physical characteristics, and denied the use
of nicknames or aliases.

II.  **DEVELOPMENTAL HISTORY:**

Inmate Linn has what appeared to be a relatively
unremarkable developmental history. He denied any
history of birth defects or abnormalities of
developmental milestones. He reported that his
childhood years were relatively normal. He denied a
history of cruelty to animals, a history of arson, and
any significant childhood medical history. He denied a
childhood history of physical or sexual abuse as either
a perpetrator or a victim. He did add, however, that
prior to his parents' divorce, when he was about five
and a half years old, his father was somewhat
aggressive when he punished him.

III. **EDUCATIONAL HISTORY:**

Inmate Linn completed the eighth grade, after which he
dropped out and went to work. He described himself as

LINN    C-82285    CTF-CENTRAL    11/26/02    gmj

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

"slow in school."  He explained that he was in special
education during grades four and five.  He has
completed his GED since being incarcerated.

## IV.   FAMILY HISTORY:

Inmate Linn stated that his parents divorced when he
was about five and a half years old due to what he said
was his "father's abusive nature."  Inmate Linn stated
that his mother is age 73 and described her as healthy.
He stated that his father died at age 62 from cirrhosis
of the liver and other alcohol-related health problems.

Inmate Linn stated that he has four sisters and two
brothers.  He explained that all but his oldest sister
experimented with the use of drugs or alcohol, but that
they all stopped after the "experimental stage."  He
added that he has one older brother whom he thinks may
be dealing with current legal problems.

Inmate Linn stated that, since his incarceration, his
relationship with his family members has improved.  He
added that he communicates with all of them on a
regular basis with the exception of his oldest brother;
the inmate is uncertain of his whereabouts at this
time.

## V.   PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

Inmate Linn described himself as a heterosexual male.
He denied any history of high-risk sexual behavior.

## VI.   MARITAL HISTORY:

Inmate Linn stated that he has been married one time.
He married at age 22, after his incarceration for this
commitment offense.  He explained that he knew his wife
in the community prior to his arrest.  He stated that
they continued a relationship for about four years,
after which she quit writing.  He explained that they
never formally went through with divorce proceedings.
He commented that he has not seen his wife since 1985,
and he last heard from her about five years ago, which
was her last dated letter.  He does not have any
children.

LINN      C-82285        CTF-CENTRAL        11/26/02      gmj

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

## VII. MILITARY HISTORY:

Inmate Linn has no history of military service.

## VIII. EMPLOYMENT/INCOME HISTORY:

As noted earlier, inmate Linn explained that he dropped
out of school in the eighth grade and started working
in a warehouse in Los Angeles. He said he was 15 years
old, and worked at this job for about six months. This
was followed by working in the construction field,
specifically, building homes. He worked at this job
from the ages of 16 to 22, until being arrested for his
commitment offense. He explained that, just prior to
his arrest, he was working as a foreman for one of the
crews.

Since his incarceration, he has worked in the paint
shop, in the carpentry shop, as a photographer for R&R,
and on the garden crew. He said that, between jobs, he
has typically worked support services. He has also
completed vocational training in drafting, and is
currently in vocational appliance repair. He has held
this assignment since 1999. He showed this examiner a
document verifying that he has been certified as an EPA
in refrigeration repair. Outside of work, he explained
that he is an artist, and enjoys both painting and
drawing.

## IX. SUBSTANCE ABUSE HISTORY:

Inmate Linn described a significant history of the
abuse of alcohol and drugs. He explained that he
started drinking alcohol, mostly wine, on an occasional
basis beginning at age ten years. This was followed by
the use of marijuana on an occasional basis. His drug
use progressed, he said, after a move to Orange County.
He explained that in seventh grade he started smoking
hashish and drinking beer on a more frequent basis,
three to four times per week. This was followed by the
experimental use of LSD, which he said he tried one
time. At age 13, he tried mescaline, he said, about
ten times over a one year period, and some type
of sedative, which he said he snorted about ten times
during a one year period. He tried PCP one to two
times, and used speed occasionally for about a six

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

month period just prior to a more extensive use of
cocaine.  He explained that he started using cocaine at
age 21 years, and for about five months prior to his
commitment offense.  He said that he started selling
cocaine and snorting the profits.  He added that for
about three months prior to his commitment offense, his
cocaine use significantly increased, and he was
shooting cocaine intravenously.  He added that during
this time of heavy cocaine use, he continued to work
full-time as a foreman, building homes.

Prior to being arrested, he stated that he had no
significant drug or alcohol abuse treatment.  He did
say that at one time he was sentenced by a judge to
Alcoholics Anonymous meetings for being drunk in
public.  He added that he only went to one or two
meetings.

Since being incarcerated, inmate Linn has been
involved in Alcoholics Anonymous in both the county
jail, at Tehachapi, and at CTF.  He explained that he
is now involved in Narcotics Anonymous, and that his
pattern has been to go back and forth between the two
programs since he has had problems with both alcohol
and drug abuse in his past.  He stated that he feels he
has made significant improvements in his understanding
of substance abuse, specifically in the last five to
seven years, and stated, "Now I understand what the
groups are about."  Additional self-help programs that
he has been involved with include, an eight-week
substance abuse program at CMC, as well as a stress
management course there.  He added that he has
completed the Impact Program at CTF.

It should be noted that since being incarcerated
within CDC, inmate Linn has received one CDC-115, and
that in 1984, for substance abuse-related issues.  This
115 was for the manufacturing of pruno, according to
inmate Linn.  This examiner, however, was unable to
locate the document in the Central file.

X.    **PSYCHIATRIC AND MEDICAL HISTORY**:

Inmate Linn denied any history of medical or
psychiatric hospitalizations.  He denied any
psychiatric history, including taking psychotropic

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE

medication or suicidal behavior.  He denied a history
of serious accidents or head injuries, or a history of
seizures or other neurological conditions.  He reported
he is not currently taking any medication.

XI.   PLANS IF GRANTED RELEASE:

Inmate Linn discussed his plans if paroled.  He said,
"I hope to get a job that's been offered to me, and
work it."  He then went on to add more specifics.  He
stated that eventually he would like to branch off and
work in his acquired field of refrigeration and
appliance repair, in which he has been certified.  He
said that he will most likely parole to Riverside
County, and that he has in-laws there who are willing
to help him out.  He said they have already offered him
a place to live.  Apparently, although he has not been
communicating with his wife, he still keeps in contact
with his in-laws.  He stated that he has a job offer in
Riverside doing "foam work."  He knows somebody in the
business of manufacturing foam for furniture.

Based on what was discussed with this clinician, his
parole plans seem viable, and his prognosis for
community living is positive.

### CLINICAL ASSESSMENT

XII.  CURRENT MENTAL STATUS/TREATMENT NEEDS:

Inmate Linn is a 44-year-old, Caucasian male.  He
appeared his stated age.  He was appropriately dressed
and groomed.  He was cooperative, calm and alert
throughout the interview.  His speech was clear and
readily understandable.  His affect was broad.  His
flow of thought was within the normal range, and there
was no evidence of a thought disorder.  His
intellectual functioning was estimated to be within the
average range.  His judgment appeared to be sound.  He
demonstrated insight into his commitment offense.

CURRENT DIAGNOSTIC IMPRESSIONS:

AXIS I:    Polysubstance Abuse/Dependence, in
           institutional remission.

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE SIX


**AXIS II:**   No Contributory Personality Disorder.
**AXIS III:**  No Contributory Physical Disorder.
**AXIS IV:**   Incarceration.
**AXIS V:**    GAF = 85.

His prognosis is positive for being able to maintain his present gains in the community upon parole.

## XIII. REVIEW OF LIFE CRIME:

Inmate Linn is serving a 25-year to life sentence for First Degree Murder.  He was age 21 at the time of his commitment offense, and entered jail in 1981 at age 22. He entered the CDC system in 1984, and has therefore been incarcerated within CDC for about 18 years.

Inmate Linn described the circumstances surrounding his commitment offense.  As mentioned earlier, he explained that in the few months prior to the crime, he had been engaged in a significant and regular cocaine abuse problem, leading to what seems to be an escalating pattern of use, and structuring a life around the idea of attaining more money for the continued buying and abuse of cocaine.  He stated that he had not used cocaine for about three days prior to the crime.  He did add, however, that he had been drinking beer the day of the crime, and had probably consumed about a six-pack of beer.  He described himself as intoxicated at the time of the crime.

Inmate Linn's commitment offense involved the robbery of three farm workers, and the subsequent murder of one of them, by the inmate and his accomplice.  He explained that he and his crime partner had guns, and their intention was to only rob the victims.  He explained that there was no premeditation for murder. He stated that when they arrived on the scene, one of the three farm workers took off running, after which his crime partner went after the man.  Inmate Linn stated that he remained back to guard the other two workers, and shortly thereafter heard two shots being fired, and his crime partner then came back, stating, "I think I killed the guy."  Inmate Linn stated that while his accomplice was away, he robbed the two men of their money.  He stated that they then waved the other two men off before driving away.  He explained that he

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE SEVEN


felt "the police were onto us," but added that he
continued to work until the police came to arrest him
about ten days later.

It is likely that the above-diagnosed psychopathology
was at least indirectly related to the commitment
offense:  in the pattern reported by inmate Linn of his
behavior in the few months prior to the crime, of being
involved in the cycle of using and attempting to get
money for the use of drugs.

Inmate Linn discussed his feelings about the victim,
and demonstrated what appeared to be genuine remorse.
He stated about the victim, "I never knew this guy.
His life was taken away.  I feel bad because this guy
was a good person, he was working, he had a family to
support."

Since being incarcerated, inmate Linn has received a
total of three CDC-115s.  He received two in 1998 for
reporting late for work, and as mentioned earlier,
allegedly received one in 1984 for manufacturing pruno.

Inmate Linn denied any gang involvement either prior to
or since his incarceration.  He explained that he does
have a juvenile criminal record.  He stated that at age
12 he was on probation for commercial burglary, and
that one year later he received a charge for
"joyriding," which he described as a time when he and
some friends took somebody's car for a ride.  He stated
that he paid a fine for this infraction.  He added that
he had one other charge for being drunk in public as a
juvenile.  He denied any adult criminal record prior to
his commitment offense.

XIV. <u>ASSESSMENT OF DANGEROUSNESS</u>:

A.  Inmate Linn has had three CDC-115 violations
    throughout an almost 18-year period.  None of these
    CDC-115s were of a violent nature.  Based on this,
    as well as a lack of any violence in his juvenile
    or adult history prior to the commitment offense,
    it is felt that he would pose a less than average
    risk for violence when compared to this Level II
    inmate population.

LINN, ROBERT
CDC NUMBER:   C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE EIGHT

    B.   Inmate Linn appears to have made gains since being incarcerated. He has completed a GED, received vocational training, been actively involved in Alcoholics Anonymous and Narcotics Anonymous in addressing his substance abuse history.  It is estimated that his violence potential, if released to the community, would be no more than the average citizen, as long as he is able to abstain from the use of alcohol or drugs.

    C.   The most significant risk factor for this inmate which could be a precursor to violence would be a return to the abuse of alcohol or drugs.  Should he choose to abuse those substances again, his violence potential would be considered significantly higher than the average citizen in the community.

**XV.   CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:**

    A.   This inmate is competent and responsible for his behavior.  He has the capacity to abide by institutional standards, and has generally done so during his approximately 18-year CDC time period.

    B.   This inmate does not have a mental health disorder which would necessitate treatment either during his incarceration period or following parole.

    C.   Inmate Linn has acknowledged a significant past problem with the abuse of alcohol and drugs. Therefore, I would recommend upon parole:

        1)  Abstinence from all alcohol and illegal drugs.

        2)  Monitoring for substance abuse.

        3)  Mandatory attendance at self-help groups that address substance abuse problems, such as Alcoholics Anonymous or Narcotics Anonymous.

        4)  Continue efforts made at improving self through vocational training, as well as continuing to pursue his interest in art.

LINN, ROBERT
CDC NUMBER:  C-82285
BPT PSYCHOLOGICAL EVALUATION
PAGE NINE


JEFF HOWLIN, Ed.D.
Staff Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD


B. ZIKA, Ph.D.
Senior Supervising Psychologist
CORRECTIONAL TRAINING FACILITY, SOLEDAD

JH/gmj

D:  11/26/02
T:  11/27/02

E X H I B I T

18

Psychological Evaluation
September 6, 2005

*Inmate Copy*

### MENTAL HEALTH EVALUATION FOR THE BOARD OF PRISON TERMS
### (REVISED AUGUST 1998)
### PAROLE CONSIDERATION HEARING
### SEPTEMBER 2005 LIFER CALENDAR

### CORRECTIONAL TRAINING FACILITY, SOLEDAD
### SEPTEMBER 6, 2005

#### ADDENDUM EVALUATION:

**NAME:** LINN, ROBERT
**CDC #:** C-82285
**DOB:** 01/05/58
**AGE:** 47
**OFFENSE:** Penal Code 187, Murder, First Degree
**SENTENCE:** 25 years to Life
**COUNTY:** Riverside
**DATE OF OFFENSE:** 12/28/80
**MEPD:** 10/23/97
**EVALUATION DATE:** 09/06/05

#### IDENTIFYING INFORMATION:

Inmate Robert Linn is a 47-year-old, separated, Caucasian male. He was found suitable by the Board of Prison Terms in 2003. Governor Davis rescinded that decision.

A prior BPT panel asked for a current psychological evaluation to address the degree that the inmate has changed, and to determine if his ability to refrain from drugs and alcohol is in the process of being a firm commitment, or is it a firm commitment at this point in time?

The psychological evaluation dated 11/26/02 by J. Howlin, Ed.D., is still current and valid. This evaluation includes the psychosocial assessment. Also, the 10/13/98 psychological evaluation by Dr. Terrini is still current and valid. It also includes a psychosocial assessment. Therefore, this historical information will not be repeated in this report.

#### SOURCES OF INFORMATION:

This evaluation is based upon a single, 90-minute, psychodiagnostic evaluation. In addition, the Central file and medical file were reviewed.

*LINN, ROBERT*
*CDC NUMBER: C-82285*
*BPT MENTAL HEALTH EVALUATION*
*PAGE TWO*

### CLINICAL ASSESSMENT

### CURRENT MENTAL STATUS/TREATMENT NEEDS:

Inmate Linn appears his chronological age of 47. His hygiene and grooming were good. He was alert and well oriented. His thinking was rational, logical, and coherent. His speech was normal, fluent, and goal-oriented. His eye contact was very good. His affect was appropriate. There was no evidence of anxiety or depression. There was no history of psychopathology or serious mental illness in this case. His attitude was friendly, outgoing, talkative, and cheerful. Intellectually, he is functioning in the average ranges. There is no evidence of cognitive impairment. His judgment was intact. His memory, recent and remote, was intact. His self-awareness and insight were good.

Inmate Linn discussed significant life changes that he has experienced, particularly since 1998. He has become actively involved in Christian Bible studies. He has a deep and serious relationship with The Lord. He stated that since his life has been committed to serving God, his Creator, he has no interest in drug or alcohol use. He understands that life is short, whereas his existence in Heaven is forever. He has determined to live a life worthy of his Biblical commitments, and to follow Biblical instructions in his life. This includes total abstinence from any destructive behaviors or substances, including drugs and alcohol.

Inmate Linn continues to attend Alcoholics Anonymous and Narcotics Anonymous as often as possible. Sometimes this is difficult due to institutional lockdowns. He stated that he enjoys these meetings, and he benefits from them.

Prior to the commitment offense 24 years ago, he met the requirement for the diagnosis of polysubstance abuse. He has been clean and sober throughout his prison experience of 24 years. He foolishly allowed a cellie to make pruno in their cell together when he first arrived, not realizing the serious consequences of this. He knows it now, and he stated he definitely would not allow this to happen anymore, although cellies do try to make pruno or use drugs. He is totally intolerant of this behavior. This shows significant growth and change over the years. At this point in time, there is no diagnosable mental disorder.

### CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):

| | |
|---|---|
| *AXIS I:* | No contributory clinical disorder. |
| *AXIS II:* | No contributory personality disorder. |
| *AXIS III:* | No contributory physical disorder. |
| *AXIS IV:* | Life-term incarceration. |
| *AXIS V:* | Current GAF = 90. |

*LINN, ROBERT*
*CDC NUMBER: C-82285*
*BPT MENTAL HEALTH EVALUATION*
*PAGE THREE*

## REVIEW OF LIFE CRIME:

Inmate Linn reviewed the commitment offense, including his use of cocaine prior to the commitment offense. He was working steadily at the time, but he needed extra money to support his drug habit. As a result, he engaged in criminal behavior. At the time of the offense, he was drinking beer. He has not used cocaine for three days. He stated he was intoxicated on alcohol at the time of the offense.

In order to rob the victims (illegal alien field workers), he and his crime partner had guns. Their only intention was to do the robberies and leave. There was never any premeditation for murder. His accomplice ran after one of the robbery victims who escaped. Shots were fired. The accomplice returned to the robbery scene, and stated, "I think I killed a guy."

Inmate Linn does have deep feelings of sorrow and remorse about the victim's death. I agree with prior evaluators, who also noted his sense of sorrow and remorse is sincere and genuine.

## ASSESSMENT OF DANGEROUSNESS:

A.     In considering his potential for dangerous behavior in the institutional environment, inmate Linn does not have a record of violent acts, possession of weapons, participation in riots, or threats to others. His disciplinaries, other than the possession of pruno in 1984, are not serious. The record supports the conclusion that his potential for violence in the institutional environment is definitely below average in comparison to other inmates.

B.     In considering his potential for dangerous behavior if released to the community at this point, I agree with the prior evaluators, who stated that his violence potential in the community would be no greater than the average citizen in the community. There are several facts that support this conclusion. Inmate Linn is not a criminally-oriented person. He does not have antisocial thinking or values. He does not have a personality disorder that would contribute towards violence. He definitely knows the difference between right and wrong, and he has a well developed conscience and strong abhorrence against wrong activities. As a Christian, he has strong values against injuring others. He has developed a sensitivity and awareness of the disastrous effects of illegal behavior. He has changed considerably since he was 21 years of age and was involved in the commitment offense.

C.     Other evaluators have noted that a risk factor for inmate Linn for potential violence would be if he were to return to the abuse of alcohol or drugs. The fact that this raises the issue about potential future drug use is what has concerned the Board of Prison Terms in the past. In this writer's opinion, this is no longer an issue in this man's life. I have been working with criminals now for 40 years, both as a parole agent and as a psychologist. If there was any danger that he would revert to drugs or alcohol, I think I would be able to discern this. In my

*LINN, ROBERT*
*CDC NUMBER: C-82285*
*BPT MENTAL HEALTH EVALUATION*
*PAGE FOUR*

opinion, this is no longer a factor in his life, and therefore it is no longer a risk factor.

### CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

There is no indication of any mental or emotional problems that would interfere with this inmate being granted parole. The prognosis for successful adjustment in the community in this case is excellent. There are many factors that would support this conclusion. This inmate has a very strong work ethic. He has a strong work history prior to the commitment offense, and he has a strong work history in the institution. He is an outstanding worker. He enjoys working, and he will not have any trouble securing employment. He does have numerous job offers in the community. He also has accumulated several trades: vocational drafting and computer drafting, vocational refrigeration and air conditioning, vocational appliance repair, and working four years as a glazier. In addition, he is a professional carpenter. Compared to other inmates, and even compared to other lifers, his work skills and work history are above average. These factors support the conclusion that he will do very well in the community.

In addition, he does have strong family support in the community. His sisters and brother are all doing very well. They have good-paying jobs, and they are anxious for his release. They will provide financial assistance, employment, and residence for him. This factor also is a strong indicator of successful adjustment in the community. His prognosis for success is excellent.

*M. Macomber, Ph.D.*
*Clinical Psychologist*
*Correctional Training Facility, Soledad*

*Bill Zika, Ph.D.*
*Senior Supervising Psychologist*
*Correctional Training Facility, Soledad*

*MM/gmj*

*D: 09/06/05*
*T: 09/08/05*

*D:\Word Files\BPT - 2005\LINN, ROBERT  C-82285  09-05  MACOMBER.doc*

**E X H I B I T**

**19**

Life Prisoner Evaluation
August 1996 Calendar

LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
AUGUST CALENDAR 1996

LINN, ROBERT J.

C-82285
PAGE 1

I. **COMMITMENT FACTORS:**

A. <u>Life Crime:</u>   Murder 1st, PC 187, count 1, case no. CR18380, counts 2 and 3, Robbery, PC 211. Sentence: 25 years to life. MEPD: 9/23/97. Victim: Guadalupe Selgado, (murder victim), Jose Selgado and Abel Selgado, (Robbery victims). Ages unknown.

1. <u>Offense Summary:</u>   On December 28, 1980, at approximately 4:30, Riverside County Sheriff Deputies responded to an avocado grove on Camaron Road, near Rancho California, subsequent to receiving a report of a robbery and a homicide in the area. Upon arrival, they received statements from the two robbery victims, Jose and Abel Selgado. According to the Selgado brothers they, and their brother Guadalupe, had been working at the edge of the avocado grove when they were robbed at gunpoint by two white men. Their brother, Guadalupe, had attempted to run away from the "Banditos", and had consequently been shot and killed by one of the robbers. Following a description of the auto used in the crime, Sheriff Deputies questioned co-defendant, Jon Crawley, who stated he had been watching a football game at the time of the crime, with the prisoner. The Sheriffs' investigators later received a statement from Jon Crawley's brother, Ronald, that the co-defendant had a history of "robbing" illegal aliens and had left Linn's house with a rifle on the day of the homicide. Linn was arrested for murder shortly afterwards. When questioned at the Sheriffs' station, he admitted the robbery and gave a statement that co-defendant Crawley had "killed" the victim when he (the victim) attempted to flee. (Ref. POR, pages 3 to 8.)

2. <u>Prisoner's Version:</u>   The prisoner states that crime occurred essentially as described in the P.O.R. Inmate Linn expressed remorse for the victim and the victim's family. He stated that he was addicted to cocaine at the time of the crime and had lost his ability to have any feelings for other people. He stated he never intended to kill anybody and doesn't believe Jon Crawley intended to kill the victim. Linn stated..."he (Crawley) just fired from the hip hoping to scare the victim and ... unfortunately one of the rounds hit the victim."

3. <u>Aggravating Circumstances:</u>   None.

4. <u>Mitigating Circumstances:</u>   The inmate has no history of prior criminal behavior.

LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
AUGUST CALENDAR 1996

LINN, ROBERT J.                                              C-82285
                                                            PAGE 2

II.  **PRECONVICTION FACTORS:**

   A.   <u>Juvenile Record:</u>   None.

   B.   <u>Adult Convictions:</u>  There is no adult conviction record except
        the instant offenses.

   C.   <u>Personal Factors:</u>  Inmate Linn was born January 5, 1958, in West
        Covina, California to Robert Linn and Betty Ayers.  He was the
        third of five children.  He describes himself as a poor student
        in his youth.  He dropped out of school in the ninth grade and
        went to work in the construction trade.  At the time of this
        arrest, he worked as the construction foreman for Southern
        California Home Builders.  He had worked for the same employer
        for 10 years.  He states he had dyslexia, a learning disability.
        He also described himself as an alcoholic and cocaine addict.  He
        started using marijuana at age 11 or 12 and was smoking 5 or 6
        "joints" a day at the time of his arrest.  He was married to
        Marion Snyder after his arrest but has subsequently lost track of
        her since leaving the county jail.  Linn has no children.
        (Information from P.O.R., page 2.)

III. **POSTCONVICTION FACTORS:**

   Inmate Linn was received into CDC 3/8/84 at CIM/RCC.  He was
   transferred to Folsom 4/3/84 where he was released to the general
   population on Close B custody and assigned to culinary.  He received a
   CDC-115 disciplinary report 12/22/84 for which he was found guilty of
   having home brewed alcohol in his cell.  This was his first and only
   documented disciplinary problem while in CDC custody.  Linn states
   the alcohol was not his and he has subsequently learned to avoid
   trouble initiated by other inmates.  On February 21, 1985, Linn's
   cellmate was stabbed 19 times.  Linn was cleared of any culpability in
   the case and probably saved the man's life by bringing the situation
   to staffs' attention, at some risk to his own life.

   On 3/19/86, Linn was transferred to CCI-IVB where he was released to
   the general population on Close A custody.  He was assigned to
   education, where he completed requirements for a high school GED
   certificate with a near A average.  The prisoner states his apparent
   learning disability, which was noted in his presentence psychiatric
   report, appears to have been a result of all of the cocaine he had
   been using before his arrest.  After a "couple of years drug free",
   Linn found he was able to "think clearly and do well in school."

LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
AUGUST CALENDAR 1996

LINN, ROBERT J.                                              C-82285
                                                            PAGE 3

### III. **POSTCONVICTION FACTORS:** cont'd

Linn was transferred to CMC-E on 1/4/89 where he was released to the general population on Medium A custody. He was assigned to Vocational Drafting where he received excellent grades. He is currently employable as a draftsman.

Inmate Linn was transferred to CTF 5/11/94. He is currently at CTF-N on Medium A custody. He is assigned to the Maintenance Paint Shop, where he has received excellent work reports.

Inmate Linn has received several laudatory documentations during his incarceration. He arrived at CDC with a letter of appreciation from the Riverside County Sheriffs' Office for carpenter work Linn performed at the county jail while awaiting his CDC sentence. He has also received laudatory chronos for his work on 10/25/85 and his participation in "Narcotics Anonymous"/"Alcoholics Anonymous" on 3/21/89, 5/31/90, 12/7/90, 6/25/91, 9/30/95 and 12/31/95. While at CMC-E, Linn completed several psychotherapeutic programs.

Inmate Linn last appeared before the B.P.T. on 4/8/93 for a Documentation Hearing. He was admonished to: 1) Complete Vocational Drafting. 2) Attend college. 3) Utilize his construction skills in a CDC job. 4) Participate in "Narcotics Anonymous"/"Alcoholics Anonymous" or a group activity and 5) Maintain a disciplinary free record. Linn has clearly complied with all B.P.T. directions except attending college. He states he came to CTF to attend college, but is unable to afford the tuition costs. Reader is referred to the Postconviction Progress Report for details.

### IV. **FUTURE PLANS:**

Inmate Linn states if paroled he intends to live with his sister, Sue Hoppman, at 18700 Yorba Linda Blvd. in Yorba Linda, CA. He states he has two jobs lined up with his brother-in-law, Bill Gomez, and former employer, Gary Carlson. He will drive a cement truck for Bill Gomez and do construction work for Gary Carlson. Linn states his prior legal problems came when he allowed other people, alcohol and drugs to influence his behavior. Linn states he has learned and demonstrated over the last 11 years to be substance free and his own person. Socially, Linn stated he intends to help his sister Sue raise her two children and spend more time with his family.

LIFE PRISONER EVALUATION REPORT
INITIAL PAROLE CONSIDERATION HEARING
AUGUST CALENDAR 1996

LINN, ROBERT J.                                                    C-82285
                                                                  PAGE 4

V.    **SUMMARY:**

   A.   Considering the commitment offense, prior record and prison
        adjustment, this writer believes the prisoner would present an
        unpredictable degree of threat to the public at this time, if
        released from prison.  He would probably present a low degree of
        threat to the public if he is able to remain substance abuse
        free.

   B.   Prior to release, the prisoner could benefit from exploring his
        commitment offense in a Category X Program.

   C.   This Board Report is based on a thorough review of the Central
        File and a 1 hour interview with Inmate Linn.

   D.   Inmate Linn was given a review of his Central File in preparation
        for the forthcoming B.P.T. Hearing.


J. McElroy
Correctional Counselor I


M.V. Hopkins
Correctional Counselor II


R.W. Carlos
Facility Captain(A)


W.J. Hill
Classification & Parole Representative

**E X H I B I T**

**20**

Life Prisoner Evaluation
December 1998 Calendar

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT HEARING
DECEMBER 1998 CALENDAR

C-82285

**Linn, Robert**

I.      **COMMITMENT FACTORS:**

A.      **Life Crime:**  All relevant documents from previous hearing(s) including the transcripts have been considered and that information appears valid, and the writer has no further information to add.

B.      **Prisoner's Version:**  Remains the same as stated in the previous hearing(s).

C.      **Aggravating and Mitigating Circumstances:**  Remains the same as stated in the previous hearing(s).

II.     **PRECONVICTION FACTORS:**  Documents from the previous hearing(s) have been considered and that information remains valid.

III.    **POSTCONVICTION FACTORS:**  Factors from the previous hearing(s) have been considered and that information remains valid.  Linn last appeared before the Board of Prison Terms on 12/4/96.  At that time the Board's recommendations were: 1) Remain disciplinary free, 2) Upgrade vocationally and educationally, 3) Participate in self-help and therapy.

Linn continued to participate in a self-help program, Alcoholics Anonymous, during the 12/96 to 12/97 period but did not attend during the 12/97 to present period.  Linn did not upgrade vocationally or educationally in the last two years.  Linn worked in Maintenance Painting and Yard B Culinary during these periods.  (See Postconviction Progress Report for details)

IV.     **FUTURE PLANS:**  Remain the same as indicated in the previous Board Report.

V.      **SUMMARY:**

A.      Considering the commitment offense, prior record and prison adjustment, the writer believes the prisoner would probably pose a moderate degree of threat to the public at this time, if released from prison.

B.      Prior to release, the prisoner could benefit from:

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 1998 CALENDAR                                        PAGE 2

      1.     Maintaining a disciplinary-free record.

      2.     Participating in a work assignment.

      3.     Completing trade training.

      4.     Participating in self-help and therapy.

C.     This Board Report is based upon three hours of interview, incidental contact in housing unit and review of the Central File.  Linn was given a Olson Review on 9/10/98.

Linn, Robert           C-82285           CTF           12/98

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 1998 CALENDAR                                    PAGE 4


D. Wade  CCI
D. Wade
Correctional Counselor I


R. Gilliam  CCII
R. Gilliam
Correctional Counselor II


A.C. Shinault
Facility Captain


J.K. Tyler  (C&PR.)
J.K. Tyler
Classification & Parole Representative


Linn, Robert                C-82285                CTF                12/98

**E X H I B I T**

**21**

Life Prisoner Evaluation
December 1999 Calendar

LIFE PRISONER EVALUATION REPORT                                    1
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER, 1999 CALENDAR

LINN, ROBERT                                          C-82285


I.    **COMMITMENT FACTORS:**

A.    **LIFE CRIME:** Murder 1st, PC 187, Count 1. Superior Court of California, County of
      Riverside, Case Number CR18380; Counts 2 and 3: Robbery, PC 211. Sentence: 25 years to
      Life. MEPD: September 23, 1997. Victims: Guadalupe Selgado (deceased). Jose Selgado and
      Abel Selgado, (victims of robbery), ages unknown.

1.    **Summary of Crime:** On December 28, 1980, at approximately 4:30 p.m., Riverside
      County Sheriff Deputies responded to a report of a robbery and a homicide at an avocado
      grove on Camaron Road, near Rancho, California. Once at the scene, the officers took
      statements from Jose and Abel Selgado, victims of the robbery. The Selgado brothers
      stated that they and their brother, Guadalupe Selgado, had been working at the edge of
      the avocado grove when two white men robbed them at gunpoint. Guadalupe attempted
      to run away but was shot and killed by the two robbers. Subsequent investigation
      revealed Linn's crime partner, Jon Crawley, had left Linn's house armed with a rifle.
      Investigator's received a statement from Ronald Crawley, indicating that Jon had a
      history of robbing illegal aliens and had left Linn's house, armed with a rifle on the day
      of the homicide. Linn was arrested for murder shortly afterwards. This information was
      obtained from pages 3, 4, 5, 6, 7 and 8, of the Probation Officer's Report (POR).

2.    **Prisoner's Version:** Linn was questioned at the time of his arrest and admitted to the
      robbery and gave a statement that crime partner Jon Crawley had killed the victim when
      the victim attempted to flee. Today, Linn states the following as his official version:
      Linn said that the crime essentially occurred as described in the POR. He expressed
      remorse for the victim's family. Linn stated that he was addicted to cocaine at the time of
      the crime and had lost his ability to have any feelings for other people. He stated that he
      never intended to kill anyone. Linn said he doesn't believe that Jon Crawley intended to
      kill the victim. Linn stated that he believed Crawley's intent was to merely scare the
      victim and unfortunately one of the bullets hit the victim.

B.    **AGGRAVATING/MITIGATING CIRCUMSTANCES**

1.    **Aggravating Factors:**

      a.    The manner in which the crime was carried out created a potential for serious
            injury to persons other than the victim.

      b.    During the commission of the crime the inmate had a clear opportunity to cease,
            but instead continued.

LIFE PRISONER EVALUATION REF                                                              2
INITIAL PAROLE CONSIDERATION HEARING
DECEMBER, 1999 CALENDAR

    2.   **Mitigating Factors:**    The inmate has a minimal or no history of criminal behavior.

## II.  PRECONVICTION FACTORS

**A.**    **Juvenile Record:** None.

**B.**    **Adult Convictions:** The instant offense is his only adult conviction.

**C.**    **Personal Factors:** Linn was born, January 5, 1958 in West Covina, California, to the union of Robert Linn and Betty Ayers. He is the third of five children. Linn described himself as a poor student in his youth. He dropped out of school in the ninth grade and went to work in construction. Linn states that at the time of his arrest, he was employed as the Construction Foreman for Southern California Homebuilders (SCHB). He states he worked for SCHB for ten years. He states that he had dyslexia. He also described himself as an alcoholic and cocaine addict. He said that he began using marijuana at the age of 11 or 12 and was smoking 5 or 6 marijuana cigarettes a day, up to the time of his arrest. He married Marion Snyder, after his arrest. He states that he lost contact with her. He stated that he has no children.

## III.  POSTCONVICTION FACTORS

**A.**    **Custody History:** Documents from the previous hearing(s) have been considered and that information remains valid. Linn remained at the Correctional Training Facility (CTF)-North. His custody has remained at Medium A. Linn last appeared before the Board of Prison Terms on December 16, 1998. The Board recommended that Linn become disciplinary-free, upgrade vocationally, educationally and participate in self-help. He was denied parole for one year.

**B.**    **Work, Education, Vocation, Therapy & Self-Help Activities:** Linn is currently assigned to Vocational Appliance Repair. He is progressing satisfactorily. Linn has not attended any self-help programs or upgraded vocationally or educationally.

**C.**    **Disciplinary History:** Linn has remained disciplinary-free during this review period.

## IV.  FUTURE PLANS

**A.**    **Residence:** Linn states that if granted parole he will reside with his sister, Sue Hoppman, at 18700 Yorba Linda Boulevard, Riverside, California.

**B.**    **Employment:** Linn stated he has two jobs lined up with his brother-in-law, Bill Gomez , and with his former employer, Gary Carlson. He will drive a cement truck for Bill Gomez and do construction work for Gary Carlson.

## V.  USINS STATUS: Not applicable.

## VI.  SUMMARY

LINN, ROBERT          C-82285                          CTF-SOLEDAD        12/99

LIFE PRISONER EVALUATION T
INITIAL PAROLE CONSIDERATION HEARING
DECEMBER, 1999 CALENDAR

3

A.    Considering the commitment offense, prior record and institutional adjustment, the writer believes that the prisoner could possibly pose a low degree of threat to the public, if released at this time and if Linn is firmly committed to a life of total abstinence from drugs and alcohol. This assessment is based upon the inmate's lack of criminal history and realistic parole plans which include viable work skills.

B.    Prior to release, the prisoner could benefit from the following:

1.    Attending Alcoholics Anonymous.
2.    Continue to remain disciplinary-free.
3.    Upgrade educationally.

C.    This Board Report is based upon two hours of Central File research, an interview with Linn and incidental contact with the prisoner during this period of review.

D.    Inmate Linn reviewed his Central File on September 30, 1999.

LINN, ROBERT          C-82285                    CTF-SOLEDAD        12/99

LIFE PRISONER EVALUATION T
INITIAL PAROLE CONSIDERATI  HEARING
DECEMBER, 1999 CALENDAR

4

_D. Wade_  CCI

D. Wade
Correctional Counselor I

R. Gilliam
Correctional Counselor II

A.C. Shinault
Facility Captain

J.K. Tyler
Classification and Parole Representative

LINN, ROBERT          C-82285                    CTF-SOLEDAD       12/99

**E X H I B I T**

**22**

Life Prisoner Evaluation
July 2001 Calendar

L   : PRISONER EVALUATION REPC..T
SUBSEQUENT PAROLE CONSIDERATION HEARING
JULY 2001 CALENDAR

LINN, ROBERT                                              C-82285

## I.    COMMITMENT FACTORS:

A.    **LIFE CRIME:** Murder 1st, PC 187, Count 1. Superior Court of California,
County of Riverside, Case Number CR 18380; Counts 2 and 3: Robbery, PC 211.
Sentence: 25 years to Life. MEPD: September 23, 1997. Victims: Guadalupe
Selgado (deceased). Jose Selgado and Abel Selgado, (victims of robbery), ages
unknown.

1.    **Summary of Crime:** On December 28, 1980, at approximately 4:30 p.m.,
Riverside County Sheriff Deputies responded to a report of a robbery and
a homicide in an avocado grove on Camaron Road, near Rancho,
California. Once at the scene, the officers took statements from Jose and
Abel Selgado, victims of the robbery. The Selgado brothers stated that
they and their brother, Guadalupe Selgado, had been working at the edge
of the avocado grove when two white men robbed them at gunpoint.
Guadalupe attempted to run away but was shot and killed by the two
robbers. Subsequent investigation revealed Linn's crime partner, Jon
Crawley, had left Linn's house armed with a riffle. Investigators received
a statement from Ronald Crawley, indicating that Jon had a history of
robbing illegal aliens and had left Linn's house, armed with a rifle on a day
of the homicide. Linn was arrested for murder shortly afterwards. This
information was obtained from pages 3, 4, 5, 6, 7 and 8, of the Probation
Officer's Report (POR).

2.    **Prisoner's Version:** Linn was questioned at the time of his arrest and
admitted to the robbery and gave a statement that crime partner, Jon
Crawley, had killed the victim when the victim attempted to flee. Today,
Linn states the following as his official version: Linn said that the crime
essential occurred as described in the POR. He expressed remorse for the
victim's family. Linn stated that he was addicted to cocaine at the time of
the crime and had lost his ability to have any feelings for other people. He
stated that he never intended to kill anyone. Linn said he doesn't believe
that Jon Crawley intended to kill the victim. Linn stated that he believed
Crawley's intent was to merely scare the victim and unfortunately one of
the bullets hit the victim.

## B.    AGGRAVATING/MITIGATING CIRCUMSTANCES:

1.    **Aggravating Factors:**

LIFE PRISONER EVALUATI⌐ ˙REPORT                                         2
SUBSEQUENT PAROLE CC ⌐DERATION HEARING
JULY 2001 CALENDAR

    **a.**    The manner in which the crime was carried out created a potential for serious injury to persons other than the victim.

    **b.**    During the commission of the crime the inmate had a clear opportunity to cease, but instead continued.

  **2.**  **Mitigating Factors:** The inmate has a minimal or no history of criminal behavior.

## II.   PRECONVICTION FACTORS:

**A.**   **Juvenile Record:** None

**B.**   **Adult Convictions:** The instant offense is his only adult conviction.

**C.**   **Personal Factors:** Linn was born, January 5, 1958 in West Covina, California, to the union of Robert Linn and Betty Ayers. He is the third of five children. Linn described himself as a poor student in his youth. He dropped out of school in the ninth grade and went to work in construction. Linn states that at the time of his arrest, he was employed as the Construction Foreman for Southern California Homebuilders (SCHB). He states he worked for SCHB for ten years. He states that he has dyslexia. He also described himself as an alcoholic and cocaine addict. He said that he began using marijuana at the age of 11 or 12 and was smoking 5 or 6 marijuana cigarettes a day, up to the time of his arrest. He married Marion Snyder, after his arrest. He states that he lost contact with her. He stated that he has no children, the marriage has been annulled.

## III.   POSTCONVICTION FACTORS:

**A.**   **Special Accommodations/Disability:** None.

**B.**   **Custody History:** Documents from the previous hearing have been considered and that information remains valid. Linn remained at the Correctional Training Facility (CTF)-North. His custody has remained at Medium A. Linn last appeared before the Board of Prison Terms on 07/18/00. The Board recommended that Linn become disciplinary-free, upgrade vocationally, and participate in self-help. He was denied parole for one year.

**C.**   **Work, Education, Vocation, Therapy & Self-Help Activities:** Linn is currently assigned to Vocational Appliance Repair. He is progressing well. He has gained work training as customer service appliance clerk. He is described by his instructor J.R. Hill, (Per 128-E dated 01/04/01) "as being self motivated, works

LIFE PRISONER EVALUATIC '' REPORT                                    3
SUBSEQUENT PAROLE CC    DERATION HEARING
JULY 2001 CALENDAR

well with other students, semi-skilled and employable at Entry Level." During interview he stated he reads technical manuals on a variety of subjects as time permits. He is currently reading about masonry. Linn has participated in the CTF-North AA program. His sponsor Crystal M. Bailey (per 128-B dated 01/12/01) describes Linn's "ability to related with group, improve himself through involvement with it (the process). He consistently demonstrates a willingness to cooperate."

**D.**    **Disciplinary History:**  Remained disciplinary free.


**IV.**    **FUTURE PLANS:**

**A.**    **Residence:**  He is currently working towards establishing residence in Riverside County.

**B.**    **Employment:**  He is planning on working for a Mr. Gary Carlson, owner contractor builder. He will be able to work in Riverside County.


**V.**    **USINS STATUS:**  Not applicable


**VI.**    **SUMMARY:**

**A.**    Considering the commitment offense, prior record, and institutional adjustment, the writer believes that Linn poses a low degree of threat to the public. During interview, this Counselor asked Linn if he was released, would he continued to be free from drugs and alcohol? He stated, "yes," he would start his life, by experiencing the joys of gardening, pet ownership, and being employed.

**B.**    Prior to release, the prisoner could benefit from the following:

1.    Continue attending Alcoholics Anonymous.

2.    Continue to remain disciplinary-free.

3.    Obtain IMPACT group program cert. of completion.

4.    Continue to utilize time reading, upgrading his knowledge with technical manuals.

**C.**    This Board Report is based upon 2 hours of C-file research, an interview with Linn, Olson Review of approximately 1.5 hours.

LIFE PRISONER EVAL    REPORT
SUBSEQUENT PAROLE    SIDERATION HEARING
JULY 2001 CALENDAR

4

D.    Inmate Linn reviewed his C-file on 05/15/01.

LIFE PRISONER EVAL ☐ REPORT
SUBSEQUENT PAROLE ⸗SIDERATION HEARING
JULY 2001 CALENDAR

5

J.L. Brown
Correctional Counselor I

J. Selvidge
Correctional Counselor II

A. Shinault
Facility Captain

D. Levorse
Classification and Parole Representative

LINN, ROBERT              C-82285              CTF-SOLEDAD          JUL/2001

**E X H I B I T**

**23**

Life Prisoner Evaluation
December 2002 Calendar

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2002 CALENDAR

**LINN, ROBERT**                                                        **C-82285**

I.    **COMMITMENT FACTORS:**

    A.    **Life Crime:** Murder 1st, PC 187, Count 1. Superior Court of California, County
        of Riverside, Case Number CR 18380; Counts 2 and 3: Robbery, PC 211.
        Sentence: 25 years to Life. MEPD: September 23, 1997. Victims: Guadalupe
        Selgado (deceased). Jose Selgado and Abel Selgado, (victims of robbery), ages
        unknown.

        1.    **Summary of Crime:** On December 28, 1980, at approximately 4:30 p.m.,
            Riverside County Sheriff Deputies responded to a report of a robbery and
            a homicide in an avocado grove on Camaron Road, near Rancho,
            California. Once at the scene, the officers took statements from Jose and
            Abel Selgado, victims of the robbery. The Selgado brothers stated that
            they and their brother, Guadalupe Selgado, had been working at the edge
            of the avocado grove when two white men robbed them at gunpoint.
            Guadalupe attempted to run away but was shot and killed by the two
            robbers. Subsequent investigation revealed Linn's crime partner, Jon
            Crawley, had left Linn's house armed with a rifle. Investigators received a
            statement from Ronald Crawley indicating that Jon had a history of
            robbing illegal aliens and had left Linn's house, armed with a rifle on the
            day of the homicide. Linn was arrested for murder shortly afterwards.
            This information was obtained from pages 3, 4, 5, 6, 7 and 8 of the
            Probation Officer's Report (POR).

        2.    **Prisoner's Version:** Linn was questioned at the time of his arrest and
            admitted to the robbery and gave a statement that crime partner, Jon
            Crawley, had killed the victim when the victim attempted to flee. Today,
            Linn states the following as his official version: Linn said that the crime
            essentially occurred as described in the POR. He expressed remorse for
            the victim's family. Linn stated that he was addicted to cocaine at the time
            of the crime and had lost his ability to have any feelings for other people.
            He stated that he never intended to kill anyone. Linn said he doesn't
            believe that Jon Crawley intended to kill the victim. Linn stated that he
            believed Crawley's intent was to merely scare the victim and unfortunately
            one of the bullets hit the victim.

LIFE PRISONER EVALUAT' 'REPORT                                        2
SUBSEQUENT PAROLE C( IDERATION HEARING
DECEMBER 2002 CALENDA. .

    **B.**   **Aggravating/Mitigating Circumstances:**

       **1.**   **Aggravating Factors:**

          **a.**   The manner in which the crime was carried out created a potential for serious injury to persons other than the victim.

          **b.**   During the commission of the crime the inmate had a clear opportunity to cease, but instead continued.

       **2.**   **Mitigating Factors:**  The inmate has a minimal or no history of criminal behavior.

## II.    PRECONVICTION FACTORS:

**A.**   **Juvenile Record:**  None.

**B.**   **Adult Convictions:**  The instant offense is his only adult conviction.

**C.**   **Personal Factors:**  Linn was born, January 5, 1958 in West Covina, California, to the union of Robert Linn and Betty Ayers. He is the third of five children. Linn described himself as a poor student in his youth. He dropped out of school in the ninth grade and went to work in construction. Linn states that at the time of his arrest, he was employed as the construction foreman for Southern California Homebuilders (SCHB). He states he worked for SCHB for ten years. He states that he has dyslexia. He also described himself as an alcoholic and cocaine addict. He said that he began using marijuana at the age of 11 or 12 and was smoking five or six marijuana cigarettes a day, up to the time of his arrest. He married Marion Snyder, after his arrest. He states that he lost contact with her. He stated that he has no children, the marriage has been annulled.

## III.    POSTCONVICTION FACTORS:

**A.**   **Special Accommodations/Disability:**  None.

**B.**   **Custody History:**  Documents from the previous hearing have been considered and that information remains valid. Linn remained at the Correctional Training Facility (CTF-North). His custody has remained at Medium A. Linn last appeared before the Board of Prison Terms on 12/5/01. The Board recommended that Linn become disciplinary-free, participate in therapy and participate in self-help. He was denied parole for one year.

LINN, ROBERT       C-82285       CTF-SOLEDAD       DEC/2002

LIFE PRISONER EVALUAT—  REPORT
SUBSEQUENT PAROLE CC  IDERATION HEARING
DECEMBER 2002 CALENDAR                                              3

C.   **Work, Education, Vocation, Therapy & Self-Help Activities:**  Linn is currently
assigned to Vocational Appliance Repair.  He is progressing well.  He has gained
work training in air conditioning/refrigeration.  He is described by his instructor
R. Lettzell per CDC 128B dated 6/18/02 "as being self motivated, works well
other students, semi-skilled and employable at Entry Level."  During interview he
stated he reads technical manuals on a variety of subjects as time permits.  He is
currently reading about architectural drafting.  Linn has participated in the CTF-
North NA Program.  His sponsor Dave Rodriguez describes, "Linn's tremendous
personal success" per CDC 128-B dated 7/1/02.

D.   **Disciplinary History:**  Remained disciplinary free.

IV.   **FUTURE PLANS:**

A.   **Residence:**  He is currently working towards establishing residence in Riverside
County.

B.   **Employment:**  He is planning on working for a Mr. Gary Carlson, owner
contractor builder.  He will be able to work in Riverside County.

V.   **USINS STATUS:** Not applicable.

VI.   **SUMMARY:**

A.   Considering Linn does not have a juvenile record.  The instant offense is his only
conviction.  He was present at the scene of the crime, but was not the shooter.  He
has remained disciplinary free receiving only two minor RVR's in the last 20
years.  His institutional adjustment is above average.  This writer believes that
Linn poses a low degree of threat to the public if released at this time.  Linn has
stated he is very remorseful and he thinks about the victim and his family often.
He feels this period of incarceration has enabled him to get his life together.

B.   Prior to release the prisoner could benefit from the following:

1.   Continue attending Narcotics Anonymous.

2.   Continue to remain disciplinary-free.

3.   Continue to utilize time reading, upgrading his knowledge with technical
manuals.

LIFE PRISONER EVALUAT'   REPORT                                          **4**
SUBSEQUENT PAROLE CC   IDERATION HEARING
DECEMBER 2002 CALEND⌐ . .

    **C.**    This report is based upon  2 hours of C-File research, an interview with Linn, Olson Review of approximately 1.5 hours.

    **D.**    Inmate Linn reviewed his C-File on 9/24/02.

    **E.**    No accommodation for the purposes of effective communication was required per the Armstrong Remedial Plan (ARP).

LINN, ROBERT        C-82285        CTF-SOLEDAD        DEC/2002

LIFE PRISONER EVALUAT     REPORT                                                    5
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2002 CALENDAR


_____        10-10-02
J.L. Brown                                Date
Correctional Counselor I


_____        10-10-02
J. Tufte                                  Date
Correctional Counselor II


_____        10-23-02
R. Pope                                   Date
Facility Captain


_____        10-28-02
D.S. Levorse                              Date
Classification and Parole Representative


LINN, ROBERT              C-82285              CTF-SOLEDAD              DEC/2002

**E X H I B I T**

**24**

Life Prisoner Evaluation
December 2003 Calendar

COPY TO INMATE ON
2-18-04

## LIFE PRISONER EVALUATION REPORT
### SUBSEQUENT PAROLE CONSIDERATION HEARING
### DECEMBER 2003 CALENDAR

LINN, ROBERT                                                    C-82285

I.    **COMMITMENT FACTORS:**

A.    **Life Crime:** Murder 1st, PC 187, Count 1, Robbery 211, Counts 2 and 3, Use of Weapon (rifle). Riverside County Case #CR18380. Sentence: 25 years to Life. Date received in CDC: 3/8/84, MEPD: 9/8/97. Victims: Guadalupe Selgado (deceased). Jose Selgado and Abel Selgado (victims of robbery), ages unknown.

1.    **Summary of Crime:** All relevant documents from the previous hearing including the transcripts have been considered and that information appears valid. The writer has no further information to add.

2.    **Prisoner's Version:** Linn stated in an interview on 9/7/03 that his version remains the same as stated in the previous hearing.

3.    **Aggravating/Mitigating Circumstances:**

a.    **Aggravating Factors:** Remains the same as stated in the previous hearing.

b.    **Mitigating Factors:** Remains the same as stated in the previous hearing.

B.    **Multiple Crime(s):** N/A.

1.    **Summary of Crime:** N/A.

2.    **Prisoner's Version:** N/A.

II.   **PRECONVICTION FACTORS:**

A.    **Juvenile Record:** Although there is no juvenile record, Linn stated that he was placed on probation for burglary when he was 13 years old.

LIFE PRISONER EVALUATIO   REPORT                                          2
SUBSEQUENT PAROLE CO   DERATION HEARING
DECEMBER 2003 CALENDAR

   B.   **Adult Convictions and Arrests:** Documents from the previous hearing have been considered and that information remains valid.

   C.   **Personal Factors:** Documents from the previous hearing have been considered and that information remains valid.

## III.   POSTCONVICTION FACTORS:

   A.   **Special Programming /Accommodations:** None.

   B.   **Custody History:** Documents from the previous hearing have been considered and that information remains valid. Linn remained at CTF-N in the general population. He completed Vocational Appliance Repair and is currently assigned as a porter.

   C.   **Therapy and Self-Help Activities:** Documents from the previous hearing have been considered and that information remains valid. Linn continued participation in Narcotics Anonymous. Linn stated that he is currently enrolled in Anger Management.

   D.   **Disciplinary History:** Documents from the previous hearing have been considered and that information remains valid. Linn has been disciplinary free since 1998.

   E.   **Other:** Linn went to his 4th Subsequent Parole Consideration on 12/4/02 and parole was granted. On 5/2/03 the BPT's decision to grant parole was reversed by the Governor of California. Even though Linn has made considerable progress during his over 22 years of incarceration, it was concluded that it is premature to grant him a parole release date at this time. The gravity of the crime was a negative factor. There was concern about the serious disciplinary in 1984 for Manufacturing Alcoholic and Linn did not participate in AA or NA until 1990. Another concern was 5 disciplinary reports for attendance problems in his work assignment during a 3 year period (1998 to 2000). During this period Linn has been following all the BPT guidelines. He has been disciplinary free. He completed a vocation and he has been participating in NA when it has been offered.

## IV.   FUTURE PLANS: Linn plans to attend NA upon release. He currently has an AA sponsor in Riverside County. He has the morale support from all family members.

   A.   **Residence:** Linn has three options for a residence:

LINN, ROBERT     C-82285        CTF-SOLEDAD     DEC/2003

LIFE PRISONER EVALUATI⁻ ⁻⁻REPORT
SUBSEQUENT PAROLE CC .DERATION HEARING                                    3
DECEMBER 2003 CALENDAR

    1.    Sister-in-law, Laura Snyder, P.O. Box 827, Wildomar, CA 92595,
        telephone # (909) 678-4710.

    2.    Sister, Tricia Bramwell, 26651 Castile Lane, Mission Viejo, CA 92691,
        telephone # (949) 472-2300. (Orange County).

    ~~3.~~    ~~My Family Incorporated (MFI); a halfway house, 5870 Arlington Street,~~
        ~~Riverside, CA 92504.~~

**B.**    **Employment:** There are two offers of employment (letters are in the
        Miscellaneous Section of the Central File):

    1.    Foam Works with Mark Harrington, 532 Third Street, Lake Elsinore, CA
        92530, telephone # (909) 674-0245.

    ~~2.~~    ~~DSC Enterprises with Ron Linn, 5766 Baldwin Avenue, Riverside, CA~~
        ~~92509, telephone # (909) 685-7465.~~

**C.**    **Assessment:** Linn has numerous letters of support from family, friends, and law
        enforcement. He has viable parole plans

**V.**    **USINS STATUS:** Linn is a United States citizen.

**VI.**    **SUMMARY:**

**A.**    Considering the commitment offense, prior record and prison adjustment, the
        writer believes the prisoner would probably pose a low degree of threat to the
        public at this time, if released from prison, provided he continues his involvement
        in AA/NA and refrains from the use of alcohol and to illegal drugs. He has been
        incarcerated approximately 20 years and has been disciplinary free since 1998.
        He has received his GED and completed a vocational program.

**B.**    Prior to release, the prisoner could benefit from:

    1.    Remaining disciplinary free.
    2.    Participating in a work assignment.
    3.    Continuing to participate in self-help that is available.

**C.**    This Board Report is based on 4 hours of Central File research, an interview with
        Inmate Linn and incidental contact with the prisoner during this period of review.

**D.**    Inmate Linn reviewed his Central File on 9/7/03 as verified by the CDC 128B of
        the same date.

LINN, ROBERT        C-82285        CTF-SOLEDAD        DEC/2003

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2003 CALENDAR                                                    4

    **E.**    No accommodation for the purpose of effective communication was required per
the Armstrong Remedial Plan (ARP).

LINN, ROBERT        C-82285        CTF-SOLEDAD        DEC/2003

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2003 CALENDAR

5

_J. Studebaker_ 9/16/03
J. Studebaker                Date
Correctional Counselor I


_R. Torres_ 9-17-03
R. Torres                    Date
Correctional Counselor II


_L. Trexler_ 9-17-03
L. Trexler                   Date
Facility Captain


_D. S. Levorse_ 9-23-03
D. S. Levorse                Date
Classification and Parole Representative


LINN, ROBERT          C-82285              CTF-SOLEDAD          DEC/2003

**E X H I B I T**

**25**

Life Prisoner Evaluation
April 2005 Calendar

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
APRIL 2005 CALENDAR


LINN, ROBERT                                                    C82285


I.    **COMMITMENT FACTORS:**

    A.    **Life Crime:** Murder 1st, PC 187, Count 1, Robbery 211, Counts 2 and 3, Use of Weapon (Rifle). Riverside County Case #CR18380. Sentence: 25 years to Life. Received in CDC on 3/8/84, MEPD: 10/23/97. Victims: Guadalupe Selgado (Deceased). Jose Selgado and Abel Selgado (Victims of Robbery), Ages: Unknown.

        1.    **Summary of Crime: On** December 28, 1980, at approximately 4:30 p.m., Riverside County Sheriff deputies responded to a report of a robbery and a homicide in an avocado grove on Camaron Road, near Rancho, California. Once at the scene, the officers took statements form Jose and Abel Selgado, victims of the robbery. The Selgado brothers stated that they and their brother, Guadalupe Selgado, had been working at the edge of the avocado grove when two white men robbed them at gunpoint. Guadalupe attempted to run away but was shot and killed by the two robbers. Subsequent investigation revealed Linn's crime partner, Jon Crawley, had left Linn's house armed with a rifle. Investigators received a statement from Ronald Crawley indicating that Jon had a history of robbing illegal aliens and had left Linn's house, armed with a rifle on the day of the homicide. Linn was arrested for murder shortly afterwards. This information was obtained from pages 3, 4, 5, 6, 7 and 8 of the Probation Officer's Report (POR).

        2.    **Prisoner's Version:** Robert J. Linn, hereafter Petitioner, begins by summarizing his version of the crime.

            On the afternoon of December 28, 1980, Petitioner, 21 years of age, and Jon R. Crawley, 20 years of age, hereafter accomplice, left Petitioner's residence in the accomplice's vehicle. Both were armed with 22 caliber rifles. Their intent was to drive to the avocado groves in Rancho California Hills to seek-out and rob immigrant farm workers.

            Soon after they arrived at the grove, they ran across three men working alongside a narrow (approx. 12 feet wide) paved service road. They passed

COPY TO INMATE ON:
FEB 1 5 2005

by and continued onward around a curve. They then turned around, approximately 150 meters later, and headed back toward the worker's location. Petitioner and accomplice pulled along the shoulder of the road where the three workers were, stepped out of the vehicle, and both were armed with rifles.

When Petitioner and accomplice stepped from the vehicle, one worker, named Guadalupe Selgado (murder victim), ran into the avocado tree grove. The other two workers, Abel and Jose Selgado (robbery victims), froze in place. However, within seconds, Jose also ran. Several seconds later Abel yelled for him not to run, so Jose stopped.

The moment Petitioner and accomplice stepped from the vehicle, Petitioner's accomplice went to a running pursuit of Guadalupe, who had already fled into the tree grove. When accomplice reached the tree aisle that Guadalupe ran into, accomplice fired a shot holding his rifle from an abdomen height positioned to his side. Accomplice then ran into the grove after Guadalupe.

During this time, Petitioner had the other two workers at gunpoint and proceeded to rob them. Approximately 50 seconds later, the accomplice ran out from the grove returning to the Petitioner's and other robbery victim's location. Petitioner had already taken money from Abel, and Jose was in the process of handing his money over when accomplice returned.

It was upon accomplice's return from the grove that accomplice told Petitioner "I think I killed him". Jose gave his money to accomplice. However, this robbery was in progress while the accomplice was away in the grove.

It wasn't until after Jose gave up his money that they were ordered to lay down. As soon as they laid down. Petitioner and accomplice yelled and gestured for them to run. Therefore, they took off running. Petitioner and accomplice got in the vehicle and fled the scene of the crime. The murder robbery occurred all within approximately one minute's time.

The Sheriff Investigators traffic stopped the petitioner's accomplice a few days after the crime was committed and questioned him about the robbery murder. Petitioner and accomplice were arrested ten (10) days after the crime was committed.

3.     **Aggravating/Mitigating Circumstances:**

LINN, ROBERT                C82285                CTF-SOLEDAD                APR/2005

LIFE PRISONER EVALUA.    REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
APRIL 2005 CALENDAR                                                          3

      a.    **Aggravating Factors:**

         1.  The manner in which the crime was carried out created a potential for serious injury to persons other than the victim.

         2.  During the commission of the crime the inmate had a clear opportunity to cease, but instead continued.

      b.    **Mitigating Factors:** The inmate has a minimal or no history of criminal behavior.

  **B.**   **Multiple Crime(s):** None.

      1.    **Summary of Crime:** N/A

      2.    **Prisoner's Version:** N/A

## II.   PRECONVICTION FACTORS:

  **A.**   **Juvenile Record:** None.

  **B.**   **Adult Convictions & Arrests:** The instant offense is his only adult conviction.

  **C.**   **Personal Factors:** Linn was born, January 5, 1958 in West Covina, California, to the union of Robert Linn and Betty Ayers. He is the third of five children. Linn described himself as a poor student in his youth. He dropped out of school in the ninth grade and went to work in construction. Linn states that at the time of his arrest, he was employed as the construction foreman for Southern California Homebuilders (SCHB). He states he worked for SCHB for then years. He states that he has dyslexia. He also described himself as an alcoholic and cocaine addict. He said that he began using marijuana at the age of 11 or 12 and was smoking 5 or 6 marijuana cigarettes a day, up to the time of his arrest. He married Marion Snyder, after his arrest. He states that he lost contact with her. He stated that he has no children, the marriage has been annulled.

## III.   POSTCONVICTION FACTORS:

  **A.**   **Special Programming/Accommodations:** None.

LINN, ROBERT        C82285           CTF-SOLEDAD       APR/2005

LIFE PRISONER EVALUA      REPORT                                        4
SUBSEQUENT PAROLE CONSIDERATION HEARING
APRIL 2005 CALENDAR

**B.**   <u>Custody History:</u> On 3/8/84 Linn was received into CDC at CIM-RCC from
Riverside County to serve a 25 years to Life term for a Murder 1st Degree
conviction. On 4/3/84 he was transferred to Folsom Prison under Close B custody
for Level-IV programming. On 3/20/86 Linn was received at CCI under Close A
custody to facilitate Family Visitation. On 1/4/89 he was transferred to CMC-E
under Medium A custody for Level-III programming. On 5/11/93 Linn was
received at CTF under Medium A custody for Level-II programming. During his
incarceration Linn participated in the following work/school assignments:

| Date Assigned: | Assignment: | Performance Rating: |
|---|---|---|
| 06/21/88 | Passed GED | |
| 05/20/89 | Maintenance Carpentry Shop | Above Average/Except |
| 03/14/90 | Drafting | A+ |
| 10/29/92 | Landscaping | Above Average |
| 10/29/92 | Completed Computer Aided Drafting & Design (2200 Hours). | |
| 05/28/93 | Support Services. | Above Average |
| 04/16/94 | Maintenance Paint | Above Average |
| 08/13/97 | Food Server | Above Average/Satisfactory |
| 02/20/99 | Major Appliance Repair | C, B, A Grades |
| 03/28/03 | Completed Vocational Appliance Repair | |
| 04/19/03 | Janitorial | Above Average/Satisfactory |
| 08/09/03 | North Dorm Porter | Satisfactory/Above Average |
| 06/09/04 | Dining Room Server | Satisfactory |
| 08/04/04 | Sanitation | Satisfactory |

**C.**   <u>Therapy and Self-Help Activities:</u> During his 21 years of incarceration Linn has
participated in the following:

Alcoholic's Anonymous – (7/95-6/97) (7/00-12/00).

Narcotic's Anonymous – (2/90-6/91) 10/01-12/04).

Impact Program – (5/18/01) 14-Week Workshop.

Project C.H.A.N.G.E – (Voluntarily Participated in 44-Week Course ending
12/1/03).

Beginning Stress Management & Relaxation Training (11/20/91) – Completed 4
Week Group).

Substance Abuse Therapy – (3/12/92) Completed 8 Week Program).

LIFE PRISONER EVALUA   ` REPORT                                                    5
SUBSEQUENT PAROLE C NSIDERATION HEARING
APRIL 2005 CALENDAR

D.   **Disciplinary History:** During his 21 years of incarceration, Linn received the
following CDC-115s and CDC-128As:

CDC-115's:

| 12/22/84 | FOL | CCR 3006, 3016 | Homebrew Found In Cell. **Guilty.** |
| 05/8/98 | CTF | CCR 3041 | Performance. **Guilty.** |
| 08/4/98 | CTF | CCR 3041 | Performance. **Guilty.** |

CDC-128A's:

| 03/7/98 | CTF | Failure To Report. |
| 07/14/99 | CTF | Failure To Report. |
| 06/22/00 | CTF | Failure To Report. |

E.   **Other:** On 4/21/04, Linn appeared before Board of Prison Terms for Subsequent
Parole Consideration Hearing #5. Board of Prison Terms denied parole for one
year and made the following recommendations: 1) Stay disciplinary free, 2) Earn
positive chronos, and 3) Get self-help. During this period Linn remained
disciplinary free and continued to participate in Narcotic's Anonymous.

IV.   **FUTURE PLANS:**

A.   **Residence:** Linn has two options for a residence:

(1).  Sister-in-law, Laura Snyder, P.O. Box 827, Wildemar, CA. 92595.
Telephone: (909) 678-4710.

(2).  Sister, Tricia Bramwell of 26651 Castle Lane, Mission Viejo, CA 92691,
Telephone: (949) 472-2300. (Orange County).

B.   **Employment:** There is a an offer of employment from:

Foam Works with Mark Harrington, 532 Third Street, Lake Elsinore, CA 92530.
Telephone: (909) 674-0245.

C.   **Assessment:** Linn's parole plans appear reasonable. There are numerous letters
of support from family, friends and law enforcement.

V.   **USINS STATUS:** Linn is a United States citizen.

LINN, ROBERT            C82285                CTF-SOLEDAD            **APR/2005**

LIFE PRISONER EVALUATION REPORT                                        6
SUBSEQUENT PAROLE CONSIDERATION HEARING
APRIL 2005 CALENDAR

## VI.   SUMMARY:

A.   Prior to release the prisoner could benefit from: remaining disciplinary free.

B.   This report is based upon a personal interview with inmate Linn and an extensive Central File review.

C.   Inmate Linn reviewed his Central File on 1/13/05 as verified by the CDC-128B of same date.

D.   No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

LINN, ROBERT              C82285                   CTF-SOLEDAD              APR/2005

LIFE PRISONER EVALUAT REPORT                                              7
SUBSEQUENT PAROLE CC IDERATION HEARING
APRIL 2005 CALENDAR


P. McPartlan,                    2-7-05
_____  _____
Correctional Counselor I         Date


R. Torres, M.A.                 2-14-05
_____  _____
Correctional Counselor II        Date


L.M. Trexler,                    FCA, 2/14/05
_____  _____
Facility Captain                 Date


D. S. Levorse,                   C&PR 2/14/05
_____  _____
Classification and Parole Representative    Date


LINN, ROBERT          C82285              CTF-SOLEDAD        APR/2005

**E X H I B I T**

26

Life Prisoner Evaluation
September 2006 Calendar

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPTEMBER 2006 CALENDAR

LINN, ROBERT                                                    C82285

I.    **COMMITMENT FACTORS:**

A.    **Life Crime:** Murder 1st, PC 187, Count 1, Robbery 211, Counts 2 and 3, Use of
      Weapon (Rifle). Riverside County Case #CR18380. Sentence: 25 years to Life.
      Received in CDC on 3/8/84, MEPD: 10/23/97. Victims: Guadalupe Selgado
      (Deceased). Jose Selgado and Abel Selgado (Victims of Robbery). Ages:
      Unknown.

      1.    **Summary of Crime:** On December 28, 1980, at approximately 4:30 p.m.,
            Riverside County Sheriff's deputies responded to a report of a robbery and
            a homicide in an avocado grove on Camaron Road, near Rancho,
            California. Once at the scene, the officers took statements from Jose and
            Abel Selgado, victims of the robbery. The Selgado brothers stated that
            they and their brother, Guadalupe Selgado, had been working at the edge
            of the avocado grove when two white men robbed them at gunpoint.
            Guadalupe attempted to run away but was shot and killed by the two
            robbers. Subsequent investigation revealed Linn's crime partner, Jon
            Crawley, had left Linn's house armed with a rifle. Investigators received a
            statement from Ronald Crawley indicating that Jon had a history of
            robbing illegal aliens and had left Linn's house, armed with a rifle on the
            day of the homicide. Linn was arrested for murder shortly afterwards.
            This information was obtained from pages 3,4,5,6, 7 and 8 of the
            Probation Officer's Report (POR).

      2.    **Prisoner's Version:**
            On the afternoon of December 28, 1980, Robert Linn, 21 years of age, and
            Jon R. Crawley, 20 years of age, hereafter Crawley left Robert Linn's
            residence in Crawley's vehicle. Both were armed with .22 caliber rifles.
            Their intent was to drive to the avocado groves in Rancho California Hills
            to seek-out and rob immigrant farm workers.

            Soon after they arrived at the grove, they ran across three men working
            alongside a narrow (approx. 12 feet wide) paved service road. They
            passed by and continued onward around a curve. They then turned around,
            approximately 150 meters later, and headed back toward the worker's
            location. Robert Linn and Crawley pulled along the shoulder of the road

Sent to Inmate on 8/31/06

Inmate Copy

LIFE PRISONER EVALUATION REPORT                                    2
PAROLE CONSIDERATION HEARING
SEPTEMBER 2006 CALENDAR

where the three workers were, stepped out of the vehicle, and both were armed with rifles.

When Robert Linn and Crawley stepped from the vehicle, one worker, named Guadalupe Selgado (murder victim), ran into the avocado tree grove. The other two workers, Abel and Jose Selgado (robbery victims), froze in place. However, within seconds, Jose also ran. Several seconds later Abel yelled for him not to run, so Jose stopped.

The moment Robert Linn and Crawley stepped from the vehicle, Crawley went to a running pursuit of Guadalupe, who had already fled into the tree grove. When Crawley reached the tree aisle that Guadalupe ran into, Crawley fired a shot holding his rifle from an abdomen height positioned to his side. Crawley then ran into the grove after Guadalupe.

During this time, Robert Linn had the other two workers at gunpoint and proceeded to rob them. Approximately 50 seconds later, Crawley ran out from the grove returning to Robert Linn and other robbery victim's location. Robert Linn had already taken money from Abel, and Jose was in the process of handing his money over when Crawley returned.

It was upon Crawley's return from the grove that Crawley told Robert Linn "I think I killed him". Jose gave his money to Crawley. However, this robbery was in progress while Crawley was away in the grove.

It wasn't until after Jose gave up his money that they were ordered to lay down. As soon as they laid down, Robert Linn and Crawley yelled and gestured for them to run. Therefore, they took off running. Robert Linn and Crawley got in the vehicle and fled the scene of the crime. The murder robbery occurred all within approximately one minute's time.

The Sheriff Investigators traffic stopped Crawley a few days after the crime was committed and questioned him about the robbery murder. Robert Linn and Crawley were arrested ten (10) days after the crime was committed.

3.  **Aggravating/Mitigating Circumstances:**

    a.    **Aggravating Factors:**

          1.  The manner in which the crime was carried out created a potential for serious injury to persons other than the victim.
          2.  During the commission of the crime the inmate had a clear opportunity to cease, but instead continued.

LIFE PRISONER EVALUATION REPORT                                                3
PAROLE CONSIDERATION HEARING
SEPTEMBER 2006 CALENDAR

        b.    <u>Mitigating Factors</u>: The inmate has a minimal or no history of criminal behavior.

**B.**   <u>Multiple Crime(s)</u>: None.

    1.   <u>Summary of Crime</u>: N/A.

    2.   <u>Prisoner's Version</u>: N/A.

**II.**   **PRECONVICTION FACTORS:**

   **A.**   <u>Juvenile Record</u>: Remains the same as stated in the previous report.

   **B.**   <u>Adult Convictions and Arrests</u>: The instant offense is his only conviction.

   **C.**   <u>Personal Factors</u>: Remains the same as stated in the previous report. Linn stated that he is not Dyslexic, as reported in the previous report.

**III.**   **POSTCONVICTION FACTORS:**

   **A.**   <u>Special Programming/Accommodations</u>: None.

   **B.**   <u>Custody History</u>: Remains the same as stated in the previous report. During this period, Linn remained housed at CTF-North Facility on "B" Yard, under Medium A Custody and assigned as a Kitchen Sanitation Worker.

   **C.**   <u>Therapy and Self-Help Activities</u>: Remains the same as stated in the previous report. During this period Linn participated in Narcotics Anonymous from 7/05 through 12/05.

   **D.**   <u>Disciplinary History</u>: Remains the same as stated in the previous report. During this period Linn remained disciplinary free.

   **E.**   <u>Other</u>: On 9/30/05 Linn appeared before the Board of Prison Terms for Subsequent Parole Consideration Hearing #6. BPT denied parole for one year and made the following recommendations: 1) stay disciplinary free, 2) Get self help, 3) get therapy and 4) earn positive chronos. During this period, Linn remained disciplinary free, participated in Narcotics Anonymous when available and earned a laudatory chrono from Kitchen Supervisor, C/0. R. Renteria.

**IV.**   <u>**FUTURE PLANS:**</u>

LIFE PRISONER EVALUATION REPORT                                                4
PAROLE CONSIDERATION HEARING
SEPTEMBER 2006 CALENDAR

    A.    <u>Residence:</u>  Linn has two options for a residence:

        1.  Sister, Tricia Bramwell of 26651 Castle Lane, Mission Viejo, CA 92691,
            telephone (949) 472-2300.  (Orange County).
        2.  Sister-in-law, Laura Snyder, P.O. Box 827, Wildemar, CA 92595.  Telephone
            (909)  678-4710.

    B.    <u>Employment:</u>  There is an offer of employment from:  Foam Works with Mark
        Harrington, 532 Third Street, Lake Ellsinore, CA 92530.  Telephone (909) 674-
        0245.

    C.    <u>Assessment:</u>  Linn's parole plans appear reasonable.  There are numerous letters
        of support from family, friends and law enforcement.

V.    <u>USINS STATUS</u>: Linn is a United States  Citizen.

VI.    <u>SUMMARY:</u>

    A.    Prior to release the prisoner could benefit from: remaining disciplinary free.

    B.    This report is based upon a personal interview with Inmate Linn and an extensive
        central file review.

    C.    Inmate Linn reviewed his Central File on 6/2/06..

    D.    No accommodation was required per the Armstrong vs. Davis BPH Parole
        Proceedings Remedial Plan (ARP) for effective communication.

LINN, ROBERT        C82285        CTF-SOLEDAD        **SEPT/2006**

LIFE PRISONER EVALUATION REPORT                                    **5**
PAROLE CONSIDERATION HEARING
SEPTEMBER 2006 CALENDAR


P.J. McFartlan                      Date
Correctional Counselor I


J.H. Frye                           Date
Correctional Counselor II


L.M. Trexler                        Date
Facility Captain


D. S. Levorse                       Date
Classification and Parole Representative


LINN, ROBERT              C82285                  CTF-SOLEDAD         SEPT/2006

**E X H I B I T**

**27**

Indeterminate Sentence Parole Release Review
May 2, 2003

## INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
### (Penal Code Section 3041.2)

ROBERT LINN, C-82285
FIRST DEGREE MURDER

**NO ACTION:** _____

**MODIFY:** _____

**REVERSE:** \_\_\_\_\_X\_\_\_\_\_


On the afternoon of December 28, 1980, brothers Abel, Guadalupe and Jose Salgado were at work picking avocados in a grove in Riverside County.

Robert Linn, age 22, and Jon Crawley, age 21, stopped at the grove and got out of their car carrying rifles. They motioned for the Salgado brothers to lie on the ground. Abel and Jose lay down, but Guadalupe ran. Guadalupe, age 21, was shot in the back; the bullet went through his aorta, killing him. Mr. Crawley then robbed Guadalupe, while Mr. Linn robbed the other brothers. Mr. Linn's motive for the robbery was to obtain money to purchase drugs.

According to the sheriff's report, the surviving Salgado brothers said that both Mr. Crawley and Mr. Linn fired at Guadalupe, and that either might have killed him. Mr. Linn has always maintained that Mr. Crawley alone shot at Guadalupe, and a 1983 polygraph examination concluded that he was truthful when he denied shooting Guadalupe or firing his rifle at all during the robbery on December 28, 1980.

Mr. Linn pled guilty to first degree murder and two counts of robbery. He was sentenced to 25 years to life in prison. Mr. Crawley also pled guilty to first degree murder and robbery with a firearm, and was sentenced to 25 years to life in prison.

Mr. Linn has made commendable progress during his over 22 years of incarceration. He has completed his GED and obtained vocational certificates. He has worked a variety of assignments, often with above average work reports. He has participated in self-help programs. He has accepted responsibility for the crime, and exhibited remorse for his actions. He has verified offers of residence and employment upon release. He also has letters of support from the sentencing

judge and from three members of law enforcement, all of whom report very positive impressions of Mr. Linn during their interactions with him during his three years of incarceration in the Riverside County jail pending trial.

After careful consideration of these factors tending to show suitability for parole, however, I have concluded that it is premature to grant Mr. Linn a parole release date at this time.

This was a senseless, tragic crime in which a young working man was shot to death in front of his two brothers, who were then robbed. Mr. Linn admits that the crime was one of a series of robberies of Mexican farmworkers committed by him and Mr. Crawley. They targeted farmworkers because they thought them less likely to report the crime and therefore more vulnerable. The motive – stealing the limited cash and watches of the farmworkers in the field – was trivial in relation to the severity of the crime. Multiple victims were involved, and Mr. Salgado's brothers were also at risk of being shot during the robbery. In fact, Mr. Crawley had shot a victim in the hand during a prior robbery, and Mr. Linn knew that victims could be injured or killed during these robberies. These are particularly egregious acts beyond the minimum necessary to sustain a conviction of first degree murder. Indeed, Mr. Linn could have faced the death penalty for this murder committed during the course of a robbery. The gravity of the crime is a negative factor that I considered in reversing parole.

While Mr. Linn has made impressive gains during his time in prison, his recent record indicates that some serious risk factors are still present.

Mr. Linn has admitted to a serious drug and alcohol problem leading up to the crime. He was spending all the money he earned as a construction foreman on drugs, and he committed the robberies in order to obtain money for drugs. Mr. Linn's 2002 psychological evaluation concludes that "[t]he most significant risk factor for this inmate which could be a precursor to violence would be a return to the abuse of alcohol or drugs. Should he choose to abuse those substances again, his violence potential would be considered significantly higher than the average citizen in the community."

It is therefore critical that Mr. Linn stay drug free if he is released on parole. However, the record indicates that Mr. Linn needs more work on this issue before he is suitable for parole. This is another negative factor. In 1984, Mr. Linn received a serious disciplinary report for manufacturing prison-made alcohol. He did not begin to attend Alcoholics or Narcotics Anonymous until 1990, and his attendance has been sporadic. For example, he did not attend either during the four

years between June 1991 and June 1995, and during the first three quarters of 2001. Mr. Linn needs to demonstrate a sustained commitment and participation in substance abuse programming before he is suitable for parole. Given the violence he has demonstrated and the risk of further violence should he return to drugs, he must clearly show that the gains he has made in prison will be maintained if released.

It will also be critical to Mr. Linn's success on parole that he is able to maintain employment. Mr. Linn had a successful 10-year career in construction before the crime, and has two good job offers upon release. He has had a number of work assignments while in prison, and has often received above average work reports. However, Mr. Linn recently received five disciplinary reports for attendance problems in his work assignments during a three-year period, another negative factor. While it appears that Mr. Linn is capable of being a responsible employee, his recent lapses are another negative factor, and he needs to demonstrate a commitment and ability to attend his work assignments and continue to receive good work reports before he is suitable for parole.

Finally, Mr. Linn's psychological reports indicate that he is somewhat gullible and suggestible, and is likely to be easily influenced by his surroundings after his release on parole. At the conclusion of his 2001 parole consideration hearing, the panel requested a psychological evaluation because Mr. Linn appeared to be "emotionally quite fragile." Judge Robert Timlin makes a similar observation in his letter in support of parole, in which he states, "I concluded that [Mr. Linn] had a malleable personality and his involvement with controlled substances caused him to be subject to the substantial influence of his codefendant in the commission of the crime...." Mr. Linn must demonstrate a commitment to addressing his substance abuse and work attendance issues and sustain his progress in those areas for a prolonged period of time in order to make himself less susceptible to negative influences before he is suitable for parole.

Each of the negative factors identified above individually outweighs all of the positive factors, and demonstrates that it is premature to grant Mr. Linn a parole release date, as he would continue to pose an unreasonable danger to society if released on parole at this time. Accordingly, I REVERSE the Board of Prison Terms' decision to parole Mr. Linn.

Decision Date: **5/2/03**

GRAY DAVIS
Governor

**E X H I B I T**

28

Exception To The Statement of Facts

## EXCEPTIONS TO THE STATEMENT OF FACTS

Claim: The Probation Officer's Report (hereinafter POR), prepared by Lawrence F. Smith, dated May 11, 1983, contains material factual errors and the Board of Parole Hearings (hereinafter Board) use of this document as the basis of the Statement of Facts in Petitioner's case is unreasonable.

Argument: All relevant, reliable information available to the panel shall be considered in determining suitability for parole. (California Code of Regulations, § 2402 (b).) It is axiomatic that if the information relied on is incorrect or unreliable, the Board must either correct the source document or disregard the source altogether. As the basis for the Statement of Facts is the POR, any errors contained therein will necessarily result in the Panel's use of unreliable information.

The POR states, "He ran about ten yard when both Linn and Crawley raised their rifles to their shoulders and shot in the direction of Guadalupe." The POR also states "Directly after the shots were fired, one suspect (believed to be Crawley), moved to where Guadalupe lay. He took out his wallet, removed what money was in it , and then threw it to the ground. The second suspect (believed to be Linn) took what money Abel and Jose had in their wallets, and their watches." (Exhibit 1, POR, p. 4, L 16:18 and L 20:24.) The source of these statements is the Riverside Sheriff's Department crime report. (Exhibit 1, POR, p. 3, L 11:12.) It should be noted that an unlicensed, uncertified interpreter acted as the translator for the Riverside Sheriff's Deputy at the scene.

The POR suggests that both Linn and Crawley shot at Guadalupe Salgado. The POR also implies that after Mr. Salgado had been killed, Linn then robbed the other two brothers. Both of these allegations are incorrect and unsubstantiated.

The court testimony, given under oath through a court certified interpreter by Abel Salgado, the victim's brother, at the Preliminary Hearing held in the Municipal Court, County of Riverside, on March 13, 16 and 17, 1981, contradicts the POR. Abel Salgado testified as follows:

Mr. Wayne Astin, Deputy District Attorney

"Mr. Astin: May the record reflect that the witness has pointed to the defendant Robert Linn?" (Exhibit 2, Preliminary Hearing Transcript, p. 15, L 1:2 and L 16.)

Q: Mr. Astin, Deputy District Attorney
A: Mr. Abel Salgado

"Q: The man that you pointed to in court, is he the man that took money from you or the man that took money from Jose?

A: Me.

Q: When you heard the shot, what was that man doing with his rifle?

A: He was pointing it to my face.

Q: Did you earlier say that he was the man that you thought shot Guadalupe?

Mr. Levy: Objection. It's leading.

The Court: The objection may be overruled. The answer may remain.

A: No. The one with the whiter hair is the one that had the gun on me, and the other one was the one that fired at Guadalupe, I say."

(Exhibit 2, Preliminary Hearing Transcript, p. 16, L 17:28 to p. 17, L 1:2.)

Also, as the testimony of Mr. Crawley, the co-defendant, at his sentencing hearing proves, Robert Linn did not kill Mr. Guadalupe Salgado.

Testimony of co-defendant Jon Crawley: "I guess I'm not really trying to cover for my actions or anything. It is evident that I killed Mr. Salgado." (Exhibit 3, Reporter's Transcript, Superior Court, County of Riverside, April 25, 1984, p. 16, L 1:2.)

## CONCLUSION

California courts have long recognized that the POR is not evidence. (See People v. Overton, 190 Cal.App.2d 369 [A probation report is not evidence, and may contain extraudicial material]; People v. Lockwood, Cal.App.2ndd 75; People v. Davis, 270 Cal.App.2d 841 [Determination of degree of crime must be based on evidence at the trial - not on probation report]; People v. Johnson, 70 Cal.App.34th 1429 [a probation report is advisory only].)

Petitioner has presented sworn court testimony that refutes the POR's interpretation of certain material facts. Thus the POR is incorrect when it states that both defendants raised their rifles and fired at the victim. The POR is also incorrect when it states that Petitioner robbed Abel and Jose Salgado after their brother Guadalupe had been shot. The Panel's use of these circumstances as some evidence of Petitioner unsuitability is unreasonable in the light of the factual evidence and cannot stand.

The Statement of Facts relied on by the Board should be amended.

**E X H I B I T**

1

1    arrest he was injecting cocaine and described his drug usage as, "Spending all

2    the money I earned on it."

3         His stated interests include fishing and riding motorcycles and he related

4    that he has become interested in a Jewish-oriented religious faith while in

5    custody. His stated goal is to finish high school, get a college degree and

6    attend classes in architectural engineering so he can be a good builder when

7    he is released from custody.

8    PRIOR CONVICTION RECORD:  (CDL# N5811186)

9         A recent teletype transcript reflects no record for the defendant.

10   SUMMARY OF OFFENSE:

11        The following is a summary of the offense as contained in the Riverside

12   Sheriff's Department crime report.

13        On December 28, 1980, at approximately 4:30 p.m., deputies responded to

14   an avocado grove located in the Rancho California area on Camden Road

15   .45 miles south of Carancho Road to investigate a reported robbery and homicide.

16        Upon arriving at the scene the deputy was informed by Richard Wiley that

17   sometime around 3:30 p.m., Dryme Weaver, Ranch Foreman, reported via radio

18   to Sherry Wiley that two men driving a blue Pinto were shooting in the area

19   where Guadalupe, Jose and Abel Salgado were working. The men had scattered

20   and one individual was missing. They searched the area for Guadalupe, who was

21   missing, and after a short time they found him lying underneath an avocado

22   tree. They checked his body and could find no pulse.

23        Weaver reported to the deputy that she dropped the victims off at the

24   work site at approximately 1:00 p.m. and around 3:00 p.m. she was driving

25   on Camaron Road approximately one mile south of the work site when she observed

26   a dark blue Pinto fastback  occupied by two male Caucasian subjects (later

27   identified as Linn and Crawley), approximately 20 years of age. The driver had

28   brown hair, nearly shoulder length, and the passenger had long red hair.

1  Weaver reported that when she drove past the work site a short time later, sh

2  noticed that the Salgado brothers were missing. She found their tools

3  discarded at the scene and retrieved them. She called out to the workers but

4  received no answer. Thinking that the border patrol may have picked them up,

5  she drove through the groves and about a half mile from the work site, Jose

6  and Abel came out of the bushes crying, "Bandidos, bandidos." Weaver related

7  that they confirmed the blue Pinto occupants were the suspects and when they

8  returned to the area they found Guadalupe's body. They lifted his head to

9  check for breathing and found no signs of life.

10    The Salgado brothers related to officers that they were working at the

11  edge of the avocado grove when the car passed carrying two occupants. The

12  car drove northbound on Camaron Road and about two minutes later returned,

13  this time heading southbound. It drove past them, about 50 or 60 feet. Both

14  Linn and Crawley were carrying rifles and they motioned for the Salgado brothers

15  to lie on the ground. Abel and Jose lay down where they were, however,

16  Guadalupe turned and ran up the hill. He ran about ten yards when both Linn

17  and Crawley raised their rifles to their shoulders and shot in the direction

18  of Guadalupe. Guadalupe fell to the ground and made two noises and then lay

19  still. As soon as the shots were fired, Jose got up and started to run,

20  however, Abel told him to stop as he would be shot also. Directly after the

21  shots were fired, one suspect (believed to be Crawley), moved to where

22  Guadalupe lay. He took out his wallet, removed what money was in it, and then

23  threw it to the ground. The second suspect (believed to be Linn) took what

24  money Abel and Jose had in their wallets, and their watches. At this point

25  the suspects motioned for them to leave the area. Both Jose and Abel ran into

26  the avocado grove and hid until they saw Weaver.

27    Guadalupe Salgado was removed by Evans-Brown Mortuary, Sun City, and an

28  autopsy revealed that a bullet entered the left side, back, at and through the

- 4 -

**E X H I B I T**

**2**

404

1      IN THE MUNICIPAL COURT OF THE RIVERSIDE JUDICIAL DISTRICT

2          COUNTY OF RIVERSIDE - STATE OF CALIFORNIA

3

**FILED**
RIVERSIDE COUNTY

4

5                MAR 27 1981

6   THE PEOPLE OF THE STATE OF CALIFORNIA,)   DONALD D. SULLIVAN, Clerk

7                 Plaintiff,  )  By _a. Hayes_   Deputy
                                  )             A. Hayes

8        vs.              )   NO. CR

9   JON RANDALL CRAWLEY and ROBERT   )

10  JEFFREY LINN,              )

                  Defendants.  )

11

12

13            PRELIMINARY HEARING

14  Proceedings had before the Honorable John H. Barnard, Judge
    of the Riverside Municipal Court, Department 23, Riverside
15  County, California, on March 13, 16 and 17, 1981.

16          VOLUME I Pages 1-169

17  APPEARANCES:

18  For the Plaintiff:     BYRON C. MORTON, District Attorney
                     By: Wayne Aatin
19                        Deputy District Attorney
20                   3535 Tenth Street
                     Riverside, California 92501

21  For Defendant Jon     MALCOLM MacMILLAN, Public Defender
    Randall Crawley:      By: Marvin Levy
22                      Deputy Public Defender
23                   3622 Ninth Street
                     Riverside, California 92501

24  For Defendant        RONALD LORDEN, Esq.
    Robert Jeffrey Linn:   Attorney at Law
25                   3993 Market Street
                     Riverside, California 92501

26

27                 REPORTED BY:

28                 KATHERINE G. SMITH, CSR NO. 1685

KATHERINE G. SMITH
CERTIFIED SHORTHAND REPORTER
RIVERSIDE, CALIFORNIA

i

# I N D E X

PEOPLE'S WITNESSES                                              PAGE

ABEL TORRES SALGADO

    Direct Examination by Mr. Astin . . . . . . . . . 7
    Cross-Examination by Mr. Levy . . . . . . . . . . 22
    Cross-Examination by Mr. Lorden . . . . . . . . . 38
    Redirect Examination by Mr. Astin . . . . . . . . 55
    Redirect Examination Continued by Mr. Astin . . . 76
    Recross-Examination by Mr. Levy . . . . . . . . . 79
    Recross-Examination by Mr. Lorden . . . . . . . . 84
    Further Redirect Examination by Mr. Astin . . . . 84

CHRIS TAYLOR

    Direct Examination by Mr. Astin . . . . . . . . . 62
    Cross-Examination by Mr. Levy . . . . . . . . . . 64
    Redirect Examination by Mr. Astin . . . . . . . . 66
    Recross-Examination by Mr. Levy . . . . . . . . . 67

RODNEY BYRON PERKINS

    Direct Examination by Mr. Astin . . . . . . . . . 68
    Cross-Examination by Mr. Levy . . . . . . . . . . 71

MARIAN MARIE SNYDER

    Direct Examination by Mr. Astin . . . . . . . . . 73
    Cross-Examination by Mr. Levy . . . . . . . . . . 73
    Redirect Examination by Mr. Astin . . . . . . . . 75

JOSE LUIS SALGADO

    Examination re Oath by Mr. Astin  . . . . . . . . 90
    Direct Examination by Mr. Astin . . . . . . . . . 91
    Cross-Examination by Mr. Levy . . . . . . . . . . 99
    Redirect Examination by Mr. Astin . . . . . . . .106

DOMINIC MANUEL PRADO

    Direct Examination by Mr. Astin . . . . . . . . .109
    Cross-Examination by Mr. Levy . . . . . . . . . .110

MELVIN BROWN

    Direct Examination by Mr. Astin . . . . . . . . .116
    Cross-Examination by Mr. Levy . . . . . . . . . .126
    Redirect Examination by Mr. Astin . . . . . . . .219
    Recross-Examination by Mr. Levy . . . . . . . . .223
    Cross-Examination by Mr. Lorden . . . . . . . . .230

KATHERINE G SMITH
CERTIFIED SHORTHAND REPORTER
RIVERSIDE, CALIFORNIA

15

1        MR. ASTIN:  May the record reflect that the witness

2  has identified the defendant Robert Linn?

3        MR. LORDEN:  Did he say on the left side?

4        THE COURT:  At this moment I don't believe it has.

5        MR. ASTIN:  Okay.

6        THE COURT:  Step down and go over.

7    Q  (by Mr. Astin)  Mr. Salgado, would you step down

8  from the witness stand and point to the man that you've been

9  talking about?

10    A  (Witness indicates.)

11    Q  Go right up to him and point to him.

12    A  (Witness indicates.)

13        MR. ASTIN:  May the record reflect that the witness

14  has pointed to the defendant Robert Linn?

15        THE COURT:  State your name, please?

16        DEFENDANT LINN:  Robert Jeffrey Linn.

17        THE COURT:  It may.

18        MR. ASTIN:  Thank you, Your Honor.

19    Q  (by Mr. Astin)  Do you want to step back up this

20  way, Mr. Salgado?

21        The man you were pointing to is one of the men who

22  got out of the car with the rifle on December 28th, 1980.

23  Is that right?

24    A  Yes.  I figure him to be, yes.

25    Q  All right.  Do you see the other man who got out

26  of that car in the courtroom today?

27    A  Listen, the other one, I figure it is.  I am not

28  sure.

15

16

1      Q    Who do you mean when you say "the other one"?

2      A    The other one that is over there more, next to

3  him.

4      Q    Are you referring to the man seated next to the

5  man you pointed to?

6      A    Yes.

7      MR. ASTIN:  May the record reflect that the witness

8  is referring to the defendant Jon Crawley?

9      THE COURT:  It may.

10      MR. ASTIN:  Thank you, Your Honor.

11      Q    (by Mr. Astin)  What do you mean when you say you

12  figure he is the other man that pointed, or that had a gun —

13      Let me withdraw the question.  What do you mean

14  when you say you figure he is the other one?

15      A    That I'm not sure if it is or not, if it is or not.

16  He looks like it.

17      Q    The man that you pointed to in court, is he the man

18  that took money from you or the man that took money from Jose?

19      A    Me.

20      Q    When you heard the shot, what was that man doing

21  with his rifle?

22      A    He was pointing it to my face.

23      Q    Did you earlier say that he was the man that you

24  thought shot Guadalupe?

25      MR. LEVY:  Objection.  It's leading.

26      THE COURT:  The objection may be overruled.  The

27  answer may remain.

28      THE WITNESS:  No.  The one with the whiter hair is

17

1  the one that had the gun on me, and the other one was the

2  one that fired at Guadalupe, I say.

3      Q    Did you see the other one pointing the gun at

4  Guadalupe when the shot was fired?

5          MR. LORDEN:  Excuse me, Your Honor.  I'm going to

6  object.  It's vague as to who he means by "the other one".

7  At this point, I'm not sure what he's referring to, "the

8  other one".

9          THE COURT:  The objection is overruled.

10     A    I don't know if it was the one with the whiter

11 hair or the one with red hair who had it.  When the rifles

12 were pointed to my face, they were both at the same level.

13         The one with the whiter hair then came to me.

14 But they had already fired, and then they came and pointed

15 at me.

16     Q    (by Mr. Astin)  I want to direct his attention

17 to the time that they shot or that somebody shot Guadalupe.

18 At that time where was the gun that the man with the lighter

19 hair had, pointed?

20     A    To his side (indicating).

21     Q    Where was it pointed in relation to Guadalupe?

22     A    He was running.  I didn't see.

23     Q    Did you see where either of the guns were pointed

24 when the shot was fired?

25     A    They were both together.

26     Q    But did you see where the guns were pointed when

27 the shot was fired?

28

E X H I B I T

3

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF RIVERSIDE

3

4

5

6  PEOPLE OF THE STATE OF CALIFORNIA, )
                                      )
7                     Plaintiff,      )
                                      )
8      vs.                            )         NO. CR- 18380
                                      )
9  JON RANDALL CRAWLEY,               )
                                      )
10                    Defendant.      )
                                      )
11

12

13                    REPORTER'S TRANSCRIPT

14  Proceedings had before the Honorable Robert J. Timlin, Judge of
    the Superior Court of the State of California, County of River-
15  side, Department 13, on April 25, 1984.

16

17  APPEARANCES:

18  For the Plaintiff:      GROVER C. TRASK, District Attorney
                            By:  WAYNE ASTIN, Deputy
19                          4080 Lemon Street, 2nd Floor
                            Riverside, California 92501
20
    For the Defendant:      ALLEN H. SANDQUIST, Attorney at Law
21                          3890 - 11th Street
                            Riverside, California 92501
22

23

24

25                              SUSAN NORRIS, CSR #5167
                                Riverside, California
26

27

28

16

1   I guess I'm not really trying to cover for my actions

2   or anything.  It is evident that I killed Mr. Salgado.

3   I say it was an accident, and all the psychiatrists

4   in the world couldn't tell me any different or they could say

5   it, because in my own mind, I would know that it was an acci-

6   dent.  Anyways, almost from the day I got arrested and put in

7   the County Jail, that there has been a very negative attitude

8   toward me from the jail staff.  I've been told, "Hey, I hope you

9   burn, I wonder how the weather is up on death row."

10   I've had officers tell my wife in court, "Yeah, I

11   hope Crawley burns."  Now, that's a very negative attitude.

12   Your Honor, as I look back on this, for a young man

13   that's facing life in prison, the possible death penalty, that

14   I feel that a man only has -- he can only act the way the

15   environment that he is put into I feel sometimes.  Okay.  Let's

16   say the County Jail has been negative towards me.  Well, I

17   responded with a negative attitude, and maybe that's my reason

18   for some of these actions that I have been involved in up in

19   the County Jail.  There has been times when I've gone a year or

20   a year and a half without any trouble up there.  Sometimes it

21   all comes in.  You've got different attitudes on there and I've

22   been moved so many times that I have to adjust to different

23   attitudes each time that I get moved.  I've been to every tank

24   in the Riverside County Jail, Your Honor, more than twice,

25   sometimes three times, sometimes ten times, back and forth, and

26   each time you get moved you have to adjust to a different

27   attitude and you have to keep changing towards -- Robert Linn

28   was in one place the whole time.  He was set one time.  His

**E X H I B I T**

**29**

Petitioner's Response To Unsuitability and Suitability Facts
(CCR § 2402 (c) and (d))

CIRCUMSTANCES TENDING TO SHOW UNSUITABILITY

(California Code of Regulations, Title 15, Division 2, Chapter 3, Article 11, Section 2402 (c).)

(1)  Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A)  Multiple victims were attacked, injured or killed in the same or separate incidents.

A single victim was killed as a result of the commitment offense, multiple victims were neither attacked or injured.

(B)  The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

Mr. Linn's accomplice, Jon Crawley, ran after one of the robbery victims, who had escaped into the avocado grove.  While in pursuit, Mr. Crawley fired a single shot at the fleeing victim. The autopsy revealed that a single bullet killed the victim. The offense was neither dispassionate or calculated and no execution-style murder occurred.

(C)  The victim was abused, defiled or mutilated during or after the offense.

The victim was not abused, defiled or mutilated during or after the offense.

(D)  The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

The offense was not carried out in an exceptionally callous manner because Mr. Crawley fired one shot at the fleeing victim, accidentally killing him.  Mr. Linn did not unnecessarily prolong the victims suffering because he knew nothing of the killing until after the fact.

(E)  The motive for the crime is inexplicable or very trivial in relation to the offense.

The motive for the crime was robbery to support a cocaine habit.

Based on the above factors (A through E) the offense was not committed in an especially heinous, atrocious or cruel manner.

(2)  Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

Mr. Linn does not have any history of previously inflicting or attempting to inflict serious injury on another person, neither

as an adult or as a juvenile.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

. Mr. Linn had a stable social history and does not have a history of tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

Mr. Linn has never been charged or convicted of sexually assaulting anyone at any age or at any time.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

Mr. Linn does not have any history of any mental problems, severe or otherwise, related to the commitment offense. The most current Mental Health Evaluation, prepared by Dr. M. Macomber, Clinical Psychologist, states, "[H]is violence potential in the community would be no greater than the average citizen in the community. ... He does not have a personality disorder that would contribute towards violence. He definitely knows the difference between right and wrong, and he has a well developed conscience and strong abhorrence against wrong activities." The Mental Health Evaluation goes on to state, "The fact that this [prior abuse of alcohol or drugs] raises the issue about potential future drug use is what has concerned the Board of Prison Terms in the past. In this writer's opinion, this is no longer an issue in this man's life." Dr. Macomber is support of Mr. Linn's release to the community.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

The record reflects that Mr. Linn missed three days of work, was late for work twice, and in 1984 was cited for prison made wine found in the cell. Mr. Linn has never received any disciplinary infractions for any form of violence during his entire twenty-six years of incarceration.

## CIRCUMSTANCES TENDING TO SHOW SUITABILITY

(California Code of Regulations, Title 15, Division 2, Chapter 3, Article 11, Section 2402 (d).)

(1) **No Juvenile Record.** The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

Mr. Linn was placed on probation at the age of twelve for committing a commercial burglary. He does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to others.

(2) **Stable Social History.** The prisoner has experienced reasonable stable relationships with others.

Mr. Linn has maintained close relationships with his family and friends. He has demonstrated stable relationships with others prior to and during his entire period of incarceration.

(3) **Signs of Remorse.** The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

Mr. Linn has shown, as verified by numerous Psychiatric Evaluations prepared for the Board by correctional psychologist, that he understands the nature and magnitude of the offense and is extremely remorseful. (See Psychological Evaluation, dated 09-06-05, Review of Life Crime, p. 3, ¶ 3.)

(4) **Motivation for Crime.** The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

Mr. Linn had developed a hundred dollar a day cocaine habit and had become indebted to a drug dealer. His participation in the robbery was an attempt to acquire money to pay off his drug debt and procure more cocaine.

(5) **Battered Woman Syndrome.**

This factor does not apply to Petitioner.

(6) **Lack of Criminal History.** The prisoner lacks any significant history of violent crime.

Mr. Linn has never been charged or convicted of any violent crime either as an adult or juvenile.

(7) **Age.** The prisoner's age reduces the probability of recidivism.

Mr. Linn is currently forty-nine years of age. All studies

on the matter have shown that prisoners of Mr. Linn's age have an extremely low probability of recidivism.

(8) **Understanding and Plans for Future.** The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

Mr. Linn has secured a room in a halfway house in Riverside County as his place of residency. He also has lined up employment with Form Works, also located in Riverside County. Mr. Linn has been in contact with and maintains correspondence with an outside Alcoholics Anonymous sponsor that has expressed his willingness to act as a sponsor upon his release. The halfway house counselor will also assist Mr. Linn in continuing his self-help programs and the transition to productive citizen. Mr. Linn also has a firm commitment for housing and employment in Los Angeles County. Mr. Linn's family guarantees he will be provided with any financial assistance necessary. A vehicle will be provide to him upon his release. Mr. Linn's friends and family are all willing to assist in his transition back into the community.

(9) **Institutional Behavior.** Institutional activities indicate an enhanced ability to function within the law upon release.

Mr. Linn began attending self-help programs as they became available and has continued his participation throughout his incarceration. Mr. Linn has attended and successfully completed the following programs: Alcoholics Anonymous, Narcotics Anonymous, Substance Abuse Therapy, Beginning Stress Management and Relaxation Training, Anger Management - Project C.H.A.N.G.E. and the Impact Program. Mr. Linn completed his high school education and obtained his GED certificate. He has also completed the following vocational training: Drafting and Computer Aided Drafting and Design, Major Appliance Repair and achieved certification as a Universal Technician in air conditioning and refrigeration. Mr. Linn has performed various institutional work assignments, achieving exceptional job evaluation. Mr. Linn is currently assigned as a leadman in the A.M. sanitation crew.

4

The California State Supreme Court has noted that "the nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." The Court then stated that "the parole authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant."

The Supreme Court cautioned that "sole reliance on the commitment offense might, in particular cases, violate section 3041, subdivision (a)'s provision that a parole date 'shall normally be set' under 'uniform term' principles, and might thus also contravene the inmate's constitutionally protected expectation of parole." The Court explained that such a violation could occur, "for example, where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." The Court suggested that, "in order to prevent the parole authority's case-by-case suitability determinations from swallowing the rule that parole should 'normally' be granted, an offense must be 'particularly egregious' to justify the denial of parole."

The Court explained that the phrase "particularly egregious" conveyed only that "the violence or viciousness of the inmate's crime must be more than <u>minimally necessary to convict him</u> of the offense for which he is confined."

The Court also explained that the Board must apply detailed standards when evaluating whether an individual inmate is unsuitable for parole on public safety grounds. When the Board bases unsuitability on the circumstances of the commitment offense, it must cite "some evidence" of aggravating facts <u>beyond the minimum elements of that offense.</u>

## DECLARATION OF SERVICE BY MAIL

I, Robert J. Linn, declare:

I am a resident of the Correctional Training Facility in Soledad, California; I am over the age of eighteen (18) years; I am a party to the attached action; My address is P. O. Box 705, WA-350L, Soledad, CA 93960-0705; I served the attached document entitled:

**PETITION FOR WRIT OF HABEAS CORPUS**

On the person/parties specified below by placing a true copy of said document into a sealed envelope with a Trust Account Withdrawal for the appropriate postage affixed thereto and surrendering said envelopes to the staff of the Correctional Training Facility entrusted with logging and mailing of inmate legal mail, addressed as followed:


**Superior Court of California
County of Riverside
4050 Main Street
Riverside, CA 92501-3703**


**State of California
Office of the Attorney General
Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004**


There is First Class mail delivery service by the United States Post Office between the place of mailing and the addresses indicated above.  I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct, and I executed this service this 29th day of April, 2007, at the Correctional Training Facility in Soledad, California.

Robert J. Linn

**A T T A C H M E N T**

**TWO**

Order Denying Petition for Writ of Habeas Corpus
Superior Court of Riverside County

1

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERISDE

2

3

4    IN THE MATTER OF THE APPLICATION OF: ) Case No.: No. RIC 474260
                                          )
5                                         ) ORDER RE: PETITION FOR WRIT
                                          ) OF HABEAS CORPUS
     Robert J. Linn                       )
6                                         )      F I L E D
                                          )    SUPERIOR COURT OF CALIFORNIA
7    FOR A WRIT OF HABEAS CORPUS          )        COUNTY OF RIVERSIDE
                                          )
                                          )        JUN 29 2007
8                                         )
                                          )
9    ─────────────────────────────────── )

10       The Court, having read and considered the Petition for Writ of Habeas

11   Corpus, presented this ___29___ day of ___Jun___, 20_07_, hereby orders

12   the following:

13

14   _____    Pursuant to California Rule of Court 4.551, the petition is

15               denied due to the failure of the petition to state a prima

16               facie factual case supporting petitioner's release. While

17               the petition states a number of factual conclusions, these

18               broad conclusions are not backed up with specific details,

19               and/or are not supported by the record in the case.

20

21   _____    Pursuant to California Rule of Court 4.551, the petition is

22               denied due to the failure of the petition to state a prima

23               facie case supporting petitioner's claim. The petition

24               makes assertions regarding the applicable law that are

25               contrary to established California case decisions.

─────────────────────────────────────────

Summary of Pleading - 1

1  _____

2  _____

3

4  _____  Pursuant to California Rule of Court 4.551, the petition is

5  denied due to the failure of the petition to establish that

6  petitioner has exhausted available administrative remedies.

7

8  _____  Pursuant to California Rule of Court 4.551, the petition is

9  denied because the petition failed to raise any new issue

10  that has not previously been addressed in an earlier Writ

11  petition.

12

13  _____  Pursuant to California Rule of Court 4.551, the petition is

14  denied because the petition is now moot due to changed

15  conditions.

16

17  _____  Pursuant to California Rule of Court 4.551(b), the court

18  invites respondent to submit an informal response to the

19  petition within 15 days.  Should an informal response be

20  submitted, it shall be served on petitioner.  Petitioner

21  shall have an additional 15 days after service of the

22  informal response in which to file a reply.

23

24  _____  Pursuant to California Rule of Court 4.551(c), the court

25  finds that the petition states a prima facie basis for

relief and Respondent is ordered to show cause why the

Summary of Pleading - 2

1  petition should not be granted.   Respondent is ordered to

2  submit a Return to the Petition within 30 days.

3

4  _____  Pursuant to Griggs v. Superior Court (1976) 16 C3d 341,

5  the court finds that the petition states a prima facie

6  basis for relief and transfers the petition to the

7  Superior Court of California, County of _____,

8  the court whose proceedings are asserted as being in error

9  by the petition.

10

11  _____  _____

12  _____

13  _____

14  _____

15

16

17  Dated: _____      _____

18                                    Judge of the Superior Court

19                                    County of Riverside

20

21

22

23

24

25

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
Minute Order/Judgment

Case No.:  474260              Date: 06/29/07      Dept:
Case Name: ROBERT J. LINN
Case Category: Writ of Habeas Corpus
Hearing:    Order PETITION FOR WRIT OF HABEAS CORPUS by ROBERT J. LINN;
            Honorable Judge Helios J. HERNANDEZ.

*******************************************************************
Habeas Corpus

Petition for WRIT OF HABEAS CORPUS Denied.

## DECLARATION OF SERVICE

I, Robert J. Linn, declare:

I am a resident of the Correctional Training Facility in Soledad, California; I am over the age of eighteen (18) years; I am a party to the attached action; My address is P. O. Box 705, WA-326L, Soledad, CA 93960-0705; I served the attached document entitled:

### PETITION FOR WRIT OF HABEAS CORPUS

on the person/parties specified below by placing a true copy of said document into a sealed envelope with a Trust Account Withdrawal for the appropriate postage affixed thereto and surrendering said envelopes to the staff of the Correctional Training Facility entrusted with logging and mailing of inmate legal mail, addressed as follows:

**State of California**
**Court of Appeals**
**Fourth Appellate District**
**3389 12th Street**
**Riverside, CA 92501**


**State of California**
**Office of the Attorney General**
**Department of Justice**
**455 Golden Gate Ave., Suite 11000**
**San Francisco, CA 94102-7004**


There is First Class mail delivery service by the United States Post Office between the place of mailing and the addresses indicated above. I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct, and I executed this service this 15th day of July, 2007, at the Correctional Training Facility in Soledad, California.

Robert J. Linn